**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| BENNETT WILCOSKY, MICHAEL GUNDERSON, and MICHAEL GUNDERSON as next friend of E.G., a minor, each individually, and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>AMAZON.COM, INC. and AMAZON.COM SERVICES, INC.,<br><br>　　　　Defendants. | Case No. 1:19-cv-05061<br><br>Hon. Robert W. Gettleman |

**DEFENDANTS AMAZON.COM, INC. AND AMAZON.COM SERVICES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND DISMISS, OR IN THE ALTERNATIVE, STAY CLAIMS**

Plaintiffs Bennett Wilcosky, Michael Gunderson, and Michael Gunderson as next friend of E.G., a minor, purport to bring a class action against Amazon.com, Inc. and Amazon.com Services, Inc. for alleged violations of Illinois' Biometric Information Privacy Act, 740 Ill. Comp. Stat. 14/1 *et seq.* ("BIPA").[1] (ECF No. 1-1, Compl. ¶ 9.) Plaintiffs Wilcosky and Gunderson repeatedly have expressly agreed to arbitrate their claims against Amazon through individual, non-class arbitration. Plaintiff E.G. is bound by her legal representative's consent to arbitration and is required to arbitrate her claims. Pursuant to Rule 12(b)(3) and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, this action is subject to dismissal and mandatory arbitration.

It is clear that this case does not belong in Court. Amazon respectfully requests that the Court dismiss Plaintiffs' putative class action claims in favor or arbitration proceedings on an individual basis, or in the alternative, stay those claims pending the completion of individual arbitration.[2]

## BACKGROUND AND FACTS

**A.     THE PARTIES**

Both Amazon defendants are technology companies that Plaintiffs allege offer "many products and services," including the "'Alexa' voice-based virtual assistant." (Compl. ¶ 1.)

---

[1] Amazon does not concede that any of Plaintiffs' allegations are true or that Amazon collects, stores, uses, or disseminates "voiceprints," "biometric identifiers," or "biometric information" as defined by BIPA.

[2] Amazon is also simultaneously filing a Motion to Dismiss pursuant to Rule 12(b)(2) and 12(b)(6). In doing so, Amazon does not waive its right to arbitrate. *See Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) ("[I]t is well-established that a party does not waive its right to arbitrate merely by filing a motion to dismiss."). Amazon requests that its Motion to Compel Arbitration be resolved prior to the Court addressing Amazon's Motion to Dismiss. *See id.* ("An application for arbitration … requests the district court to refrain from further action in a suit pending arbitration, and requires the court to first determine whether there is a written agreement to arbitrate between the parties, and then whether any of the issues raised are within the reach of the agreement.") (quoting *Texaco Expl. v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 909 (5th Cir. 2001)).

Plaintiff Wilcosky alleges that while he "was not, and never had been, a purchaser of any Alexa device," and has never set up an Alexa account or downloaded the Alexa application, he has been "voice-recorded by Alexa devices in Illinois on numerous occasions." (*Id.* at ¶¶ 36–37.)

Plaintiff Gunderson admits that he "owns an Amazon Echo equipped with Alexa services," but alleges that he "has been voice-recorded by Alexa devices in Illinois on numerous occasions without his consent." (*Id.* at ¶¶ 46–47.)

Similarly, Plaintiff E.G., "a minor who is three-years-old" and "resides in the home [of] her father, Plaintiff Michael Gunderson, who owns an Amazon Echo equipped with Alexa services," alleges that she "has been voice-recorded by Alexa devices in Illinois on numerous occasions without her consent." (*Id.* at ¶¶ 55–56.)

**B.    CAUSES OF ACTION**

Plaintiffs allege, in conclusory fashion, that "Amazon's Alexa devices collect voiceprints, one of the specifically enumerated forms of biometric identifiers set for[th] in BIPA, from any and all persons who speak in its [sic] vicinity." (*Id.* at ¶ 9.) Plaintiffs assert that "Alexa devices record and respond to oral communications upon hearing the wake word (usually 'Alexa')" and that an Alexa device "records the oral communications that follow, including ambient speaking in the background not even meant for Alexa." (*Id*. at ¶ 28.) Plaintiffs allege that the "Alexa device transmits all of these oral communications to Amazon's servers" and that "Amazon then indefinitely stores copies of all recordings on its own servers for continued use and analysis." (*Id*.)

Each Plaintiff alleges that he or she "has been voice-recorded by Alexa devices in Illinois on numerous occasions without [his or her] consent." (*Id.* at ¶¶ 37, 47, 56.) And each Plaintiff alleges that "Amazon retained the recording . . . and subjected the audio recording to data analysis calculated to create a voice print or recognize [that Plaintiff's] voice." (*Id.* at ¶¶ 39, 49, 58.)

Plaintiffs further allege that Amazon does not inform Alexa users or "bystanders" in writing that "Alexa is collecting biometric information or biometric identifiers" and that Amazon does not receive a written release consenting to that collection. (*Id.* at ¶¶ 29–34.) Plaintiffs also allege that Amazon's website "does not have a written, publicly available policy identifying its biometric retention schedule, nor guidelines" for destroying biometric identifiers when they are no longer needed. (*Id*. at ¶ 35.)

On the basis of these conclusory allegations, Plaintiffs asserts two causes of action pursuant to BIPA. First, Plaintiffs claim Amazon violated BIPA Section 15(b) when Amazon "systematically and automatically collected, used, and stored Plaintiff[s'] and the Class members' biometric identifiers or biometric information without first obtaining the specific written release required by 740 ILCS 14/15(b)(3)," and without "properly inform[ing] Plaintiffs or the Class members in writing that their biometric identifiers or biometric information were being collected and stored, nor . . . inform[ing] them in writing of the specific purpose and length of term for which their biometric identifiers or biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2)." (Compl. ¶¶ 73–74.) Second, Plaintiffs claim that Amazon violated BIPA Section 15(a) by failing to "publicly provide a retention schedule or guidelines for permanently destroying their biometric identifiers or biometric information." (*Id.* at ¶ 79.)

C. **AMAZON'S CONDITIONS OF USE ("COUs") AND ARBITRATION AGREEMENT**

Amazon provides its products and services, including Alexa, to users subject to Amazon's Conditions of Use ("COUs"). (Buckley Decl. ¶ 3) (attached as Exhibit 1).[3] A user must accept Amazon's COUs in order to purchase products and services from or through Amazon, including

---

[3] On a motion to compel arbitration under the FAA or ruling on a Rule 12(b)(3) motion to dismiss for improper venue, a district court may consider documents outside and integral to the pleadings, such as the agreements giving rise to the alleged obligation to arbitrate. *See Tinder v. Pinkerton Sec*., 305 F.3d 728, 735–36 (7th Cir. 2002).

purchasing an Alexa-capable device and/or registering an Alexa account. (*Id.*) No individual can be an Amazon user, including using Alexa, without first agreeing to Amazon's COUs. (*Id.*)

Amazon users expressly agree to Amazon's COUs each time they make a purchase using Amazon's standard check-out page. (*Id.* at ¶ 4.) The standard check-out page allows customers to review and confirm their orders by clicking a "Place your order" button. (*Id.*) The check-out page prominently states: "By placing your order, you agree to Amazon.com's [privacy notice](), [conditions of use]() and all of the terms found [here]()."[4] (*Id.*) The blue underlined text provides a hyperlink to the full COUs. (*Id.*) If a user does not want to accept the COUs, the user is free not to proceed with the purchase. (*Id.*) A user is under no time constraints when reviewing the COUs before placing an order. (*Id.*)

Since August 2011, Amazon's COUs have included an arbitration agreement with a class action waiver provision. (*Id.* at ¶ 7.) The arbitration provision in effect in 2014, when Alexa first launched, provided, in part: "Any dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com will be resolved by binding arbitration, rather than in court." (*Id.* at ¶ 7 & Ex. A at 5, "Disputes.") This arbitration agreement is substantively identical to the one that appears in the Amazon COUs today.

D.     AMAZON ALEXA'S TERMS OF USE ("TOUs") AND ARBITRATION AGREEMENT

In addition to agreeing to the Amazon COUs to set up an Alexa device, an Alexa user must agree to the Alexa Terms of Use ("TOUs"). (*Id.* at ¶ 11.) The COUs provide that the user also will be subject to the guidelines, terms, and agreements applicable to the specific Amazon Services used ("Service Terms"). (Buckley Decl. Ex. A at 1.) For Alexa services, those Service Terms are the publicly available TOUs.

---

[4] On the Amazon website, hyperlinks appear in blue text. In this brief, hyperlinks within quoted text are shown as blue underlined text.

Section 3.6 of the Alexa TOUs in effect on June 25, 2015 provided:

**3.6 Disputes/Binding Arbitration. Any dispute or claim arising from or relating to this Agreement or Alexa is subject to the binding arbitration, governing law, disclaimer of warranties, limitation of liability, and all other terms in the [Amazon.com Conditions of Use](). By using Alexa, you agree to be bound by those terms.**

(*Id.* at ¶ 15 & Ex. F at § 3.6.) (bold in original).

### E. PLAINTIFFS CONSENTED TO ARBITRATION.

Plaintiff Wilcosky is an Amazon customer, who made his most recent Amazon purchase on August 23, 2019. (Buckley Decl. ¶ 5.) Plaintiff Wilcosky created an Amazon account on January 14, 2014, and, in doing so, agreed to Amazon's COUs. (*Id.* at ¶¶ 5, 7.) Plaintiff Wilcosky explicitly agreed to Amazon's COUs on no less than seven occasions. (*Id.* at ¶¶ 5, 12.) Accordingly, Plaintiff Wilcosky consented to arbitration.

Plaintiff Gunderson, who is the legal representative for Plaintiff E.G., alleges that he "owns an Amazon Echo equipped with Alexa services." (Compl. ¶ 46.) Plaintiff Gunderson created an Amazon account on November 9, 1998, and, in doing so, became subject to Amazon's COUs. (Buckley Decl. ¶ 6.) Plaintiff Gunderson also activated his Alexa services on November 23, 2015, and, in doing, agreed to both Amazon's COUs and Alexa's TOUs. (*Id.* at ¶ 14.) Plaintiff Gunderson explicitly agreed to Amazon's COUs and TOUs on no less than 23 occasions. (*Id.* at ¶ 13) Accordingly, Plaintiff Gunderson and, through his legal representation, Plaintiff E.G., both consented to arbitration.

## ARGUMENT

The Federal Arbitration Act (the "FAA") makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress passed the FAA to "reverse the longstanding judicial hostility to arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The

FAA reflects an "emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam) (internal quotation marks omitted). Its "principal purpose . . . is to ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (alteration in original, citation omitted).

Plaintiffs may not avoid an arbitration agreement because it contains a class action waiver. *Id.* at 352; *see also DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015). Absent a "contrary congressional command" to override the FAA, there is no "entitlement to class proceedings for the vindication of statutory rights." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309–10 (2013).

Under the FAA, the Court must compel arbitration if (1) a valid agreement to arbitrate exists, (2) the dispute falls within the scope of the agreement, and (3) the non-moving party has refused to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (arbitration is mandatory under these circumstances). This case meets all three requirements.

I. **EACH OF PLAINTIFFS' CLAIMS ARE SUBJECT TO ARBITRATION.**

    A. **Plaintiffs Wilcosky and Gunderson Both Agreed to Arbitrate Their Claims.**

In determining whether parties agreed to arbitrate, "courts . . . apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Contracts formed in online transactions—where customers are apprised of the contract terms and indicate their assent—are enforceable to the same extent as any other contract. *See, e.g.*, *Hauenstein v. Softwrap Ltd.*, No. C07-0572MJP, 2007 WL 2404624, at *2-3 (W.D. Wash. Aug. 17, 2007) (collecting online contract cases and enforcing arbitration agreement where

plaintiff "manifested his assent . . . by 'clicking' the appropriate box"); *Sherman v. AT&T, Inc.*, No. 11 C 5857, 2012 WL 1021823, at *3 (N.D. Ill. Mar. 26, 2012) ("The clickwrap process of checking a box next to hyperlinked terms generally provides adequate notice." (citing *Treiber & Straub, Inc. v. UPS*, 474 F.3d 379, 382 (7th Cir. 2007) ("[S]ignif[ying] agreement by clicking on a box on the screen" is "common in Internet commerce."))); *DeJohn v. The .TV Corp. Int'l*, 245 F. Supp. 2d 913, 919 (N.D. Ill. 2003) (enforcing online agreement where plaintiff "had an opportunity to review the terms of the Register.com Agreement by clicking on the hyperlink Register.com provided").[5]

Here, both Plaintiffs Wilcosky and Gunderson agreed to Amazon's COUs on numerous occasions, each time reaffirming their consent to arbitrate their claims against Amazon. They had actual, constructive, and/or inquiry notice of, and agreed to, the Conditions of Use and the arbitration clause, and that online agreement is enforceable.

**B.     Plaintiff E.G. Is Bound By Her Legal Representative's Consent To Arbitration.**

Plaintiff E.G., a minor, is bound by her legal representative's consent to arbitration. Although Plaintiff E.G. is not herself a signatory to the arbitration agreement, arbitration agreements "may encompass non-signatories under contract and agency principles." *Romney v. Franciscan Med. Grp.*, 349 P.3d 32, 42 (Wash. Ct. App. 2015) (citing *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006)); *Townsend v. Quadrant Corp.*, 268 P.3d 917, 922 (Wash. 2012).

---

[5] In this case, the COUs include a choice-of-law provision electing Washington state law (Buckley Decl. ¶ 8), while the Complaint invokes Illinois law. (Compl. ¶¶ 69–80 (asserting Illinois statutory claims under BIPA).) No conflict of laws exists, however, because Washington and Illinois law support enforcement of Plaintiffs' arbitration agreement with equal force. *See Barron v. Ford Motor Co. of Canada*, 965 F.2d 195, 197 (7th Cir. 1992) ("[B]efore entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states.").

Here, E.G. must be compelled to arbitrate for at least three separate and independent reasons. *First*, E.G. must arbitrate her claims under principles of equitable estoppel, which "preclude[] a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Townsend*, 268 P.3d at 922 (holding children equitably estopped from avoiding arbitration because their claims sought to knowingly exploit a contract signed by their parents while avoiding the burdens it imposed) (internal quotation marks and citation omitted). As explained above, E.G.'s father (Plaintiff Gunderson) expressly agreed to arbitrate his claims against Amazon when he purchased his Amazon Echo device. E.G. "is three-years-old," "resides in the home [of] her father," and alleges that the Amazon Echo device purchased by her father collected her biometric information without complying with BIPA's notice and consent requirements. (Compl. ¶¶ 55–61.) At bottom, E.G.'s claims arise from "benefits of a contract" – namely, the contract between Plaintiff Gunderson and Amazon regarding his purchase of an Amazon Echo device. *See Townsend*, 268 P.3d at 922. That contract requires E.G. to arbitrate her claims.

*Second*, "[w]here claims are based on the same set of facts and inherently inseparable, the court may order arbitration of claims against the party even if that party is not a party to the arbitration agreement." *Romney*, 349 P.3d at 42 (citing *Townsend v. Quadrant Corp.,* 224 P.3d 818 (Wash Ct. App. 2009), *aff'd on other grounds*, 268 P.3d 917 (Wash. 2012)). Plaintiff E.G.'s claims are inherently inseparable from her legal representative's claims—her father chose to use an Alexa device in their home, and he consented to arbitrate. Plaintiff E.G.'s claims, if any, derive from her father's actions, and she is bound by his consent to arbitration. E.G.'s claims are intimately connected with the underlying agreement signed by her father, and if it is established in arbitration that Plaintiff Gunderson consented to any collection of E.G.'s biometric information on

her behalf—as E.G.'s "legally authorized representative," 740 Ill. Comp. Stat. 14/15—E.G.'s claims will fail. Moreover, as in *Townsend*, Plaintiffs Wilcosky, Gunderson, and E.G. "are referred to collectively as the '[P]laintiffs' and they present [three] identical causes of action." 268 P.3d at 922.

*Third*, Plaintiff E.G. is bound to arbitrate under agency principles. Under Illinois law, "[a] party to a contract need not personally participate in its formation where he is represented by an agent. An agent may bind his principal contractually upon proof of the agency relationship and proof that the agent had authority to bind his principal in contract. Knowledge of the agent relative to the transaction is imputed to his principal." *In re Reed*, 532 B.R. 82, 97 n.7 (Bankr. N.D. Ill. 2015) (quoting *Bull v. Mitchell*, 448 N.E.2d 1016, 1023 (Ill. App. Ct. 1983) (citing 1 Restatement (Second) of Agency § 140)). Here, Plaintiff E.G.'s father and legal representative acted as her agent in purchasing an Alexa device, installing it in their home, and agreeing to arbitrate.

Courts have applied these principles to purchases made online, holding that individuals who authorize others to place purchases on their behalf are bound by the terms and conditions to which their agent agreed. *See Chung v. StudentCity.com, Inc.*, No. 10-cv-10943, 2013 WL 504757, *2–4 (D. Mass. Feb. 12, 2013) (holding parents had authorized daughter to make online payments and she was thus their agent and could bind parents to terms and conditions); *Hofer v. Gap, Inc.*, 516 F. Supp. 2d 161, 175–76 (D. Mass. 2007) (holding that plaintiff was bound by Expedia's terms and conditions because plaintiff's traveling companion booked plaintiff's travel arrangements on Expedia's site and accepted the online terms and conditions and because "the person booking the tickets is acting as an agent on behalf of the other members of the traveling party"); *Adsit Co., Inc. v. Gustin*, 874 N.E.2d 1018, 1023–24 (Ind. Ct. App. 2007) (holding that defendant was bound by forum selection clause in online agreement because daughter-in-law provided credit card to

mother-in-law for purchase and thereby gave her mother-in-law "actual authority to engage in the transaction on her behalf"). This Court should compel Plaintiff E.G. to arbitrate her claims.

## II.     AMAZON'S ARBITRATION AGREEMENT IS VALID.

Amazon's COUs contain a conspicuous arbitration agreement and class action waiver, written in plain English, under the bold and capitalized heading "**DISPUTES**," with key provisions in bold font. (Buckley Decl. ¶ 7; Exhibit A at 5–6.) Under the arbitration agreement, plaintiffs retain the same substantive rights and can obtain the same individual relief in arbitration as in Court. (*Id.*) The arbitration agreement includes other consumer-friendly terms. For example, Amazon agrees to reimburse all arbitration fees "for claims totaling less than $10,000 unless the arbitrator determines the claims are frivolous." (Buckley Decl. Ex. A ¶ 7.) Additionally, Amazon disclaims the right to seek attorneys' fees, except for the defense of frivolous claims. (*Id.*) Putative plaintiffs also retain the option of small claims court for qualifying claims. (*Id.*)

The arbitration agreement also contains clear instructions regarding how to commence arbitration, via "letter requesting arbitration and describing your claim" to Amazon. (*Id.*) The agreement explains that the arbitration "will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Supplementary Procedures for Consumer-Related Disputes," and directs the customer to the rules "at www.adr.org or by calling 1-800-778-7879." (*Id.*) The arbitration agreement also permits the customer to "choose to have the arbitration conducted by telephone, based on written submissions, or in person in the county where you live or at another mutually agreed location." (*Id.*)

Courts around the country have repeatedly enforced Amazon's arbitration agreement. *See, e.g.*, *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1069 (S.D. Cal. 2015) (enforcing Amazon's arbitration agreement with customers under Washington law, where standard check-out

page notified customer that by placing order, customer agreed to Amazon's COUs, which were hyperlinked and set off in blue font); *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1173–74, 1178 (W.D. Wash 2014) (enforcing Amazon's arbitration agreement with customers under Washington law, where plaintiffs agreed to hyperlinked COUs when renewing Prime membership and making purchases); *Ranazzi v. Amazon.com, Inc.*, 46 N.E.3d 213, 218 (Ohio Ct. App. 2015) (compelling arbitration and finding customer accepted arbitration agreement "by registering for an Amazon account and placing orders"); *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1168–70 (W.D. Wash. 2013), *aff'd*, 669 F. App'x 487 (9th Cir. 2016) (enforcing Amazon's agreements with third-party sellers under Washington law, where plaintiffs clicked box indicating assent next to hyperlinked terms). Simply put, Amazon's COUs contain a valid and enforceable arbitration agreement.

### III. PLAINTIFFS' CLAIMS ARE WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT.

Whether Plaintiffs' claims fall within the scope of the arbitration agreement is an issue for the arbitrator to decide. *Corrigan v. Domestic Linen Supply Co.*, No. 12 C 0575, 2012 WL 2977262, at *2 (N.D. Ill. July 20, 2012) ("[W]hen parties agree in a valid arbitration agreement that the AAA's rules apply, an arbitrator should decide the scope of arbitrability.") (citation omitted). The Conditions of Use incorporate the American Arbitration Association's Supplementary Procedures for Consumer-Related Disputes ("AAA Rules"). *Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC,* 51 F. Supp. 3d 713, 719 (N.D. Ill. 2014) ("[W]here the parties agree to arbitration pursuant to the rules of the American Arbitration Association ('AAA'), the parties incorporate the AAA's rules into the arbitration agreement."). Those rules provide, in relevant part, that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration

agreement or to the arbitrability of any claim or counterclaim." Rule 14, AAA Consumer Rules, available at: https://www.adr.org/sites/default/files/Consumer%20Rules.pdf.

Nevertheless, were this Court to determine the scope of arbitration, Plaintiffs' claims are plainly within the broad arbitration provision. Because the FAA reflects a "liberal federal policy favoring arbitration agreements," "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). "[W]hen a contract contains an arbitration clause, a strong presumption in favor of arbitration exists and courts have no choice but to order arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *CK Witco Corp. v. Paper Allied Indus.*, 272 F.3d 419, 421–22 (7th Cir. 2001) (internal quotation marks omitted).

The Amazon arbitration agreement broadly encompasses "[a]ny dispute or claim relating in any way . . . to any products or services sold or distributed by Amazon or through Amazon.com." (Buckley Decl. ¶ 7.) The Alexa device is an Amazon product, and the Alexa voice service is an Amazon service. Under the plain language of the agreement, Plaintiffs' claims "relate" to "products or services sold … by Amazon" because they allege that Amazon impermissibly created, collected, used, and stored their "voiceprints" through Amazon's Alexa service. (Compl. ¶¶ 36–63; Buckley Decl. ¶ 7.)

Courts consistently interpret arbitration provisions applying to "any dispute or claim," coupled with broad "relating to" or "arising out of" language, expansively to encompass statutory, tort, and other common-law claims. *See, e.g.*, *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (arbitration provisions using "arising out of" or "relating to" language are "extremely broad and capable of an extensive reach"); *accord Carbajal v. H&R Block*

*Tax Servs., Inc.*, 372 F.3d 903, 904–5 (7th Cir. 2004) (concluding "[i]t would be hard to draft a broader clause" than the "any claim or dispute (whether in contract, tort or otherwise) in any way relating to the Agreements" clause at issue); *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993) (finding arbitration clause applying to "all disputes 'arising out of' the Agreement . . . reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se"); *Shipp v. XA, Inc.*, No. 06 C 1193, 2006 WL 2583720, at *3 (N.D. Ill. Aug. 31, 2006) ("Broad arbitration clauses," such as "any dispute, controversy or claim arising out of or related to" clauses, "create a presumption of arbitrability."). Therefore, Plaintiffs' claims fall squarely within the "[a]ny dispute or claim" scope of the arbitration agreement.

## IV. THE COURT SHOULD DISMISS THE ACTION IN FAVOR OF ARBITRATION.

Because all of the claims set forth in the Complaint are subject to arbitration, Plaintiffs' Complaint should be dismissed pursuant to Rule 12(b)(3) for improper venue. *See Soucy v. Capital Mgmt. Servs., L.P.*, No. 14 C 5935, 2015 WL 404632, *4 (N.D. Ill. Jan. 29, 2015). In fact, the Seventh Circuit has "repeatedly affirmed district courts' decisions dismissing suits where all of the claims must be arbitrated according to the agreement." *Id.* at *6.

In the alternative, under the FAA, the Court may stay the action pending arbitration "on application of … the parties." 9 U.S.C. § 3; *see Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011). Here, Plaintiffs and Amazon agreed to have the arbitration conducted "by telephone, based on written submissions, or in person in the county where [Plaintiffs] live or at another mutually agreed location." (Buckley Decl. ¶ 7.) On information and belief, Plaintiffs reside in this District. (Compl. ¶¶ 15–17.) The Court, therefore, may instead stay this action, pending arbitration of Plaintiffs' individual claims in this District. *See, e.g.*, *Int'l Ins.*

*Agency Servs., LLC v. Revios Reinsurance U.S., Inc.*, No. No. 04 C 1190, 2007 WL 951943, at *1, 7 (N.D. Ill. Mar. 27, 2007) (granting motion to compel and staying proceedings pending arbitration).

## CONCLUSION

For the foregoing reasons, Amazon respectfully asks this Court to grant Amazon's motion to compel arbitration and dismiss Plaintiffs' claims pending arbitration of the claims on an individual, non-class basis. In the alternative, the Court should stay the claims pending individual arbitration.

Dated: September 3, 2019                                   Respectfully submitted,

                                                           **AMAZON.COM, INC.**
                                                           **AMAZON.COM SERVICES, INC.**
                                                           By: */s/ Beth Herrington*
                                                                One of Their Attorneys

                                                           Beth Herrington
                                                           beth.herrington@morganlewis.com
                                                           Alex Berger
                                                           alex.berger@morganlewis.com
                                                           Tyler Zmick
                                                           tyler.zmick@morganlewis.com

                                                           MORGAN, LEWIS & BOCKIUS LLP
                                                           77 West Wacker Drive
                                                           Chicago, IL  60601-5094
                                                           Telephone:    +1.312.324.1000
                                                            Facsimile:   +1.312.324.1001

## **CERTIFICATE OF SERVICE**

I, Elizabeth B. Herrington, an attorney, certify that on September 3, 2019, I caused a copy of the foregoing document to be served upon all counsel of record for all parties that have appeared via the Court's CM/ECF system.

By: */s/ Elizabeth B. Herrington*
Elizabeth B. Herrington