**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BENNETT WILCOSKY, MICHAEL GUNDERSON, and MICHAEL GUNDERSON as next friend of E.G., a minor, each individually, and on behalf of all others similarly situated, | CIVIL ACTION |
| Plaintiffs, | No. 1:19-cv-05061 |
| | Hon. Franklin U. Valderrama |
| v. | CLASS ACTION |
| AMAZON.COM, INC. and AMAZON.COM SERVICES, INC., | |
| Defendants. | |

**PLAINTIFFS' OPPOSED MOTION FOR DECLARATORY JUDGMENT THAT**
**ILLINOIS LAW APPLIES TO PLAINTIFFS' CLAIMS**

Plaintiffs Bennett Wilcosky, Michael Gunderson, and Michael Gunderson as next friend of E.G., a minor ("Plaintiffs"), through their counsel, hereby respectfully move this Court for an order declaring that Illinois law applies to this case. Per this Court's Case Procedures, counsel for Plaintiffs asked defense counsel whether Defendants will oppose the motion, and defense counsel answered "yes," Defendants oppose this motion.

## I. INTRODUCTION

Counsel for Defendants Amazon.com, Inc. and Amazon.com Services, Inc. (collectively "Amazon" or "Defendant") has already indicated to Plaintiffs that Amazon will likely seek to enforce the Washington choice-of-law clause contained in its Conditions of Use ("COUs"). If Amazon succeeds in having Washington law apply, then the Illinois Biometric Information Privacy Act ("BIPA") will not apply to the alleged wrongdoing in this case (or to any other case in which the defendant has a non-Illinois choice-of-law clause in its terms of use). This presents a significant problem for the State of Illinois because BIPA incorporates a fundamental public

1

policy designed expressly to protect the privacy rights of Illinois citizens in their biometric data from "major national corporations." If all that is needed to nullify BIPA is for major national corporations like Amazon to put non-Illinois choice-of-law clauses in their contracts of adhesion, then BIPA may as well have never been passed in the first place.

There are two primary reasons why it is appropriate for the Court to decide this issue now, rather than later in the case—both of which concern judicial economy.

One, choice-of-law is a threshold issue that determines the rights and remedies of both Plaintiffs and Defendant. If the parties wait to brief this issue until a motion to dismiss, then inevitably the motion will argue that Washington law applies, but will also include an "even if Illinois law applies" section. In turn, Plaintiffs' response will argue that Illinois law applies, plus an "even if" section concerning Washington law. The Court and the parties will have to perform double the work. This is a waste of time and resources for all involved. All will be better served if the Court decides the issue in advance.

Two, the lack of clarity on choice-of-law is preventing immediate consolidation and streamlining of related cases. The instant case, filed originally in Illinois, uses Illinois conflict-of-law and choice-of-law analysis. But Plaintiffs in this case are coordinating with Plaintiffs in two other cases, *Flores v. Amazon* and *Cooper v. Amazon*. Both *Flores* and *Cooper* were filed originally in Washington and subsequently transferred to this district under 28 U.S.C. § 1404(a). As such, Washington choice-of-law principles apply to those cases (*see Atlantic Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 65 (2013)) unless they are consolidated with a lower-numbered case, like the instant case, in which circumstance those cases may cease to receive Washington choice-of-law treatment and instead inherit application of Illinois choice-of-law principles from this case. And while both Illinois and Washington look to § 187 of the Restatement for choice-of-law analysis in this situation, Washington choice-of-law jurisprudence provides additional arguments in favor of applying Illinois law. Plaintiffs in this case and *Flores*/*Cooper* must do what is best for all putative class members, and without clarity on choice-of-law, that means preserving all available arguments by not consolidating at this stage.

2

As a result, the Court and all Parties are missing out on the efficiency gains that would result from consolidation.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

In June 2019, Plaintiffs filed this case in the Circuit Court of Cook County. ECF 1. In July 2019, Amazon removed this case under CAFA to this Court. *Id.* Amazon's Conditions of Use applicable at that time included an arbitration clause and a Washington choice-of-law clause, but no forum selection clause. ECF 17, Exhibit A, ¶¶ 7, 8. Amazon moved to compel arbitration, ECF 17, and moved to dismiss the case under Rules 12(b)(2) and 12(b)(6), ECF 20. Notably, in its Rule 12(b)(6) motion, Amazon did not seek to enforce its Washington choice-of-law provision. *See* ECF 20.

On February 5, 2021, the Court found Wilcosky and Gunderson's claims were subject to arbitration and dismissed their claims without prejudice.

In May 2021, Amazon modified its Conditions of Use to: (1) remove Amazon's mandatory arbitration clause and class action waiver; and (2) add a forum selection clause for King County, Washington.

On June 28, 2021, *Flores, et al. v. Amazon.com, Inc., et al.*, No. 2:21-cv-00873 ("*Flores*"), a case similar to the instant case, was filed in the Western District of Washington.

On July 7, 2021, *Cooper v. Amazon.com, Inc., et al.*, No. 2:21-cv-00915 ("*Cooper*"), a case similar to the instant case, was filed in the Western District of Washington.

On July 12, 2021, the Parties in the instant case submitted a joint stipulation wherein Plaintiffs agreed to Amazon's updated COUs in exchange for Amazon withdrawing its motion to compel arbitration. ECF 70.

In addition, pursuant to Amazon's request, plaintiffs in *Flores* and *Cooper* stipulated to transfer venue to this Court pursuant to 28 U.S.C. § 1404(a), filing stipulations on July 29, 2021 and July 30, 2021, respectively. In doing so, Amazon voluntarily waived its Washington forum selection clause.

On August 13, 2021, in *Hogan v. Amazon.com, Inc.*, No. 1:21-cv-03169, Amazon moved to dismiss an unrelated BIPA case pending before Judge Leinenweber based in part on its Washington choice-of-law provision. No. 1:21-cv-03169, ECF 36.

On August 25, 2021, *Flores* was reassigned to this Court.

On August 31, 2021, *Cooper* was reassigned to this Court.

Counsel in this case, *Flores*, and *Cooper* are all working cooperatively.

On October 8, 2021, the Court directed the parties to file a joint status report regarding the status of a proposed plan to consolidate or coordinate *Wilcosky*, *Flores*, and *Cooper*.

On October 18, 2021, Plaintiffs' counsel in *Wilcosky* emailed counsel for Amazon asking if it planned to assert a choice-of-law defense.

> Beth & Greg-
>
> Quick question for you: Is Amazon planning to enforce its Washington Choice of Law provision in *Wilcosky* (or *Flores*/*Cooper*)? We had assumed "no," based on Amazon waiving its Washington Forum Selection Clause, but Amazon's Choice of Law arguments in the Amazon Photos case now proceeding in the NDIL suggest our assumption may be wrong. Please confirm.

Exhibit A. On October 19, 2021, counsel for Amazon responded as follows: "Hi Michael—While we are of course still considering a strategy, we do anticipate enforcing the Washington choice of law provision." Exhibit A.

On October 21, 2021, the Parties filed a joint report regarding coordination or consolidation of *Wilcosky, Flores*, and *Cooper*. Plaintiffs explained that, at this juncture, they oppose filing a master consolidated complaint. Amazon explained that its position was that all three cases should be consolidated.

This sequence of events shows that Amazon seeks to selectively enforce portions of its COUs when it suits Amazon and purposely waives portions of its COUs when it suits Amazon. Amazon's desire for a consolidated complaint further evidences that it is attempting to eliminate substantive arguments against application of the choice-of-law clause that *Flores* and *Cooper* have under Washington choice-of-law jurisprudence.

4

**III.    ARGUMENT: THE COURT SHOULD NOT ENFORCE AMAZON'S WASHINGTON CHOICE-OF-LAW CLAUSE.**

Under well-established Illinois choice-of-law jurisprudence, the Court should not enforce Amazon's Washington choice-of-law provision because enforcing it in this case would violate fundamental Illinois public policy, and because Illinois has a materially greater interest in the litigation than Washington. In short, enforcing the Washington choice-of-law provision would effectively nullify the will of the Illinois Legislature, as expressed when it enacted BIPA.

Courts in Illinois follow the Restatement (Second) of Conflict of Laws (the "Restatement") when conducting a choice-of-law analysis. *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 155 (2007). Generally, Illinois courts enforce contractual choice-of-law provisions. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 351, 770 N.E.2d 177, 194 (2002). However, following the Restatement § 187, if such a provision "would *both* violate fundamental Illinois public policy *and* Illinois has a materially greater interest in the litigation than the chosen State," then courts will find it unenforceable. *Smurfit Newsprint Corp. v. S.E. Paper Mfg.*, 368 F.3d 944, 949 (7th Cir. 2004) (emphasis in original). Amazon's choice-of-law provision fails this test: it both violates fundamental Illinois public policy (BIPA), and Illinois has a materially greater interest in litigation concerning the rights of Illinois citizens than Washington does.

**A.    Enforcing Amazon's choice-of-law provision would violate a fundamental Illinois public policy.**

Requiring the application of Washington law to this case would violate BIPA, which incorporates a fundamental Illinois public policy.

"There can be no reasonable doubt that the Illinois Biometric Information Privacy Act embodies a fundamental policy of the state of Illinois." *In re Facebook Biometric Info. Litig.*, 185 F. Supp. 3d 1155, 1169 (N.D. Cal. 2016). "By its express terms, BIPA manifests Illinois' substantial policy of protecting its citizens' right to privacy in their personal biometric data." *Id*. "[T]he plain language of BIPA indisputably evinces a fundamental policy of Illinois." *Id*.

5

In *Facebook Biometric*, the court "decline[d] to enforce the California choice-of-law provision" and instead applied Illinois law in a BIPA case. *Id*. at 1170. Like those in Illinois, courts in California follow the approach under Restatement § 187 when determining whether to enforce a contractual choice-of-law provision. *See id*. ("'The parties' choice generally will be enforced unless the other side can establish both that the chosen law is contrary to a fundamental policy' of the state law alternative to the contractual choice, and that the other state 'has a materially greater interest in the determination of the matter.'") (quoting *Washington Mutual Bank, FA v. Superior Court*, 24 Cal. 4th 906, 917 (2001)). Thus, the court's reasoning in *Facebook Biometric* applies with equal force to the instant case.

The *Facebook Biometric* court determined that the contract between users and Facebook was valid, as was the choice-of-law clause.[1] *Id.* at 1167-68. Nonetheless, the court found the choice-of-law clause unenforceable because it failed the Restatement § 187 test, even though Facebook had its headquarters in the chosen state (California). *Id*. at 1168–69 ("While these initial factors count in favor of enforcing the parties' choice of California law, the remaining tests weight heavily against it."). Similarly, while Amazon has its headquarters in the chosen state (Washington), the Court should still decline to enforce the Washington choice-of-law clause for the same reasons the court in *Facebook* declined.

> It is equally undeniable that enforcing the contractual choice of California law would be contrary to [a fundamental Illinois policy] in the starkest way possible. Facebook tries to downplay the conflict as merely the loss of a claim. But if California law is applied, the Illinois policy of protecting its citizens' privacy interests in their biometric data, especially in the context of dealing with "major national corporations" like Facebook, would be written out of existence. That is the essence of a choice-of-law conflict.

*Id*. (internal citations omitted). The same is true in the instant case—if Washington law applies, then BIPA would be written out of existence. That would be an absurd result: Illinois residents would be stripped of the protections of an Illinois statute for conduct occurring in Illinois.

---

[1] For purposes of the instant motion, Plaintiffs do not contest the validity of the contract containing the choice of law provision at issue between Amazon and Plaintiffs. However, Plaintiffs reserve all rights to contest the contract's validity.

6

While Washington, unlike California, does have a biometrics law, it is not the same as BIPA and is not a reason to enforce Washington law. One, the Washington law does not provide for a private right of action. RCW 19.375.030(2). This means that if Washington law applies, then Plaintiffs (and all Illinois citizens) will enjoy zero protection in their biometric information from Amazon.[2] This alone means the complete nullification of all biometrics protection for Illinois citizens despite BIPA. "Unlike Illinois," "[Washington] has not legislatively . . . afforded a private cause of action to enforce violations of [a right to privacy in personal biometric data]." *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d at 1170.

Two, Washington's definition of "biometric identifier" also differs from BIPA in that it arguably excludes the information at issue in the instant case: "'Biometric identifier' does not include a physical or digital photograph, video or audio recording or data generated therefrom[.]"[3] RCW 19.375.010(1). Plaintiffs allege in this case that Amazon generated voiceprints from audio recordings of Plaintiffs. FAC ¶¶ 9, 10, 28, 38, 39, 48, 49, 57, 58. Thus, Washington's biometrics law is arguably inapplicable to Plaintiffs' claim.

Three, the Washington law does not require "informed consent," while BIPA does. *See* 740 ILCS 14/10. Instead, the Washington law only requires "notice." RCW 19.375.020(1). "Notice is a disclosure, that is not considered affirmative consent[.]" RCW 19.375.020(2). This also makes the laws completely different. Illinois's fundamental public policy, as expressed through BIPA, makes informed consent a central component of privacy rights in personal biometric data. Washington's law does not, which further highlights not only the distinction

---

[2] The same would be true for any non-Illinois company doing business in Illinois, such as Google, Facebook, Apple, etc. Given BIPA expressly mentions the threat from "major national corporations," preventing application of BIPA to major national corporations like Amazon because of choice of law clauses in contracts of adhesion would truly nullify BIPA and its stated purpose.

[3] Under BIPA, "'Biometric identifier' means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. BIPA's definition of "biometric identifier" includes a list of exclusions, *see id.*, but does not exclude any of the information at issue in this case.

between the two states' laws, but also how application of Washington's law would violate Illinois's stated fundamental public policy.[4]

In the end, the Washington law provides zero protection to Illinois citizens generally, and certainly none to Plaintiffs, specifically. The mere fact that the Washington law refers to "biometrics" does not make it a stand-in for BIPA; the Washington law is not at all comparable to BIPA and, in fact, includes provisions that clearly violate BIPA. That said, what matters is not that applying Washington law could or would change the outcome of the case. *Pactiv LLC v. Perez*, No. 20-cv-01296, 2020 WL 7123070, at *6 (N.D. Ill. Dec. 4, 2020). Rather, what matters is that applying Washington law would "violate fundamental Illinois public policy," as expressed in BIPA.[5]

BIPA is indisputably a fundamental public policy of Illinois, and Washington's biometrics law is contrary to BIPA. Accordingly, applying Washington's law to this case would fail the first prong of the Restatement § 187 test.

**B.**    **Illinois has a materially greater interest in this case than Washington.**

The alleged wrongdoing occurred in Illinois. FAC ¶¶ 37, 47, 56. Plaintiffs and *all* putative class members are citizens of Illinois. FAC ¶¶ 15, 16, 17, 64. Amazon conducts business throughout Illinois. FAC ¶¶ 18, 19. Stated simply, the case concerns Illinois citizens who suffered injuries in Illinois by a company that does business in Illinois. The fact that Amazon is headquartered in Washington is of little to no bearing on the case. *See Pactiv*, 2020 WL

---

[4] Moreover, "a waiver of statutory rights must be explicit." *Hagene v. Derek Polling Constr.*, 902 N.E.2d 1269, 1274 (Ill. App. Ct. 2009) (citation omitted); *see also Gallagher v. Lenart*, 874 N.E.2d 43, 62 (Ill. 2007) ("[W]here an important statutory right is at issue, an explicit manifestation of intent is required before the right in question can be deemed waived." (citations omitted); *Northbrook Bank & Tr. Co. v. O'Malley*, 2017 IL App (1st) 160438-U, ¶ 44 (Ill. App. Ct. 2017) ("[O]ur court has declined to find a waiver when the contract language does not explicitly refer to the statutory right that is alleged to have been waived."). Amazon's COUs do not explicitly waive rights under BIPA; thus, Plaintiffs have not contracted away their rights to enforce BIPA.

[5] In addition, in the absence of BIPA, Plaintiffs would have no other recourse. They likely would have no claim under Washington's biometrics law, and have not pleaded any common law claims. This differentiates this case from other Illinois cases discussing choice-of-law.

7123070, at *6 (court applied California law even though valid contract contained Illinois choice-of-law clause and business entity party was headquartered in Illinois because the contract was performed in California and the opposing, individual party resided in California).

The court in *Facebook Biometric* came to the same conclusion. "Illinois' greater interest in the outcome of this BIPA dispute is also readily apparent. The fundamental question on this point is "'which state, in the circumstances presented, will suffer greater impairment of its policies if the other state's law is applied.'" *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d at 1170 (quoting *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010)). Just as in *Facebook*, Illinois will certainly suffer greater impairment if the Court applies Washington law than the other way around: if Washington law is applied, Illinois will not be able to enforce its fundamental policy of protecting individual biometric privacy rights, as expressed in BIPA. In contrast, Washington "law and policy will suffer little, if anything at all, if BIPA is applied." *Id*.

Other than Amazon being headquartered in Washington, Amazon can offer nothing as to why Washington has a greater interest in this case. And "[i]f the chosen state's interest in enforcing a choice-of-law provision alone were enough to trump the interest of the non-chosen state, Section 187 would largely be a nullity." *Id*. Moreover, "Illinois has 'a substantial, case-specific interest in protecting its resident[s] . . . from losing statutory protections." *Id*. (quoting *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010)); *see also Vance v. Amazon.com Inc.*, No. C20-1084JLR, 2021 WL 1401633, at *8 (W.D. Wash. Apr. 14, 2021) ("Aside from Amazon's headquarters, the allegations largely do not concern Washington. Accordingly, this factor favors application of Illinois law.") (internal citation omitted).

*Vance* is particularly compelling because the plaintiffs and the putative class in that case are all Illinois residents, the defendant is Amazon, and the plaintiffs allege privacy violations, including a BIPA claim—just like the instant case. The court in *Vance* explicitly referenced BIPA and used it as a reason to apply substantive Illinois law rather than Washington law:

> While Amazon is correct that Washington has its own biometrics statute that
> differs from BIPA, that difference in itself encourages the application of Illinois
> law for Plaintiffs and a putative class who are all Illinois residents. Illinois made
> clear through BIPA that it has substantial interest in protecting its residents'
> biometric data, even if the harm is inflicted by an out-of-state corporation. Indeed,
> Illinois's recognition of both the role of major national corporations as well as the
> unknown nature of the full ramifications of biometric technology underscores
> Illinois's great interest in protecting its citizenry against a multitude of harms
> stemming from a privacy violation . . . . Washington's interest, on the other hand,
> is relatively insignificant in comparison, as illustrated by the lack of Washington's
> connection to the majority of substantive allegations in Plaintiffs' complaint.

*Vance*, 2021 WL 1401633, at *8 (W.D. Wash. Apr. 14, 2021) (internal citations omitted).

Just like in *Facebook Biometric* and *Vance*, Illinois unquestionably has a greater interest in protecting Illinois residents' biometric privacy rights than does Washington. Thus, applying Washington law would fail the second prong of the Restatement § 187 test.

The decision for the Court should be easy: Section 187 of the Restatement dictates that the Court should apply Illinois law despite a choice-of-law provision specifying Washington law. BIPA expresses a fundamental policy of the State of Illinois that would be violated—nullified, even—if the Court applies Washington law. In addition, the facts alleged in this case demonstrate that Illinois has a materially greater interest in this case than Washington because all case-relevant events occurred in Illinois. Illinois citizens deserve the protection of Illinois law while in Illinois when the law at issue is a fundamental policy of the State of Illinois.

## IV.    CONCLUSION

For the above reasons, Plaintiffs respectfully request that this Court enter an order declaring that Illinois law applies to the instant case, and for any other relief that this Court deems appropriate.

*Signatures on following page*

Respectfully Submitted,

November 9, 2021                                    Plaintiffs Bennett Wilcosky, Michael Gunderson,
                                                   and Michael Gunderson as next friend of E.G., a
                                                   minor, individually, and on behalf of all similarly
                                                   situated individuals,


                                                   s/ Michael Aschenbrener
                                                   One of their attorneys

***Attorneys for Plaintiffs and the Putative Class***

Gerald J. Bekkerman (gbekkerman@tpmblegal.com)
Bradley N. Pollock (bpollock@tpmblegal.com)
Sean P. Murray (smurray@tpmblegal.com)
Marc A. Taxman (mtaxman@tpmblegal.com)
Taxman, Pollock, Murray & Bekkerman, LLC
225 W. Wacker Drive, Suite 1750
Chicago, IL 60606
Tel: 312-586-1700
Fax: 312-586-1701

Michael Aschenbrener (6292306) (masch@kamberlaw.com)
Adam C. York (6294143) (ayork@kamberlaw.com)
KamberLaw LLC
220 N Green St
Chicago, IL 60607
Telephone: (212) 920-3072
Facsimile: (212) 202-6364

Scott A. Kamber (*pro hac vice*) (skamber@kamberlaw.com)
KamberLaw, LLC
201 Milwaukee St, Suite 200
Denver, CO 80206
Telephone: (303) 222-9008

Deborah Kravitz (*pro hac vice* to be filed) (dkravitz@kamberlaw.com)
KamberLaw, LLP
401 Center St, Suite 111
Healdsburg, CA 95448
Telephone: (707) 820-4247

11

**<u>CERTIFICATE OF SERVICE</u>**

I, Michael Aschenbrener, an attorney, certify that I filed the foregoing using the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record on this 9th day of November, 2021.

s/ Michael Aschenbrener

Michael Aschenbrener