## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| BENNETT WILCOSKY, MICHAEL GUNDERSON, MICHAEL GUNDERSON as next friend of E.G., a minor, individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>AMAZON.COM, INC., a Delaware corporation, and AMAZON.COM SERVICES, LLC, a Delaware limited liability company,<br><br>    Defendants. | CIVIL ACTION<br><br>No. 1:19-cv-05061<br><br>CONSOLIDATED with:<br><br>   1:21-cv-04064<br>   1:21-cv-04633<br>   1:21-cv-05858<br>   1:21-cv-06010<br><br>Hon. Franklin U. Valderrama<br><br>**CLASS ACTION**<br><br>JURY DEMANDED |

## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Plaintiffs Bennett Wilcosky, Michael Gunderson, Michael Gunderson as next friend of E.G., a minor, Donna Rucker, Jason Stebbins, Sandy White, Julie Bloom Stebbins, Cheri Anne Clarke, Becky White, and Carol Cooper, individually and on behalf of all others similarly situated, submit this Consolidated Amended Class Action Complaint against Defendants Amazon.com, Inc., and Amazon.com Services, LLC (collectively, "Amazon"). Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.[1]

---

[1] Per ECF 93, this matter is consolidated with 1:21-cv-04064, 1:21-cv-04633, 1:21-cv-05858, and 1:21-cv-06010. Following the Court's May 16, 2022 order appointing KamberLaw as Interim Class Counsel,

**INTRODUCTION**

1.      Amazon—once known primarily as "Amazon.com," but now known ubiquitously as "Amazon" is no longer a mere seller of books online. In fact, Amazon is no longer just a seller of things. Data collection is also a core part of its business.

2.      Among so many products and services Amazon offers, its "Alexa" voice-based virtual assistant is perhaps the greatest threat to individual privacy this country has yet seen.

3.      Alexa is everywhere and is always listening.

4.      Alexa is embedded in innumerable devices from Amazon's own Echo "smart" speakers and Fire tablets to a vast array of "smart" items made by other companies, such as smartphones, TVs, light switches, thermostats, door locks, and even light bulbs—to name but a few.[2]

5.      Alexa listens to users, records users' voices, and responds to the users' voice commands using speech and voice recognition technology. Alexa uses the users' voice recordings to answer the users' questions and fulfill the users' requests.[3] Alexa even learns from users' recordings by analyzing search and voice patterns.[4] In so doing, Amazon creates voiceprints of each speaker—including the Alexa device owner as well as anyone who happens to be in the room and speaking while Alexa is recording.

---

KamberLaw contacted counsel representing all named plaintiffs in all consolidated cases to confirm each plaintiff's participation in the consolidated action. KamberLaw received responses from all counsel. Based on those responses, this complaint includes allegations on behalf of all named plaintiffs in those cases that affirmatively stated their intent to participate.
[2] https://www.reviewed.com/smarthome/features/everything-that-works-with-amazon-echo-alexa
[3] For example, "Alexa, what is the score of the Bulls game?"
[4] https://wgntv.com/2019/05/16/a-warning-to-listen-up-as-smart-speakers-listen-in/

6.      In an effort to improve the voice and speech recognition technology, Amazon retains every voice recording and voiceprint it captures of users and any individual who happens to be speaking near the Alexa device. In other words, every time someone with an Alexa-enabled device says, "Alexa, how warm will it be today?," Amazon keeps a recording and voiceprint of the user speaking those words, as well as any follow-up statements or questions, and the statements of any other persons who just so happen to be within recording distance of the Alexa device.

## NATURE OF THE ACTION

7.      This claim involves Illinois' Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA"), a law that regulates companies that collect, store, and use Illinois citizens' biometric data, such as fingerprints, scans of face geometry, and voiceprints, and information derived therefrom.

8.      Amazon is a world leader in e-commerce, cloud computing, digital streaming, and artificial intelligence.  In 2020, Amazon's net sales exceeded $386 billion globally, with over $263 billion in the United States alone.[5]

9.      According to James Marcus, an early employee of Amazon who became senior editor of Amazon.com: "It was made clear from the beginning that data collection was also one of Amazon's businesses.  All customer behavior that flowed through the site was recorded and tracked.  And that itself was a valuable commodity."[6]

---

[5] Form 10-K, Amazon.com, Inc., *available at*
https://www.sec.gov/Archives/edgar/data/1018724/000101872421000004/amzn-20201231.htm

[6] PBS Frontline, *Amazon Empire: The Rise and Reign of Jeff Bezos* (hereafter "PBS Frontline"), transcript available at https://www.pbs.org/wgbh/frontline/film/amazon-empire/transcript/ (last visited June 24, 2021) [hereinafter PBS Frontline].

10. Amazon provides many services using its "Alexa" voice-based virtual assistant. Alexa "listens" to verbal communications and responds to those communications in a simulated voice.

11. Amazon describes Alexa as "Amazon's cloud-based voice service available on hundreds of millions of devices from Amazon and third-party device manufacturers."[7] Amazon further describes Alexa as its "voice AI," which "lives in the cloud and is happy to help anywhere there's internet access and a device that can connect to Alexa."[8]

12. Currently, Alexa is integrated into and compatible with over 100,000 products, such as phones, TVs, thermostats, ovens, lights, locks, rings, light bulbs, headphones, and automobiles.[9]

13. By 2018, four years after introducing Alexa, Amazon had sold 100 million Alexa devices. In 2019 alone, Amazon more than doubled that number, announcing in January 2020 that there were now "hundreds of millions of Alexa-enabled devices" that had been sold.[10]

14. After a user speaks to an Alexa device, Amazon collects, captures, or otherwise obtains, and subsequently stores voiceprints of the user, and transcriptions of the voiceprints.

15. These voiceprints and transcriptions constitute "biometric identifiers" and/or "biometric information" regulated by BIPA.

---

[7] *What is Alexa*, Amazon.com, https://developer.amazon.com/en-US/alexa (last visited Nov. 17, 2021).

[8] *Alexa*, Amazon Ads, https://www.amazonadvertising-unboxed.com/page/1943933/alexa (last visited Nov. 17, 2021).

[9] Cinnamon Janzer, et al., *Everything that Works with Amazon Echo and Alexa* (Updated May 8, 2019), https://www.reviewed.com/smarthome/features/everything-that-works-with-amazon-echo-alexa; *see also* PBS Frontline.

[10] Ben Fox Rubin, *Amazon Sees Alexa Devices More than Double in Just One Year*, CNET (Jan. 6, 2020), https://www.cnet.com/home/smart-home/amazon-sees-alexa-devices-more-than-double-in-just-one-year/.

16. Over the applicable statute of limitations period, Amazon has violated Plaintiffs' and the Class Members' rights under BIPA, on numerous occasions, by, *inter alia*:

- systematically and intentionally collecting, obtaining, using and/or storing biometric identifiers and/or biometric information without first obtaining the written release executed by Plaintiffs and Class Members required by 740 ILCS 14/15(b)(3);

- not properly informing Plaintiffs and Class Members in writing that their biometric identifiers and/or biometric information was being collected and/or stored as required by 740 ILCS 14/15(b)(1);

- not informing Plaintiffs and Class Members in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information was being collected, stored, and used as required by 740 ILCS 14/15(b)(2);

- not developing and making available a written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers and/or biometric information, and failing to permanently delete Plaintiffs' and the Class' biometric identifiers and/or biometric information as required by 740 ILCS 14/15(a);

- selling, leasing, trading, or otherwise profiting from Plaintiffs' and Class Members' biometric identifiers and/or biometric information in violation of 740 ILCS 14/15(c);

- disclosing, redisclosing, or otherwise disseminating Plaintiffs' and Class Members' biometric identifiers and/or biometric information to third parties, without satisfying the requirements of 740 ILCS 14/15(d)(1)-(4);

- not storing, transmitting, and/or protecting from disclosure Plaintiffs' and Class Members' biometric identifiers and/or biometric information using the reasonable standard of care within the industry, in violation of 740 ILCS 14/15(e)(1); and/or

- not storing, transmitting, and/or protecting from disclosure Plaintiffs' and Class Members' biometric identifiers and/or biometric information in a manner that is the same as or more protective than the manner in which Amazon stores, transmits, and protects other confidential and sensitive information, in violation of 740 ILCS 14/15(e)(2).

17.     Accordingly, Plaintiffs seek to represent a class of similarly situated individuals to obtain an Order:

(A) awarding Plaintiffs and each Class Member statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14.20(1);

(B) enjoining Amazon from collecting, obtaining, storing, using, selling, leasing, trading, profiting from, disclosing, redisclosing, or otherwise disseminating Plaintiffs' and the Class Members' biometric identifiers and biometric information until done so in compliance with BIPA;

(C) awarding Plaintiffs and the Class Members reasonable attorneys' fees, costs, and other expenses pursuant to 740 ILCS 14/20(3);

(D) awarding Plaintiffs and the Class Members pre-and post-judgment interest, as provided by law; and

(E) awarding such other and further relief as is just and appropriate.

## PARTIES

18.     Plaintiff Bennett Wilcosky is a natural person and citizen of the State of Illinois.

19.     Plaintiff Michael Gunderson is a natural person and citizen of the State of Illinois.

20.     Plaintiff Michael Gunderson is guardian and father of E.G., a minor child.  E.G. is a natural person and citizen of the State of Illinois.

21.     Plaintiff Donna Rucker is a natural person and citizen of the State of Illinois.

22.     Plaintiff Jason Stebbins is a natural person and citizen of the State of Illinois.

23.     Plaintiff Julia Bloom Stebbins is a natural person and citizen of the State of Illinois.

24.     Plaintiff Sandy White is a natural person and citizen of the State of Illinois.

25.     Plaintiff Becky White is a natural person and citizen of the State of Illinois.

26.     Plaintiff Cheri Ann Clarke is a natural person and citizen of the State of Illinois.

27.     Plaintiff Carol Cooper is a natural person and citizen of the State of Illinois.

28.     Defendant Amazon.com, Inc. is a Delaware corporation with its principal place of business located in the State of Washington.

29.     Defendant Amazon.com Services, LLC is a Delaware limited liability company with its principal place of business located in the State of Washington.

## JURISDICTION AND VENUE

30.     This Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  Because Plaintiffs, who are each members of the Class, and Defendants are citizens of different states, there is minimal diversity.  The total claims of Class Members exceed $5,000,000 exclusive of interest and costs.  There are at least 100 Class Members.

31.     This Court has personal jurisdiction over Defendants because Defendants purposefully direct their activities at residents of Illinois and the litigation arises out of or relates to those activities.

32.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district or because it is a judicial district in which Defendants are subject to the Court's personal jurisdiction with respect to such action.

33.     For example, Plaintiffs spoke commands to their Amazon Alexa devices in Illinois, and had their voiceprints captured by Amazon in Illinois.

34.     In addition, Amazon operates many stores in Illinois, including five locations in the Loop/River North areas of Chicago—walking distance from this Courthouse.

## COMMON FACTUAL ALLEGATIONS

### Illinois' Biometric Information Privacy Act

35.     The Illinois General Assembly enacted the Biometric Information Privacy Act, 740 ILCS 14/*et seq*. ("BIPA") in 2008 to establish standards of conduct for private entities that collect or possess biometric identifiers and biometric information.

36.     "Biometric identifiers" covered by BIPA include retina or iris scans, fingerprints, voiceprints, and scans of human or face geometry.  740 ILCS 14/10.

37.     "Biometric information" covered by BIPA includes "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual."  *Id.*

38.     The Illinois General Assembly noted that BIPA was carefully crafted to protect biometric data because "unlike other unique identifiers that are used to access finances or other sensitive information," one's own biometric data cannot be changed; "[t]herefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions."  740 ILCS 14/5.

39.     The legislative findings also acknowledge that "[t]he full ramifications of biometric technology are not fully known."  *Id.* § 14/5(f).  Accordingly, the General Assembly found that "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information."  *Id.* § 14/5(g).

40.     The Seventh Circuit has also stated that biometric data is "meaningfully different" from other personal information, such as addresses, dates of birth, telephone numbers, and credit card and social security numbers, because of the "inherent sensitivity of biometric data," which

is "immutable, and once compromised, [is] compromised forever—as the legislative findings in

BIPA reflect." *Fox v. Dakkota Intergrated Sys., LLC*, 980 F.3d 1146, 1155 (7th Cir. 2020).

41.    BIPA makes it unlawful for any private entity to, *inter alia*, "collect, capture,

purchase, receive through trade, or otherwise obtain a person's or a customer's biometric

identifier or biometric information unless it first: (1) informs the subject . . . in writing that a

biometric identifier or biometric information is being collected or stored; (2) informs the subject

. . . in writing of the specific purpose and length of term for which a biometric identifier or

biometric information is being collected, stored, and used; and (3) receives a written release

executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS

14/15(b).

42.    Furthermore, BIPA requires that any "private entity in possession of biometric

identifiers or biometric information must develop a written policy, made available to the public,

establishing a retention schedule and guidelines for permanently destroying biometric identifiers

and biometric information when the initial purpose for collecting or obtaining such identifiers or

information has been satisfied or within 3 years of the individual's last interaction with the

private entity, whichever occurs first." 740 ILCS 14/15(a).

43.    BIPA also provides that "[n]o private entity in possession of a biometric identifier

or biometric information may sell, lease, trade, or otherwise profit from a person's or a

customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

44.    BIPA further makes it unlawful for any private entity in possession of a biometric

identifier to "disclose, redisclose, or otherwise disseminate a person's or a customer's biometric

identifier or biometric information unless: (1) the subject of the biometric identifier or biometric

information . . . consents to the disclosure or redisclosure; (2) the disclosure or redisclosure

9

completes a financial transaction requested or authorized by the subject of the biometric

identifier . . . ; (3) the disclosure or redisclosure is required by State or federal law or municipal

ordinance; or (4) the disclosure is required pursuant to a valid warrant or subpoena issued by a

court of competent jurisdiction."  740 ILCS 14/15(d).

45.     Finally, BIPA provides that "[a] private entity in possession of a biometric

identifier or biometric information shall: (1) store, transmit, and protect from disclosure all

biometric identifiers and biometric information using the reasonable standard of care within the

private entity's industry; and (2) store, transmit, and protect from disclosure all biometric

identifiers and biometric information in a manner that is the same as or more protective than the

manner in which the private entity stores, transmits, and protects other confidential and sensitive

information."  740 ILCS 14/15(e).

46.     BIPA provides for a private right of action: "Any person aggrieved by a violation

of this Act shall have a right of action in a State circuit court or as a supplemental claim in

federal district court against an offending party."  740 ILCS 14/20.

47.     The Illinois Supreme Court has explained that a person whose biometric

identifiers are the subject of violations of section 15 of BIPA is "aggrieved" by the entity's

failure to comply with BIPA and is "entitled to seek recovery" under Section 14/20.  *Rosenbach

v. Six Flags Entm't Corp*, 2019 IL 123186, ¶ 33 ("[W]hen a private entity fails to comply with

one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of

the statutory rights of any person or customer whose biometric identifier or biometric

information is subject to the breach.  Consistent with the authority cited above, such a person or

customer would clearly be 'aggrieved' within the meaning of section 20 of the Act (*id.* § 20) and

entitled to seek recovery under that provision.  No additional consequences need be pleaded or

proved. The violation, in itself, is sufficient to support the individual's or customer's statutory cause of action.").

48.     Under BIPA, "[a] prevailing party may recover ***for each violation***: (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater; (2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater; (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and (4) other relief, including an injunction, as the State or federal court may deem appropriate." *Id.* (emphasis added).

49.     Each subpart of BIPA § 15 described above "imposes various duties upon which an aggrieved person may bring an action under section 20. Though all relate to protecting biometric data, each duty is separate and distinct. A private entity could violate one of the duties while adhering to the others, and an aggrieved person would have a cause of action for violation of that duty. Moreover, as section 20 provides that a 'prevailing party may recover for each violation' (740 ILCS 14/20 (West 2018)), a plaintiff who alleges and eventually proves violation of multiple duties could collect multiple recoveries of liquidated damages. *Id.* § 20(1), (2)." *Tims v. Black Horse Carriers, Inc.*, 2021 IL App (1st) 200563, ¶ 30.

50.     Furthermore, under BIPA, each instance of collecting and/or disclosing a person's biometric data without consent constitutes a separate violation for which recovery can be had. *See Cothron v. White Castle Sys., Inc.*, 477 F. Supp. 3d 723, 732–34 (N.D. Ill. 2020) ("[The statutory] text is unambiguous and therefore dispositive. A party violates Section 15(b) when it collects, captures, or otherwise obtains a person's biometric information without prior informed consent. This is true the first time an entity scans a fingerprint or otherwise collects biometric

information, but it is no less true with each subsequent scan or collection. . . . The language of Section 15(d) requires the same result. . . . [T]he Court is bound by the clear text of the statute . . . . [I]t is not the role of a court—particularly a federal court—to rewrite a state statute to avoid a construction that may penalize violations severely. . . . In sum, the Court concludes that [the plaintiff] has alleged multiple timely violations of both Section 15(b) and Section 15(d). According to BIPA Section 20, she can recover 'for each violation.' 740 ILCS 14/20.").

## How Alexa Works

51. Amazon designed Alexa devices to record and respond to oral communications upon hearing a "wake word" ("Alexa," by default).

52. Alexa devices respond to anyone who says the wake word, regardless of whether the person is an Amazon customer, the owner of the Alexa device, or a minor.

53. If the "wake word" is not spoken, Amazon claims that Alexa-enabled devices will not capture a user's conversations.[11]

54. Amazon's "wake word" technology works by identifying acoustic patterns that match the wake word.

55. Once the Alexa device recognizes the acoustical pattern of the wake work, the device captures a voiceprint of the speaker's oral communication that follows the wake word and transmits the voiceprint to Amazon to undergo a series of steps to process a response using Amazon's Alexa Voice Service.

56. The Alexa Voice Service utilizes Automatic Speech Recognition technology (ASR), whereby computers detect patterns in audio waveforms of the voiceprint, match them

---

[11] *Alexa and Alexa Device FAQ's*, Amazon.com, https://www.amazon.com/gp/help/customer/ display.html?linkCode=w61&imprToken=28-fLyu75f7XPVZKlgVB7w&slotNum=0&nodeId= 201602230 (last visited July 8, 2021).

with the sounds in a given language, and ultimately identify the words spoken.[12]  This is the first step required for Alexa to respond to a request.

57.    The ASR technology analyzes various features of the user's voiceprint, such as the micro pauses the speaker takes between words, the frequency, and the speaker's pitch, in order to convert the voiceprint into a transcribed text string.[13]

### Amazon's Collection, Disclosure, Use, and Storage of Users' Biometric Data

58.    Amazon captures voiceprints on Alexa devices wherever those devices are operating. For example, if a user speaks a command to an Alexa device in Chicago, Illinois, then Amazon captures the voiceprint in Chicago, Illinois.

59.    After Alexa has responded to a user's request, Amazon does not delete the voiceprint or the transcription created by that request.

60.    Instead, Amazon captures, collects, and indefinitely retains the voiceprint on its servers for continued use and analysis, in order to, *inter alia*, improve its speech and voice recognition capabilities, which are then exploited by Amazon for further commercial gains and profit.

61.    Amazon also captures, collects, and indefinitely retains the voiceprints of speakers when Alexa activates by mistakenly "hearing" the wake word.

---

[12] *What Is Automatic Speech Recognition?*, Amazon.com, https://developer.amazon.com/en-US/alexa/alexa-skills-kit/asr (last visited Feb. 19, 2020).

[13] *See* Joseph Frankel, *How Does My Voice Assistant Know What I'm Saying?* (Apr. 20, 2018), https://nymag.com/intelligencer/smarthome/make-me-smarter-voice-speech-recognition-alexa-siri-cortana-google.html; Josh Hendrickson, *Alexa, Siri, and Google Don't Understand a Word You Say* (Feb. 19, 2019) https://www.howtogeek.com/405011/voice-assistants-dont-really-understand-you/; Alexandre Gonfalonieri, *How Amazon Alexa works? Your guide to Natural Language Processing (AI)* (Nov. 21, 2018), https://towardsdatascience.com/how-amazon-alexa-works-your-guide-to-natural-language-processing-ai-7506004709d3.

62.     Amazon collects, obtains, and stores the voiceprint and transcription created therefrom to improve Alexa via a process known as "machine learning."

63.     Machine learning only works when the artificial intelligence system underlying it is supported with data, from which the system can learn and develop.

64.     In Amazon's case, Alexa's machine learning is bolstered by what likely amounts to hundreds of millions, if not billions, of voiceprints that Amazon has stored on its servers, which it uses to constantly refine the natural language understanding that is critical to Alexa's function.

65.     Once Amazon is in possession of the voiceprint, Amazon employees/contractors may access it, and identify the location of the device where it was obtained and other data collected by the Alexa device.

66.     If an Alexa device is connected to a person's Amazon account or Amazon Prime account, all voiceprints from the Alexa device are associated with the customer's Amazon or Amazon Prime account.

67.     Upon information and belief, the voiceprint is also aggregated with data from other Amazon sources, such as the user's Amazon Prime account data, Amazon customer shopping history, order history, or reminders to create profiles of information. Amazon utilizes these voiceprint/data aggregations for its own business purposes, including for the purpose of creating or selling targeted advertisements and selling products.

68.     On June 12, 2017, Amazon filed a patent titled "Keyword Determinations From Conversational Data," which demonstrates Amazon's ability and desire to utilize the voiceprints to effectuate targeted advertisements, explaining:

"FIG. 5 illustrates an example interface including advertising and shopping suggestions using keywords obtained from voice content in accordance with at least one embodiment";

"Keywords associated with the user can be used for any appropriate purpose, such as for recommending advertising, product information, or other such content to the user";

"Using any appropriate selection mechanism known or used in the art, an advertising entity can obtain keyword data for the user as extracted in FIG. 4 and use that information to select an ad to display to the user." (where FIG. 4 indicates that the technology would first "receive voice stream," then "sniff audio stream for trigger word(s)," then "capture adjacent audio" if the trigger word is identified, then "analyze adjacent audio for keyword(s)," then "store keyword data associated with user," then "transmit keyword data to content provider.").[14]

69.     The "Keyword Determinations from Conversational Data" patent further makes clear that this technology is capable of creating targeted advertisements for non-registered users, such that "[k]eywords associated with the verified user and with the identified other person are displayed" and thereby "the voice data can be analyzed for **both people**." *Id.* (emphasis added). For example, "it can be seen that some of the keywords associated with Laura have additional data indicating that these keywords are associated with Laura's kids, and not necessarily with Laura herself." *Id.*

70.     On August 2, 2019, Amazon filed a continuation of U.S. Patent No. 10,373,620, which was approved and published by the United States Patent and Trademark Office on June 23, 2020. See U.S. Patent No. 10,692,506.

71.     U.S. Patent No. 10,692,506 indicates the same or substantially similar language as U.S. Patent No. 10,373,620 (filed June 12, 2017), demonstrating that Amazon has had this

---

[14] U.S. Patent No. 10,373,620. This patent was approved and published by the United States Patent and Trademark Office on August 6, 2019, and it is a continuation of U.S. Patent No. 9,679,570 (application filed Aug. 17, 2015), which is a continuation of U.S. Patent No. 9,111,294 (application filed Jul. 30, 2014), which is a continuation of U.S. Patent No. 8,798,995 (application filed Sep. 23, 2011).

technological capability for years and intends to continue to utilize and develop it for purposes of advertising.

72.     In addition, a key component of Alexa technology is the ability to identify speakers by voice. Alexa has a speaker ID function that recognizes which customer is speaking, so Alexa can personalize responses. This means that Amazon can and does associate voiceprints with individual humans, including Plaintiffs.

73.     Amazon does not allow a user to stop it from collecting voiceprints.  The only way to stop Amazon's collection of voiceprints is to mute the microphone or deactivate the device, both of which defeat the device's utility.

74.     In 2019, Amazon began providing users the ability to delete voice recordings; however, while Amazon's current policies tell customers that they may delete voice recordings, Amazon is unclear as to whether this deletes all of the voiceprints Amazon has collected and the transcriptions made from those voiceprints.[15]

75.     For instance, Amazon states that even if a customer deletes an audio recording, Amazon, or third-party developers may retain "records of the interaction.  For example, for many types of Alexa requests—such as when a customer subscribes to Amazon Music Unlimited, places an Amazon Fresh order, requests a car from Uber or Lyft, orders a pizza from Dominos, or makes an in-skill purchase of premium digital content—Amazon and/or the applicable skill developer obviously need to keep a record of the transaction."[16]

---

[15] *See* Letter from Amazon to Senator Christopher A. Coons, https://www.coons.senate.gov/imo/media/doc/Amazon%20Senator%20Coons__Response%20Letter__6.28.19[3].pdf.

[16] *Id.*

76.     Moreover, as stated by Theresa Payton, a former White House chief information officer and founder of cybersecurity company Fortalice: "'Delete' is never really 'delete.'" "Delete just means that you can't see it anymore."[17]

77.     Amazon does not, and/or within the Class Period failed to, disclose the following to its users:

A.      that Amazon creates, analyzes, and utilizes a user's voiceprint and that the same is stored on Amazon's servers indefinitely;

B.      that Amazon creates, analyzes, stores, and utilizes a transcription of a user's request, derived from the aforementioned voiceprint, and stores the same on Amazon's servers indefinitely;

C.      that human employees and third-party contractors have access to and utilize users' voiceprints and the transcriptions created therefrom, or the extent of such access and use;

D.      the retention schedule associated with a user's voiceprint and the transcription created from the voiceprint; and

E.      guidelines for a user to permanently delete all of their voiceprints and the transcriptions made therefrom, from all of Amazon's servers.

78.     Furthermore, Amazon collects, captures, stores, and utilizes the voiceprints and transcriptions derived therefrom without receiving executed written releases from any of the users of Alexa-enabled products.

---

[17] Alfred Ng, *Amazon Alexa transcripts live on, even after you delete voice records* (May 9, 2019), https://www.cnet.com/home/smart-home/amazon-alexa-transcripts-live-on-even-after-you-delete-voice-records/.

79. David Limp, the Senior Vice President of Devices and Services at Amazon.com acknowledged Amazon's inadequate disclosures, and Robert Frederick, former Senior Manager at Amazon Web Services acknowledged that he actually turns off his Alexa devices to prevent private conversations from being shared:

> NARRATOR:
>
> Once the device is awake and the blue light is on, it's recording. And last year, it was revealed that Amazon employs thousands of people around the world to listen and transcribe some of those recordings to help train the system.
>
> JAMES JACOBY [Correspondent]:
>
> Do you think that you did a good enough job of disclosing that to consumers? That there are humans involved in listening to these recordings?
>
> DAVE LIMP [Amazon Senior Vice President, Devices & Services]:
>
> We try to articulate what we're doing with our products as clearly as we can. But if I could go back in time and I could be more clear and the team could be more clear on how we were using human beings to annotate a small percentage of the data, I would, for sure. What I would say, though, is that once we realize that customers didn't clearly understand this, within a couple of days we added an opt-out feature so that customers could turn off annotation if they so chose. And then within a month or two later we allowed people to auto-delete data, which they also asked for within that time frame.
>
> We're not going to always be perfect, but when we make mistakes, I think the key is that we correct them very quickly on behalf of customers.
>
> NARRATOR:
>
> But even one of the founders of Amazon Web Services approaches his Alexa devices with caution.
>
> JAMES JACOBY:
>
> When do you turn off your Alexa?

ROBERT FREDERICK, Former senior manager, Amazon Web Services:

I turn off my Alexa when I know for a fact that the conversation that I am going to have or whenever I just want to have a private moment. I don't want certain conversations to be heard by humans, conversations that I know for a fact are not things that should be shared, then I actually turn off those particular listening devices.[18]

### **Amazon's Failure to Secure Biometric Data**

80. According to recent reporting based on a review of Amazon internal documents, Amazon has, for years, failed to store, transmit, and protect from disclosure the biometric identifiers and/or biometric information of Plaintiffs and the Class using the reasonable standard of care within the industry, or in the same manner, or more protective than the manner, in which the private entity stores, transmits, and protects other confidential and sensitive information.

According to internal documents reviewed by Reveal from the Center for Investigative Reporting and WIRED, Amazon's vast empire of customer data—its metastasizing record of what you search for, what you buy, what shows you watch, what pills you take, **what you say to Alexa**, and who's at your front door—had become so sprawling, fragmented, and promiscuously shared within the company that the security division couldn't even map all of it, much less adequately defend its borders.

In the name of speedy customer service, unbridled growth, and rapid-fire "invention on behalf of customers"—in the name of delighting *you*—Amazon had given broad swathes of its global workforce extraordinary latitude to tap into customer data at will. It was, as former Amazon chief information security officer Gary Gagnon calls it, a "free-for-all" of internal access to customer information. And as information security leaders warned, that free-for-all left the company wide open to "internal threat actors" while simultaneously making it inordinately difficult to track where all of Amazon's data was flowing.[19]

---

[18] PBS Frontline.

[19] Will Evans, *Amazon's Dark Secret: It Has Failed to Protect Your Data*, WIRED (Nov. 18, 2021), https://www.wired.com/story/amazon-failed-to-protect-your-data-investigation/ (emphasis added) (hereafter the "WIRED Article").

81.     "Other tech giants, [an Amazon engineer wrote], had more mature systems in place for working through complex privacy issues, and Amazon was falling behind. (Google, for instance, had scores of employees working on privacy.) 'Without a privacy development team to own that work,' he concluded, 'I'm not sure we are well positioned to catch up.'"[20]

82.     In the parlance of BIPA, Amazon has not been exercising the reasonable standard of care within the industry to secure Plaintiffs' and the Class's biometric data.

### Plaintiffs' Experiences

### E.G., a Minor

83.     Plaintiff E.G., a minor who is under 10 years old, resides in the home of her father, Plaintiff Michael Gunderson.

84.     On numerous occasions during the Class Period, E.G. spoke in proximity to an Alexa device located in her home in Illinois while the Alexa device was recording.  On such occasions, Amazon collected, captured, received through trade, or otherwise obtained, stored, and disclosed E.G.'s voiceprint and transcription thereof.

85.     E.G. has had her voiceprint collected by Amazon Alexa devices in Illinois on numerous occasions without her consent.

86.     When E.G. spoke in proximity to an Amazon Alexa device while the Alexa device was recording, Amazon captured E.G.'s voiceprint on an Amazon Alexa device in Illinois.

87.     Amazon has never informed Plaintiff E.G., in writing or otherwise, that Amazon is collecting or storing her biometric identifier or biometric information.

---

[20] *Id.*

88.     Plaintiff E.G. has never consented, agreed, or given permission—written or otherwise—to Amazon to collect or store her biometric identifiers or biometric information.

89.     Plaintiff E.G. never executed any written release giving consent for Amazon to record or store her biometric identifier or biometric information.

90.     Amazon intentionally and/or recklessly captured, collected, and/or retained Plaintiff E.G.'s biometric identifier and/or biometric information.

91.     Amazon's violation was willful inasmuch as it knew, or reasonably should have known, that it was failing to comply with the above-described requirements of BIPA.

**Plaintiff Wilcosky**

92.     As of June 25, 2019, Plaintiff Bennett Wilcosky was not, and never had been, a purchaser of any Alexa device. Wilcosky has never set up an Alexa account or downloaded the Alexa application.

93.     On numerous occasions during the Class Period, Wilcosky spoke in proximity to an Alexa device located in Illinois while the Alexa device was recording. On such occasions, Amazon collected, captured, received through trade, or otherwise obtained, stored, and disclosed Wilcosky's voiceprint and transcription thereof.

94.     Plaintiff Wilcosky has had his voiceprint collected by Amazon Alexa devices in Illinois on numerous occasions.

95.     When Plaintiff Wilcosky spoke in proximity to an Amazon Alexa device while the Amazon Alexa device was recording, Amazon captured Plaintiff Wilcosky's voiceprint by an Amazon Alexa device in Illinois.

96.     Amazon has never informed Plaintiff Wilcosky, in writing or otherwise, that Amazon is collecting or storing his biometric identifier or biometric information.

97.     Plaintiff Wilcosky has never consented, agreed, or given permission—written or otherwise—to Amazon to collect or store his biometric identifiers or biometric information.

98.     Plaintiff Wilcosky never executed any written release giving consent for Amazon to record or store his biometric identifier or biometric information.

99.     Amazon intentionally and/or recklessly captured, collected, and/or retained Plaintiff Wilcosky's biometric identifier and/or biometric information.

100.    Amazon's violation was willful inasmuch as it knew, or reasonably should have known, that it was failing to comply with the above-described requirements of BIPA.

**Plaintiff Bloom Stebbins**

101.    As of May 20, 2021, Plaintiff Julia Bloom Stebbins was not, and never had been, a purchaser of any Alexa device.  Bloom Stebbins has never set up an Alexa account or downloaded the Alexa application.

102.    On numerous occasions during the Class Period, Bloom Stebbins spoke in proximity to an Alexa device located in Illinois while the Alexa device was recording.  On such occasions, Amazon collected, captured, received through trade, or otherwise obtained, stored, and disclosed Bloom Stebbins' voiceprint and transcription thereof.

103.    Plaintiff Bloom Stebbins has had her voiceprint collected by Amazon Alexa devices in Illinois on numerous occasions.

104.    When Plaintiff Bloom Stebbins spoke in proximity to an Amazon Alexa device while the Amazon Alexa device was recording, Amazon captured Plaintiff Bloom Stebbins's voiceprint by an Amazon Alexa device in Illinois.

105.    Amazon has never informed Plaintiff Bloom Stebbins, in writing or otherwise, that Amazon is collecting or storing her biometric identifier or biometric information.

106.    Plaintiff Bloom Stebbins has never consented, agreed, or given permission—written or otherwise—to Amazon to collect or store her biometric identifiers or biometric information.

107.    Plaintiff Bloom Stebbins never executed any written release giving consent for Amazon to record or store her biometric identifier or biometric information.

108.    Amazon intentionally and/or recklessly captured, collected, and/or retained Plaintiff Blooom Stebbins's biometric identifier and/or biometric information.

109.    Amazon's violation was willful inasmuch as it knew, or reasonably should have known, that it was failing to comply with the above-described requirements of BIPA.

**Plaintiff Carol Cooper**

110.    Plaintiff Carol Cooper is an Amazon Prime member who owns an Amazon Echo Dot equipped with Alexa services.

111.    On numerous occasions during the Class Period, Cooper spoke to her Alexa device located in her home in Illinois while the Alexa device was recording.

112.    On certain occasions, Cooper's Alexa device would also light up when she spoke words other than the "wake-word."

113.    After each instance when Cooper spoke into the Alexa device while it was recording, Amazon collected, captured, received through trade, or otherwise obtained, stored, and disclosed Cooper's voiceprint and transcription thereof.

114.    Cooper stopped using her Alexa device in the Spring of 2021.

115.    Plaintiff Cooper has had her voiceprint collected by Amazon Alexa devices in Illinois on numerous occasions.

116.    When Plaintiff Cooper spoke in proximity to an Amazon Alexa device while the Amazon Alexa device was recording, Amazon captured Plaintiff Cooper's voiceprint by an Amazon Alexa device in Illinois.

117.    Amazon has never informed Plaintiff Cooper, in writing or otherwise, that Amazon is collecting or storing her biometric identifier or biometric information.

118.    Plaintiff Cooper has never consented, agreed, or given permission—written or otherwise—to Amazon to collect or store her biometric identifiers or biometric information.

119.    Plaintiff Cooper never executed any written release giving consent for Amazon to record or store her biometric identifier or biometric information.

120.    Amazon intentionally and/or recklessly captured, collected, and/or retained Plaintiff Cooper's biometric identifier and/or biometric information.

121.    Amazon's violation was willful inasmuch as it knew, or reasonably should have known, that it was failing to comply with the above-described requirements of BIPA.

**Gunderson, Rucker, B. White, Stebbins, S. White, and Clarke**

122.    Plaintiffs Michael Gunderson, Donna Rucker, Becky White, Jason Stebbins, Sandy White, and Cheri Ann Clarke each owns one or more Amazon Echo or other device equipped with Alexa services.

123.    On numerous occasions during the Class Period, Gunderson, Rucker, Becky White, Stebbins, Sandy White, and Clarke each spoke to their respective Alexa devices—all located in Illinois.

124.    After each instance when these Plaintiffs spoke into the Alexa device while it was recording, Amazon collected, captured, received through trade, or otherwise obtained, stored,

and disclosed the voiceprint and transcription thereof of Gunderson, Rucker, Becky White, Stebbins, Sandy White, and Clarke—all in Illinois.

125.    Plaintiffs Gunderson, Rucker, Becky White, Stebbins, Sandy White, and Clarke have had their voiceprints collected by Amazon Alexa devices in Illinois on numerous occasions.

126.    When Plaintiffs Gunderson, Rucker, Becky White, Stebbins, Sandy White, Clarke spoke in proximity to an Amazon Alexa device while the Amazon Alexa device was recording, Amazon captured their voiceprints by an Amazon Alexa device in Illinois.

127.    Amazon has never informed Plaintiffs Gunderson, Rucker, Becky White, Stebbins, Sandy White, and Clarke in writing or otherwise, that Amazon is collecting or storing their biometric identifiers or biometric information.

128.    Plaintiffs Gunderson, Rucker, Becky White, Stebbins, Sandy White, and Clarke have never consented, agreed, or given permission—written or otherwise—to Amazon to collect, store, or retain their biometric identifiers or biometric information.

129.    Plaintiffs Gunderson, Rucker, Becky White, Stebbins, Sandy White, and Clarke never executed any written release giving consent for Amazon to record or store their biometric identifiers or biometric information.

130.    Amazon intentionally and/or recklessly captured, collected, and/or retained Plaintiffs Gunderson, Rucker, Becky White, Stebbins, Sandy White, and Clarke's biometric identifiers and/or biometric information.

131.    Amazon's violation was willful inasmuch as it knew, or reasonably should have known, that it was failing to comply with the above-described requirements of BIPA.

**Amazon Obtained and Possessed Plaintiffs' Biometric Data in Violation of BIPA**

132.    Plaintiffs' voiceprints are "biometric identifiers" pursuant to 740 ILCS 14/10.

133. Transcripts of Plaintiffs' voice recordings, which are derived from biometric identifiers, are "biometric information" pursuant to 740 ILCS 14/10.

134. Any other data in Amazon's possession that links a Plaintiff's voiceprints to that Plaintiff also constitutes "biometric information" pursuant to 740 ILCS 14/10.

135. Amazon did not obtain a written release executed by Wilcosky, Bloom Stebbins, Cooper, Gunderson, Rucker, Becky White, Stebbins, Sandy White, Clarke, or E.G.'s legally authorized representative before capturing, collecting, receiving through trade, or otherwise obtaining their biometric identifiers and/or biometric information.

136. As set forth herein, Amazon obtained, possessed, profited from, disseminated, and stored the biometric identifiers and/or biometric information of Plaintiffs and the Class in violation of BIPA.

137. Amazon's failures to comply with BIPA as set forth herein violated Plaintiffs' and the Class Members' privacy rights, and the harm to Plaintiffs and the Class occurred in Illinois. Moreover, the required BIPA disclosures and permissions would have been obtained and executed in Illinois (if those disclosures and permissions had been made and/or received). *See Cothron*, 477 F. Supp.3d at 732 n.7; *In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 547–48 (N.D. Cal. 2018).

## CLASS ACTION ALLEGATIONS

138. Plaintiffs bring this class action on behalf of themselves and all others similarly situated, as representative of the following classes and sub-class:

**"Illinois Class" brought by all Plaintiffs**:

All individuals in Illinois who, from the date five years prior to the date of the filing of this action to the date of class certification of this action, (1) spoke in the vicinity of an Amazon Alexa device and were recorded by the

Amazon Alexa device, and (2) for whom Amazon captured, collected, or stored their voiceprints.

**"Illinois Bystander Sub-Class" brought by Plaintiffs Wilcosky, Bloom Stebbins, and E.G.:**

All individuals in Illinois who, from the date five years prior to the date of the filing of this action to the date of class certification of this action, (1) do not have registered Amazon Alexa Accounts and (2) spoke in the vicinity of an Amazon Alexa device and (3) for whom Amazon captured, collected, or stored their voiceprints.

**"Illinois Minors Sub-Class" brought by Plaintiff E.G.**

All minors in Illinois who, from the date five years prior to the date of the filing of this action to the date of class certification of this action, (1) spoke in the vicinity of an Amazon Alexa device and were recorded by the Amazon Alexa device, (2) and for whom Amazon captured, collected, or stored their voiceprints.[21]

139.    Excluded from the Class is any Defendant, its parents, subsidiaries, affiliates, predecessors, successors, officers, directors, and the immediate family members of such persons. Also excluded are any trial judge who may preside over this action, court personnel and their family members and any juror assigned to this action.

140.    Plaintiffs Gunderson, Rucker, Becky White, Stebbins, Sandy White, Clarke, and Cooper are each members of the Illinois Class they seek to represent.

141.    Plaintiffs Wilcosky, Bloom Stebbins, and E.G., are each members of the Bystander Class they seek to represent.

142.    Plaintiff E.G. is a member of the Illinois Minor Sub-Class she seeks to represent.

143.    Plaintiffs reserve the right to amend or modify the Class definitions with greater specificity or division into subclassses after having had an opportunity to conduct discovery.

---

[21] Unless otherwise indicated, the Classes and Sub-Classes are collectively referred to as the Class.

144.    The Class Period is that period within the statute of limitations for this action and extending until a Class is certified herein.

145.    The Class is certifiable under Fed. R. Civ. P. 23.

146.    **Numerosity.**  The members of the Class are so numerous that joinder of all members is impracticable.  The determination of the numerosity factor can be made from Defendants' records. Upon information and believe, the Class is believed to contain millions of individuals.

147.    **Typicality.** Plaintiffs' claims are typical of the claims of the Class Members. Plaintiffs and all Class Members have had their rights under BIPA violated based on Amazon's failure to comply with the provisions of BIPA.

148.    **Commonality and Predominance**.  There are questions of law and fact common to the Class, which predominate over any questions affecting individual members of the Class. These common questions of law and fact include, without limitation:

a.    Whether Amazon collected, captured, received through trade, or otherwise obtained biometric identifiers or biometric information of Plaintiffs and the Class;

b.    Whether Amazon developed, made available to the public, and complied with a retention and destruction policy in compliance with 740 ILCS 14/15(a);

c.    Whether Amazon informed Plaintiffs and the Class in writing that it was collecting their biometric identifiers or biometric information in compliance with 740 ILCS 14/15(b)(1);

d.    Whether Amazon informed Plaintiffs and the Class in writing of the specific purpose and length of term for which it was collecting their biometric identifiers or biometric information in compliance with 740 ILCS 14/15(b)(2);

e.    Whether Amazon received written releases executed by Plaintiffs and the Class before capturing, collecting, receiving through trade,

or otherwise obtaining their biometric identifiers or biometric information in compliance with 740 ILCS 14/15(b)(3);

f.     Whether Amazon sold, leased, traded, or otherwise profited from the biometric identifiers or biometric information of Plaintiffs and the Class;

g.     Whether Amazon disclosed, redisclosed, or otherwise disseminated the biometric identifiers or biometric information of Plaintiffs and the Class and whether such disclosure, redisclosure, or dissemination was in compliance with 740 ILCS 14/15(d)(1)-(4);

h.     Whether Amazon stored, transmitted, and protected from disclosure all biometric identifiers and biometric information of Plaintiffs and the Class using the reasonable standard of care within the industry in compliance with 740 ILCS 14/15(e)(1);

i.     Whether Amazon stored, transmitted, and protected from disclosure all biometric identifiers and biometric information of Plaintiffs and the Class in a manner that is the same as or more protective than the manner in which it stores, transmits, and protects other confidential and sensitive information in compliance with 740 ILCS 14/15(e)(2); and/or

j.     Whether any violations of BIPA by Amazon were reckless, intentional, or negligent.

149.   **Adequacy**.  Plaintiffs are members of the Classes they seek to represent, are committed to the vigorous prosecution of this action, and have retained competent counsel experienced in the prosecution of class actions.  Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

150.   **Superiority.**  A class action is an appropriate method for the fair and efficient adjudication of this controversy and is superior to all other available methods.  Because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendants, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, Class members will continue to suffer losses and Defendants' misconduct will proceed without

remedy. Even if Class members could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard that might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court. Finally, Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

151. **Class Action on Limited Issues.** Because there are common individual issues among the Class, it is appropriate for this action to be maintained as a class action with respect to particular issues if necessary. *See* Fed. R. Civ. P. 23(c)(4).

## CLAIMS FOR RELIEF

### COUNT I

### Amazon's Violations of the Biometric Information Privacy Act, 740 ILCS 14/15(a)

152.     Plaintiffs incorporate by reference each and every allegation set forth above.

153.     Amazon qualifies as a "private entity" under BIPA. 740 ILCS 14/10.

154.     On numerous occasions during the Class Period, Amazon has collected, captured, received through trade, or otherwise obtained Plaintiffs' and the Class Members' biometric information and biometric identifiers, including voiceprints and transcriptions thereof.

155.     For some or all of the Class Period, Amazon did not develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information to occur by the earlier of: (a) when the original purpose for collecting or obtaining such identifiers has been satisfied, or (b) within 3 years of the individual's last interaction with the private entity, as required by 740 ILCS 14/15(a).

156.     To the extent Amazon has had such a retention and destruction policy in place that complies with BIPA, its failure to permanently delete Plaintiffs' and the Class' biometric identifiers and/or biometric information in compliance with such policy constitutes a violation of 740 ILCS 14/15(a).

157.     Amazon violated § 15(a) by failing to comply with a BIPA-compliant retention schedule for each Plaintiff and retaining Plaintiffs' biometric identifiers and/or biometric information beyond the limits of a BIPA-compliant retention schedule and/or the time limits set forth in 740 ILC 14/15(a).

158.     In violating BIPA, a law in effect since 2008, Amazon acted, and continues to act, recklessly and/or intentionally.  At the least, Amazon negligently violated BIPA.

159.     Plaintiffs and the Class Members are "aggrieved" under BIPA based on Amazon's violation of their rights under BIPA, and accordingly are entitled to seek damages and relief provided for under the statute.  *See Rosenbach*, 2019 IL 123186, ¶ 40.

160.     Amazon's failure to maintain and comply with data retention and destruction protocols harmed, or posed a material risk of harm to, the concrete privacy interests of Plaintiffs and the Class, including the right to make informed choices about the use of and control over their inherently sensitive biometric data and to be free from unlawful retention of such sensitive data.

161.     Plaintiffs and the Class Members seek, *inter alia*, statutory damages of $5,000 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), statutory damages of $1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1), and reasonable attorneys' fees and costs pursuant to 740 ILCS 14/20(3).

WHEREFORE, Plaintiffs and the Class pray for the relief requested in the Prayer for Relief set forth below.

## COUNT II

## Amazon's Violations of the Biometric Information Privacy Act, 740 ILCS 14/15(b)

162.     Plaintiffs incorporate by reference each and every allegation set forth above.

163.     Plaintiffs and the Class did not execute a written release related to Amazon's collection, capturing, purchasing, receiving through trade, or otherwise obtaining their voiceprints, transcriptions thereof, or other biometric information derived from the voiceprints.

164.    For some or all of the Class Period, Amazon did not properly inform Plaintiffs and the Class in writing that their biometric identifiers and/or biometric information was being collected and/or stored, nor did it inform them in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information was being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

165.    Amazon is a Delaware corporation and thus qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

166.    Plaintiffs' and Class members' voiceprints are "biometric identifiers" that may be used to generate "biometric information" pursuant to 740 ILCS 14/10.

167.    Because Amazon ties voiceprints to users' Amazon accounts, the voiceprints that Amazon collects and stores also constitute biometric information.

168.    For some or all of the Class Period, Amazon systematically and intentionally collected, obtained, used, and/or stored the biometric identifiers and/or biometric information of Plaintiffs and the Class without first obtaining from Plaintiffs and the Class Members the specific executed written release required by 740 ILCS 14/15(b)(3).

169.    Amazon did not properly inform Plaintiffs of the Class members in writing that their biometric identifiers or biometric information were being collected and stored nor did it inform them in writing of the specific purpose and length of term for which their biometric identifiers or biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

170.    In violating BIPA, a law in effect since 2008, Amazon acted, and continues to act, recklessly and/or intentionally.  At the least, Amazon negligently violated BIPA.

171.    Plaintiffs and the Class Members are "aggrieved" under BIPA based on Amazon's violation of their rights under BIPA, and accordingly are entitled to seek damages and relief provided for under the statute.  *See Rosenbach*, 2019 IL 123186, ¶ 40.

172.    Amazon's failure to disclose its practices and obtain the informed consent of Plaintiffs and the Class Members before collecting or otherwise obtaining their biometric data harmed, or posed a material risk of harm to, the concrete privacy interests of Plaintiffs and the Class, including the right to make informed choices about the use of and control over their inherently sensitive biometric data and to be free from the unlawful collection of such sensitive data.

173.    By collecting, storing, and using Plaintiffs' and the Class members' biometric identifiers or biometric information as described herein, Amazon violated Plaintiffs' and the Class members' rights to privacy in their biometric identifiers or information as set forth in the BIPA.

174.    Plaintiffs and the Class Members seek, *inter alia*, statutory damages of $5,000 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), statutory damages of $1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1), and reasonable attorneys' fees and costs pursuant to 740 ILCS 14/20(3).

WHEREFORE, Plaintiffs and the Class pray for the relief requested in the Prayer for Relief set forth below.

## COUNT III

### Amazon's Violations of the Biometric Information Privacy Act, 740 ILCS 14/15(c)

175.    Plaintiffs incorporate by reference each and every allegation set forth above.

176.    Section 15(c) of the BIPA provides that no "private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

177.    Plaintiffs' and Class members' voiceprints are "biometric identifiers" that may be used to generate "biometric information" pursuant to 740 ILCS 14/10.

178.    Because Amazon ties voiceprints to users' Amazon accounts, the voiceprints that Amazon collects and stores also constitute biometric information.

179.    As set forth above, for some or all of the Class Period, Amazon used the biometric identifiers and/or biometric information of Plaintiffs and the Class to improve Alexa's natural language understanding and for its own commercial purposes.

180.    Amazon's use of the biometric identifiers and biometric information of Plaintiffs and the Class to improve Alexa's natural language understanding, expand the scope of Alexa products, and create other business opportunities for Amazon has benefited Amazon through increased sales of its improved voice-recognition products.

181.    For instance, Amazon has utilized the biometric identifiers and/or biometric data to make Alexa compatible with over 100,000 products.  Without the identified biometric data, there would be fewer, and worse-functioning Alexa products for Amazon to profit from.

182.    Moreover, Amazon has profited from linking the voiceprints in their possession to Plaintiffs' and the Class's Amazon and Amazon Prime accounts and other activities involving Amazon.

183. As Shoshanna Zuboff, author of "The Age of Surveillance Capitalism" puts it: "[Amazon] is going to know more about you than anyone knows. They're trying to move as intimately as possible and as quietly as possible into everyday life. Amazon wants to have the entire environment essentially miked. They want your walk in the park, they want your run down the city street. They want what you do in your car, they [want] what you do in your home. All these intimacies, all this insight is being integrated—analyzed and integrated. That is an extraordinary kind of power that has never existed before."[22]

184. Furthermore, Amazon has used the biometric identifiers and biometric information of Plaintiffs and the Class to create technology that is so intertwined with the biometric data that marketing the Alexa technology is essentially disseminating biometric data for profit.

185. Additionally, Amazon has used the biometric identifiers and biometric information of Plaintiffs and the Class to obtain a competitive advantage over other businesses that offer similar devices that provide similar voice-based services.

186. Finally, as revealed through their patents, Amazon utilizes the biometric identifiers and biometric information to create "keyword data associated with [the] user" which "can be stored and/or transmitted to an appropriate location accessible to entities such as advertisers or content providers who can use the keywords to attempt to select or customize content that is likely relevant to the user" to select or customize make targeted advertisements and otherwise discloses "keyword data associated with [the] user." U.S. Patent No. 10,373,620; U.S. Patent No. 10,692,506.

---

[22] PBS Frontline.

187.    Upon information and belief, Amazon sells, leases, trades, or otherwise profits from the biometric identifiers and information derived from voice data and "keyword identifiers" that it makes available to third party "advertisers" and/or "content providers."

188.    Accordingly, Amazon violated 740 ILCS 14/15(c) by selling, leasing, trading, or otherwise profiting from Plaintiffs' and Class Members' biometric identifiers and/or biometric information in its possession.

189.    In violating BIPA, a law in effect since 2008, Amazon acted, and continues to act, recklessly and/or intentionally.  At the least, Amazon negligently violated BIPA.

190.    Plaintiff and the Class Members are "aggrieved" under BIPA based on Amazon's violation of their rights under BIPA, and accordingly are entitled to seek damages and relief provided for under the statute.  *See Rosenbach*, 2019 IL 123186, ¶ 40.

191.    Amazon's selling, leasing, trading, or otherwise profiting from Plaintiffs' and Class Members' biometric identifiers and/or biometric information in its possession harmed, or posed a material risk of harm to, the concrete privacy interests of Plaintiffs and the Class, including the right to manage the collection of, use of, and control over inherently sensitive biometric data in the possession of others.

192.    Plaintiffs and the Class Members seek, *inter alia*, statutory damages of $5,000 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), statutory damages of $1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1), and reasonable attorneys' fees and costs pursuant to 740 ILCS 14/20(3).

WHEREFORE, Plaintiffs and the Class pray for the relief requested in the Prayer for Relief set forth below.

## COUNT IV

## Amazon's Violations of the Biometric Information Privacy Act, 740 ILCS 14/15(d)

193.    Plaintiffs incorporate by reference each and every allegation set forth above.

194.    Amazon employs thousands of individuals around the world, including both full-time Amazon employees and third-party contractors, who have access to and listen to voiceprints and review the transcriptions captured by Amazon's devices.

195.    Thus, for some or all of the Class Period, Amazon disclosed, redisclosed, or otherwise disseminated Plaintiffs' and the Class Members' biometric identifiers and information.

196.    Amazon disclosed, redisclosed, or disseminated Plaintiffs' and the Class Members' biometric identifiers and information without satisfying the requirements of 740 ILCS 14/15(d).  Specifically, Amazon has never informed nor received consent from Plaintiffs or the Class Members to disseminate, disclose, and/or redisclose their biometric identifiers and biometric information; the dissemination, disclosure, or redisclosure did not complete a financial transaction authorized by the subject; and the dissemination, disclosure, or redisclosure was not required by law or pursuant to a valid warrant or subpoena.

197.    In violating BIPA, a law in effect since 2008, Amazon acted, and continues to act, recklessly and/or intentionally.  At the least, Amazon negligently violated BIPA.

198.    Plaintiffs and the Class Members are "aggrieved" under BIPA based on Amazon's violation of their rights under BIPA, and accordingly are entitled to seek damages and relief provided for under the statute.  *See Rosenbach*, 2019 IL 123186, ¶ 40.

199.    Amazon's failure to disclose its practices and obtain the informed consent of Plaintiffs and the Class Members before disclosing, redisclosing, or disseminating their biometric data harmed, or posed a material risk of harm to, the concrete privacy interests of

Plaintiffs and the Class, including the right to make informed choices about the use of, dissemination of, and control over their inherently sensitive biometric data and to be free from the unlawful dissemination of such sensitive data.

200.   Plaintiffs and the Class Members seek, *inter alia*, statutory damages of $5,000 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), statutory damages of $1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1), and reasonable attorneys' fees and costs pursuant to 740 ILCS 14/20(3).

WHEREFORE, Plaintiffs and the Class pray for the relief requested in the Prayer for Relief set forth below.

## COUNT V

### Amazon's Violations of the Biometric Information Privacy Act, 740 ILCS 14/15(e)

201.   Plaintiffs incorporate by reference each and every allegation set forth above.

202.   For some or all of the Class Period, Amazon has failed to store, transmit, and protect from disclosure the biometric identifiers and/or biometric information of Plaintiffs and the Class using the reasonable standard of care within the industry, in violation of 740 ILCS 14/15(e)(1).

203.   Additionally, for some or all of the Class Period, Amazon has failed to store, transmit, and protect from disclosure the biometric identifiers and/or biometric information of Plaintiffs and the Class in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information.

39

204.    Ultimately, in the words of one of its own, lawyers, "Amazon didn't have meaningful controls to limit access and sharing of user personal data, including sensitive data, within the company."  "Within Amazon, user personal data flowed like a river."[23]

205.    Other Amazon insiders noted the more mature systems in place for working through complex privacy issues at other large tech companies, such as Google, and raised concerns internally at Amazon that it was not well positioned to catch up without a privacy development team. [24]

206.    In violating BIPA, a law in effect since 2008, Amazon acted, and continues to act, recklessly and/or intentionally.  At the least, Amazon negligently violated BIPA.

207.    Plaintiffs and the Class Members are "aggrieved" under BIPA based on Amazon's violation of their rights under BIPA, and accordingly are entitled to seek damages and relief provided for under the statute.  *See Rosenbach*, 2019 IL 123186, ¶ 40.

208.    Amazon's failure to properly store and secure the biometric data of Plaintiffs and the Class Members harmed, or posed a material risk of harm to, the concrete privacy interests of Plaintiffs and the Class, including the right to manage the storage of, and control over, inherently sensitive biometric data in the possession of others.

209.    Plaintiffs and the Class Members seek, *inter alia*, statutory damages of $5,000 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), statutory damages of $1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1), and reasonable attorneys' fees and costs pursuant to 740 ILCS 14/20(3).

WHEREFORE, Plaintiffs and the Class pray for the relief requested in the Prayer for Relief set forth below.

---

[23] WIRED Article.

[24] *Id.*

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class and Sub-Classes, pray for judgment against Defendants as follows:

      A.      entering an order certifying the Class and Sub-Classes and appointing Plaintiffs as their representatives as requested herein, and appointing the undersigned as counsel for the Class and Sub-Classes;

      B.      awarding statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

      C.      enjoining Amazon from collecting, obtaining, storing, using, selling, leasing, trading, profiting from, disclosing, redisclosing, or otherwise disseminating Plaintiffs' and the Class's biometric identifiers until done so in compliance with BIPA;

      D.      awarding Plaintiffs their reasonable attorneys' fees, costs, and other expenses pursuant to 740 ILCS 14/20(3);

      E.      awarding Plaintiffs pre-judgment and post-judgment interest, as provided by law; and

      F.      awarding such other and further relief as is just and appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims so triable.


Dated: May 23, 2022                    Respectfully submitted,

                                       Plaintiffs Bennett Wilcosky, Michael Gunderson,
                                       Michael Gunderson as next friend of E.G., a minor,
                                       Donna Rucker, Jason Stebbins, Sandy White, Julie
                                       Bloom Stebbins, Cheri Ann Clark, Becky White, and
                                       Carrol Cooper, individually, and on behalf of all
                                       similarly situated individuals,


                                       s/ Michael Aschenbrener
                                       Interim Class Counsel


Michael Aschenbrener (6292306) (masch@kamberlaw.com)
KamberLaw, LLC
220 N Green St
Chicago, IL 60607
Telephone: (212) 920-3072
Facsimile: (212) 202-6364

Deborah Kravitz (*pro hac vice*) (dkravitz@kamberlaw.com)
KamberLaw, LLP
401 Center St., Suite 111
Healdsburg, CA 95448
Telephone: 707-820-4247

Scott A. Kamber (*pro hac vice*) (skamber@kamberlaw.com)
KamberLaw, LLC
201 N. Milwaukee St., Suite 200
Denver, CO 80206
Telephone: 303-222-9008

***Interim Class Counsel***


Gerald J. Bekkerman (gbekkerman@tpmblegal.com)
Bradley N. Pollock (bpollock@tpmblegal.com)
Sean P. Murray (smurray@tpmblegal.com)
Marc A. Taxman (mtaxman@tpmblegal.com)
Taxman, Pollock, Murray & Bekkerman, LLC

225 W. Wacker Drive, Suite 1750
Chicago, IL 60606
Tel: 312-586-1700
Fax: 312-586-1701

***Other Attorneys for Plaintiffs Bennett Wilcosky, Michael Gunderson, Michael Gunderson as next friend of E.G., a minor, and the Putative Class***

Thomas P. Rosenfeld (tom@ghalaw.com)
Kevin P. Green (kevin@ghalaw.com)
Goldenberg Heller & Antognoli, P.C.
2227 South State Route 157
Edwardsville, IL 62025
(618) 656-5150

James Frickleton (jimf@bflawfirm.com)
Bartimus Frickleton Robertson Rader
4000 West 114th St, Suite 310
Leawood, KS 66211
913-266-2300

***Attorneys for Plaintiffs Donna Rucker, Jason Stebbins, Sandy White, Julie Bloom Stebbins, Cheri Anne Clarke, and Becky White***

Brandon M. Wise (bwise@prwlegal.com)
Peiffer Wolf Carr Kane & Conway, LLP
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
314-833-4825

***Attorneys for Plaintiff Carol Cooper***