**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BENNETT WILCOSKY, *et al.*, each individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:19-cv-05061 |
| v. | ) ) | Honorable Franklin U. Valderrama |
| AMAZON.COM, INC. and AMAZON.COM SERVICES, INC., | ) ) ) | ████████████████ |
| Defendants. | ) ) | |

---

**DEFENDANTS AMAZON.COM, INC. AND AMAZON.COM SERVICES LLC'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**RULE 12(b)(6) MOTION TO DISMISS**

---

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

RELEVANT FACTUAL BACKGROUND ........................................................................ 2

    A.    The Alexa Service .............................................................................................. 2

    B.    The Voice ID Feature ......................................................................................... 3

    C.    The Voice ID Registration and Consent Process ............................................... 3

    D.    Plaintiffs and Their Claims ................................................................................ 5

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ....................................................................................................................... 7

I.    PLAINTIFFS' SECTION 15(b) CLAIMS FAIL BECAUSE AMAZON
RECEIVED CONSENT FROM THE VOICE ID PLAINTIFFS AND WAS NOT
REQUIRED TO OBTAIN CONSENT FROM BLOOM STEBBINS ........................... 7

    A.    The Voice ID Plaintiffs Consented to Collection of Their Alleged
Biometric Data .................................................................................................. 7

        1.    The Enrollment Process Form Obtained Valid Consent ........................ 7

        2.    The Voice ID Disclosures Satisfied BIPA's Requirements ................... 10

    B.    Section 15(b) Does Not Apply to Plaintiff Bloom Stebbins ............................... 14

II.    PLAINTIFFS' SECTION 15(c) CLAIM FAILS BECAUSE THEY DO NOT
ALLEGE THAT AMAZON TRANSFERRED BIOMETRIC DATA FOR
PROFIT .................................................................................................................... 15

III.    PLAINTIFFS' SECTION 15(d) CLAIM FAILS BECAUSE THEY DO NOT
PLAUSIBLY ALLEGE DISCLOSURE TO A THIRD PARTY ................................. 17

CONCLUSION .................................................................................................................. 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ambrosius v. Chicago Athletic Clubs, LLC*,
  2021 IL App (1st) 200893 .................................................................................8, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................6

*Brownmark Films, LLC v. Comedy Partners*,
  682 F.3d 687 (7th Circ. 2012) ............................................................................7, 9

*Fernandez v. Kerry, Inc.*,
  2020 WL 7027587 (N.D. Ill. Nov. 30, 2020) .......................................................16

*Fteja v. Facebook, Inc.*,
  841 F. Supp. 2d 829 (S.D.N.Y. 2012) ....................................................................8

*Garner v. Amazon.com, Inc.*,
  2022 WL 1443680 (W.D. Wash. May 6, 2022).......................................................8

*Hazlitt v. Apple Inc.*,
  543 F. Supp. 3d 643 (S.D. Ill. 2021) .....................................................................16

*Hogan v. Amazon.com, Inc.*,
  No. 21 CH 02330 (Cir. Ct. Cook Cty, Ill. 2022) ..................................................16

*Horn v. Method Prod.*,
  2022 WL 1090887 (N.D. Ill. Apr. 12, 2022) ........................................................17

*Meyer v. Uber Technologies, Inc.*,
  868 F.3d 66 (2nd Cir. 2017) ................................................................................8, 9

*Oelze v. Score Sports Venture, LLC*,
  401 Ill. App. 3d 110 (2010) ...................................................................................10

*Phillips v. Prudential Ins. Co. of America*,
  714 F.3d 1017 (7th Circ. 2013) ...............................................................................7

*Pooh-Bah Enters., Inc. v. County of Cook*,
  232 Ill. 2d 463 (Ill. 2009) ......................................................................................16

*Rosenbach v. Six Flags Entertainment Corp.*,
  2019 IL 123186 ..........................................................................................9, 13, 15

*Santana v. Take-Two Interactive Software, Inc.*,
717 F. App'x 12 (2d Cir. 2017) ............................................................10, 11, 12

*Taylor v. Samsung America, Inc.*,
No. 19-cv-4526, 2020 WL 1248655 (N.D. Ill. Mar. 16, 2020) ...........................9, 14

*Tellabs, Inc. v. Makor Issues & Rts.*,
551 U.S. 308 (2007) ..................................................................................7

*Thornley v. Clearview AI, Inc.*,
984 F.3d 1241 (7th Cir. 2021) .....................................................................16

*Vance v. Microsoft Corp.*,
534 F. Supp. 3d 1301 (W.D. Wash. 2021) .................................................15, 16

*W. Union Co. v. Tom Kulas & Paymentus Co.*,
2017 WL 2973584 (N.D. Ill. July 12, 2017) .....................................................8

*Williams v. Planet Fitness, Inc.*,
No. 20-cv-3335, 2021 WL 1165101 (N.D. Ill. Mar. 26, 2021) ...........................9, 10

*Zellmer v. Facebook, Inc.*,
2022 WL 976981 (N.D. Cal. Mar. 31, 2022) ....................................................15

**Statutes**

740 ILCS 14/10 ..........................................................................................14

740 ILCS 14/15(b) ..........................................................................10, 12, 13

740 ILCS 14/15(c) ........................................................................................15

740 ILCS 14/15(d) ........................................................................................17

**Other Authorities**

https://www.ahdictionary.com/word/search.html?q=voiceprint ..............................12

## INTRODUCTION

Plaintiffs' Second Amended Consolidated Complaint ("SAC") alleges that Amazon.com, Inc. and Amazon.com Services LLC (together, "Amazon") violated Sections 15(b), (c) and (d) of Illinois' Biometric Information Privacy Act ("BIPA") by collecting, selling, and disseminating Plaintiffs' voiceprints without their consent. But each of those claims fails as a matter of law based on the SAC's allegations and exhibits. The Court should dismiss the SAC with prejudice.

Plaintiffs Christopher Block, Michael Gunderson, and Jason Stebbins (the "Voice ID Plaintiffs") each own an Alexa device and allege that Amazon violated BIPA Section 15(b) by collecting their voiceprints when they registered for and used Alexa's Voice ID feature. Voice ID is an optional feature which, as its name suggests, allows an Alexa device to identify its owners by the sound of their voice, distinguishing them from other members of a household with reasonable accuracy. But this claim fails for a simple reason: each of the Voice ID Plaintiffs admits to voluntarily enrolling in Voice ID, a process that required them to (i) consent in writing to Amazon creating an "acoustic model" of their voices for the purpose of identifying them, and (ii) repeat a series of specific phrases to their Alexa devices to create the acoustic model. Even though any reasonable consumer would understand the purpose of Voice ID under these circumstances, the Voice ID Plaintiffs contend that their written consent was invalid because the Alexa Terms of Use were presented via a hyperlink, which they were not required to read before clicking "Agree and Continue." But consumers routinely consent to terms in this manner, and Illinois courts routinely uphold such agreements. There is no basis to depart from that well-established precedent.

Plaintiff Julia Bloom Stebbins is differently situated than the Voice ID Plaintiffs because she does not allege that she created a Voice ID. Her BIPA Section 15(b) claim is based on a different theory: that Amazon captured her "voiceprint" when she spoke to Plaintiff Jason Stebbins' Alexa device, because Amazon compared her voice to Jason's Voice ID to determine

whether it matched. But a single utterance is insufficient to create a voiceprint or other unique identifier under BIPA, and Bloom Stebbins alleges no *facts* showing that Amazon's ephemeral comparison of her voice to Jason's Voice ID equates to the capture or possession of her biometrics. Bloom Stebbins' theory is akin to saying a mobile phone captured biometrics if its owner's friend looked at the locked phone but the phone's face-identifier feature denied her access. Reading Section 15(b) to impose liability under these circumstances would stretch BIPA far beyond its intended scope, place Amazon in an impossible position, and essentially outlaw most biometric technology in Illinois. That is why no court has ever adopted such an extreme interpretation, and this Court should not be the first to do so.

Plaintiffs' BIPA Sections 15(c) and (d) claims fail for a simple reason as well: Plaintiffs allege no facts plausibly showing that Amazon transferred their biometric data to anyone for profit (15(c)) or that Amazon ever disclosed their biometric data to a third party (15(d)). Plaintiffs' inability to allege such facts after discovery is telling and reflects Amazon's commitment to customer privacy and longstanding policy not to sell customers' personal information.

## **RELEVANT FACTUAL BACKGROUND**

### A.     **The Alexa Service**

Alexa is a cloud-based virtual assistant that can be accessed using certain Amazon devices, such as its Echo smart speakers and Fire tablets, as well as smart devices, such as smartphones and TVs, manufactured by other companies. SAC ¶ 4. With those devices, customers can use their voice to play music, check the weather or news, and control smart-home devices like thermostats or lights, among other convenient and entertaining features. *See* SAC Ex. C (*Alexa and Alexa Device FAQs* ("Alexa FAQs")) at FAQ 1. Each interaction with Alexa begins with the wake word, which is, by default, "Alexa." SAC ¶ 98. When Alexa is activated through the wake word, it records the user's request and sends the audio to the cloud, where it is converted to text that can

be processed by Alexa. Plaintiffs previously alleged that Alexa recordings constitute biometric identifiers, but recognizing that is untrue, they abandoned that allegation in the SAC.

**B.      The Voice ID Feature**

Alexa owners (or members of their household) also have the option of creating a more personalized experience by enrolling in Alexa's Voice ID feature, which allows Alexa to recognize each owner by the sound of his or her voice, as distinguished from other members of the household. As described in the Alexa Terms of Use:

> When you create a voice ID, Alexa uses recordings of your voice ***to create an acoustic model of your voice characteristics and to update that model over time to improve Alexa's ability to recognize you***. If Alexa recognizes your voice when you are using a third-party skill, that skill may receive a numeric identifier that allows it to distinguish you from other users in your household to better personalize your experience. You can delete your voice ID or turn off personalization of third-party skills based on voice ID.

SAC Ex. B (*Alexa Terms of Use* ("TOUs")) § 1.4 (emphasis added).

Plaintiffs allege that when a user registers a Voice ID, Alexa technology creates "mathematical models" of the registrant's voice that are "voiceprints." SAC ¶ 9; *id.* ¶¶ 61, 67. Plaintiffs also allege that Amazon captures voiceprints from people who "never enrolled in Voice ID but who used an Alexa Device of someone who enrolled in Voice ID." *Id.* ¶¶ 18, 97-102. Specifically, Plaintiffs contend that Amazon compares the voice of anyone speaking to an Alexa device with a registered Voice ID to the acoustic model of the registered user, to determine whether the speaker's voice matches that of the registered user. *Id.* Notably, however, Plaintiffs do not allege any facts showing that Amazon captures or stores voiceprints from non-registered users for this ephemeral comparison. *See id.*

**C.      The Voice ID Registration and Consent Process**

In Illinois, an Alexa Voice ID can be created only via the Alexa app, which requires written

consent. *Id.* ¶ 73. The consent process is illustrated in the SAC. *Id.* ¶¶ 77-93 & Exs. A-B. The process begins at a "Set Up Voice ID" screen. *Id.* Ex. A. This screen advises the user that "[a] voice ID enables Alexa to learn your voice, recognize you when you speak to any of your Alexa devices, and provide enhanced personalization." *Id.* Text at the bottom of the screen states, "By tapping 'Agree and Continue,' you agree to the Alexa Terms of Use and authorize the creation, use, improvement, and storage of your voice ID. Learn more." *Id.* Immediately below this text, a corresponding "Agree and Continue" button appears. *Id.*

As shown above, the Set Up Voice ID screen contains a blue hyperlink to the Alexa Terms of Use. SAC Ex. B. The Terms of Use provide that all Alexa users must "agree to the terms of this Agreement" and if a person "do[es] not accept the terms of this Agreement, then you may not use Alexa." *Id.* Section 1.4 of the Terms of Use—titled "Voice ID"—provides:

> You can create a voice ID so Alexa can call you by name and do more to personalize your experience. ***When you create a voice ID, Alexa uses recordings of your voice to create an acoustic model of your voice characteristics and to update that model over time to improve Alexa's ability to recognize you***.

SAC Ex. B, at § 1.4 (emphasis added). Users can also click the "Learn more" blue hyperlink at two separate places—on the Set Up Voice ID screen and in the TOUs—to access the Alexa FAQs. SAC Ex. A & Ex. B. at § 1.4. In response to the question "How does voice ID work," the FAQs explain that Alexa creates an acoustic model of their voice to allow Alexa to recognize them:

> You can create a voice ID, so Alexa can call you by your name and do more to personalize your experience. ***When you create a voice ID, Alexa uses recordings of your voice to create an acoustic model of your voice characteristics and to update that model over time to improve Alexa's ability to recognize you***. Alexa stores these acoustic models in the cloud. If your voice ID is not recognized for 18 months, we will automatically delete the acoustic model of your voice.

*Id.* Plaintiffs who registered for Voice ID agreed to these disclosures. *See id.* ¶¶ 77-83. Plaintiffs do not dispute they had an opportunity to review the disclosures, or that they clicked "Agree and

Continue." *See id.* The images of the welcome screen, and portions of the TOUs and "Learn more"

FAQs appeared as follows:

<table>
<tr><th>Welcome Screen:</th><th>Terms of Use:</th></tr>
</table>



**1.4 Voice ID.** You can create a voice ID so Alexa can call you by name and do more to personalize your experience. When you create a voice ID, Alexa uses recordings of your voice to create an acoustic model of your voice characteristics and to update that model over time to improve Alexa's ability to recognize you. If Alexa recognizes your voice when you are using a third-party skill, that skill may receive a numeric identifier that allows it to distinguish you from other users in your household to better personalize your experience. You can delete your voice ID or turn off personalization of third-party skills based on voice ID. Learn more about voice ID.

**"Learn more" FAQs:**

**20. How does voice ID work?**

You can create a voice ID, so Alexa can call you by name and do more to personalize your experience. When you create a voice ID, Alexa uses recordings of your voice to create an acoustic model of your voice characteristics and to update that model over time to improve Alexa's ability to recognize you. Alexa stores these acoustic models in the cloud. If your voice ID is not recognized for 18 months, we will automatically delete the acoustic model for your voice. If Alexa recognizes your voice when you are using a third-party skill, that skill may receive a numeric identifier that allows it to distinguish you from other users in your household to better personalize your experience. You can delete your voice ID or turn off personalization of third-party skills based on voice ID in the Alexa app. Deleting your voice ID will also delete the voice recordings you said to teach Alexa when you created your voice ID. You can also review voice recordings attributed to a particular voice ID, and delete those voice recordings, by visiting **Settings > Alexa Privacy** in the Alexa app and Echo Show devices or https://www.amazon.com/alexaprivacysettings .

SAC, Exs. A-C.

### D.    Plaintiffs and Their Claims

The Voice ID Plaintiffs all allege they own at least one Alexa device and that they enrolled in Voice ID. *Id.* ¶¶ 129-130; 135-136; 143-144. They allege that "Voice ID consists of both biometric identifier (the voiceprint) and biometric information (information associated with the biometric identifier used to identify the speaker …)." *Id.* ¶ 131. They acknowledge they used the Alexa app—which includes the consent process described in Section C *infra*, to enroll in Voice ID, but they nevertheless claim that "Amazon did not obtain BIPA Consent" from them before collecting their biometric identifiers and information. *Id.* ¶¶ 131, 140, 145.

Plaintiff Julia Bloom Stebbins alleges she "never enrolled in the Voice ID program and therefore never went through the Alexa App enrollment process." *Id* ¶ 150.[1] Nonetheless, Bloom Stebbins alleges that Amazon collected her voiceprint without her consent when she spoke the wake word to an Alexa device for which Plaintiff Jason Stebbins had enabled Voice ID. *Id.* ¶ 151.

Plaintiffs claim that Amazon violated Section 15(b) by failing to inform them that it was collecting their biometric data and by failing to obtain "a written release" to do so. *Id.* ¶¶ 168-170. Plaintiffs also allege that Amazon violated Section 15(c) by using their biometric information "to improve Alexa's natural language understanding" for "commercial purposes," to "expand the scope of Alexa products," and to create other unspecified "business opportunities for Amazon." *Id.* ¶¶ 181-182. Plaintiffs allege that Amazon violated section 15(d) by failing to obtain their consent before disclosing their biometrics to Amazon's own employees and contractors and to unidentified "third parties." *Id.* ¶¶ 194-95.

---

[1] Amazon accepts Plaintiffs' well pleaded factual allegations as true solely for the purpose of testing the sufficiency of the SAC.

## LEGAL STANDARD

To overcome a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face," supported by factual allegations beyond the "speculative," "conceivable," and "possible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57, 570 (2007). The Court "must consider not only the complaint itself, but also documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Phillips v. Prudential Ins. Co. of America*, 714 F.3d 1017, 1019-20 (7th Cir. 2013). The SAC attaches the Alexa Voice ID enrollment screen, the Alexa TOUs, and the Alexa FAQs, so the Court may consider these documents in deciding this motion. SAC Exs. A-C.

Courts also may take judicial notice of undisputedly authentic matters of public record to decide motions to dismiss, and documents incorporated by reference. *See Tellabs, Inc. v. Makor Issues & Rts.*, 551 U.S. 308, 322 (2007); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court" in a Rule 12(b)(6) motion).

## ARGUMENT

**I.     PLAINTIFFS' SECTION 15(b) CLAIMS FAIL BECAUSE AMAZON RECEIVED CONSENT FROM THE VOICE ID PLAINTIFFS AND WAS NOT REQUIRED TO OBTAIN CONSENT FROM BLOOM STEBBINS.**

### A.     The Voice ID Plaintiffs Consented to Collection of Their Alleged Biometric Data.

The Voice ID Plaintiffs acknowledge that they enrolled in Voice ID using the Alexa app. SAC ¶ 77. They also concede that the enrollment process requires users to agree to Alexa's TOUs, and that they spoke training phrases to Alexa to learn their voice. *Id.* ¶ 75 & n.7, ¶ 78. But they claim the enrollment process is insufficient in form and substance. Plaintiffs are wrong on both

counts—the SAC and its exhibits show that Amazon obtained valid, written consent from the Voice ID Plaintiffs to create acoustic models of their voices to personalize their Alexa experiences.

## 1.    The Enrollment Process Form Obtained Valid Consent.

The Voice ID Plaintiffs were required to affirmatively agree to the Alexa TOUs by clicking "Agree and Continue." SAC Ex. A. The TOUs were hyperlinked directly above the "Agree and Continue" button. Plaintiffs nonetheless allege that the Alexa enrollment process did not meet the "requirements for an electronically executed consent." SAC ¶ 85(C). It is well-established under Illinois law, however, that "[e]lectronic signatures and clicking 'Accept' … are valid means of expressing assent" in online transactions. *W. Union Co. v. Tom Kulas & Paymentus Co*., No. 17-CV-00289, 2017 WL 2973584, at *5 (N.D. Ill. July 12, 2017); *see also, e.g.*, *Ambrosius v. Chicago Athletic Clubs, LLC*, 2021 IL App (1st) 200893 ¶ 31 (enforcing agreement where, "in signing up for the rewards program, plaintiffs were asked to affirmatively manifest their assent to the terms of service and were informed that, by signing up, they were agreeing to those terms of service, which appeared via hyperlink"); *see also Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 78-79 (2nd Cir. 2017) ("[T]he language '[b]y creating an Uber account, you agree' is a clear prompt directing users to read the Terms and Conditions and signaling that their acceptance of the benefit of registration would be subject to contractual terms."); *Fteja v. Facebook, Inc*., 841 F. Supp. 2d 829, 840 (S.D.N.Y. 2012) ("Here, [the plaintiff] was informed of the consequences of his assenting click and he was shown, immediately below, where to click to understand those consequences. That was enough.").

In fact, another federal court recently held that the Alexa Terms of Use constitute a binding agreement when they are "made available through hyperlink" and users signal their assent to the terms by clicking an agree button. *Garner v. Amazon.com, Inc.*, No. C21-0750RSL, 2022 WL

1443680, at *6-7 (W.D. Wash. May 6, 2022). The Voice ID Plaintiffs did precisely that, and they are likewise bound to the Alexa TOUs.

While the Voice ID Plaintiffs raise a hodgepodge of other objections to the consent process, none have merit. They suggest that the "screens for the enrollment process" were deficient because they were "the size of a user's phone screen," SAC ¶ 78; users were required to "scroll down" in the TOUs to access information about Voice ID, *id.* ¶ 81; and that a paragraph related to Voice ID "is in the same font and size as every other provision and is not highlighted in any way," *id.* ¶ 87. They also allege that they were not required to read the TOUs before enrolling in Voice ID (even though the TOUs were available via a hyperlink, and they expressly agreed to them). Notably, however, Plaintiffs do not allege that any of the Voice ID disclosures or other terms were too small to read or inaccessible to them before or after they chose to enroll in Voice ID. Plaintiffs' quibbles are thus purely hypothetical.[2] In any case, none of this undermines the consent process's validity.

As the SAC confirms, information about Voice ID is hardly buried or difficult to access. The "Set up voice ID" screen states unambiguously that the purpose of creating a voice ID is to "enable[] Alexa to learn your voice." SAC Ex. A. And information about Voice ID appears on page 3 of the TOUs, in a paragraph with the boldface heading "**Voice ID**." SAC Ex. B. The text is formatted to be read on a phone, *see id.*, as almost everyone reads text on their phone every day. There is nothing unusual—let alone legally deficient—about this process. *See, e.g.*, *Meyer*, 868 F.3d at 70 (enforcing agreement presented on smartphone); *Taylor v. Samsung America, Inc.*, No.

_____

[2] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████████████████████████████

19-cv-4526, 2020 WL 1248655, at *2 (N.D. Ill. Mar. 16, 2020) (plaintiff was on reasonable notice of term appearing at page 14 of terms and conditions); *Williams v. Planet Fitness, Inc.*, No. 20-cv-3335, 2021 WL 1165101, at *4 (N.D. Ill. Mar. 26, 2021) (enforcing term that was "in the same font size and color as the remaining provisions" of an agreement and was "clearly labelled" with a heading).

It also makes no difference that the Voice ID Plaintiffs were not required to read the TOUs before creating a Voice ID. The TOUs were presented via a hyperlink, the Voice ID Plaintiffs had an opportunity to review them (as well as the Voice ID FAQs), and the Voice ID Plaintiffs agreed to them by clicking "Agree and Continue." SAC ¶¶ 77-93 & Ex. A. Nothing more is required. *See supra* at 8 (citing authorities). Indeed, it is well established under Illinois law that a party's decision not to read an agreement is not a defense to its enforceability. *See, e.g.*, *Ambrosius*, 2021 IL App. (1st) ¶ 32 ("the fact that plaintiffs may not have clicked on the hyperlink or read through the terms of service before signing up for the rewards program does not preclude the formation of a contract or mean that CAC acted deceptively."); *Oelze v. Score Sports Venture, LLC*, 927 N.E.2d 137, 146 (2010) (holding that failure to read an agreement before manifesting assent to it does not invalidate the agreement). Plaintiffs' procedural objections to the Voice ID consent therefore fail.

### 2. The Voice ID Disclosures Satisfied BIPA's Requirements.

The Voice ID Plaintiffs also challenge the substance of the Voice ID disclosures, alleging they do "not satisfy the express requirements for BIPA Consent." SAC ¶ 85. Section 15(b) requires Amazon to inform a customer (i) that a biometric identifier or biometric information is being collected or stored; (ii) the specific purpose of the collection; and (iii) the "length of term" for which it will be stored. 740 ILCS 14/15(b). There is no requirement that particular statutory language be provided to the consumer to obtain informed consent. Instead, a business may

accurately describe the activity at issue. *See Santana v. Take-Two Interactive Software, Inc.*, 717 F. App'x 12, 15-16 (2d Cir. 2017) (rejecting argument that BIPA disclosure was insufficient because it did not contain the statutory phrase "scan of face geometry" and noting the process, which involved taking selfies from different angles, would mean "No reasonable person . . . would believe that the MyPlayer feature was conducting anything other than such a [face geometry] scan."). And the process by which an alleged biometric identifier is captured can also inform the consent inquiry. *See id.* (noting that the user had to place their face within 6 to 21 inches of the camera and slowly turn their head to the left and right for 15 minutes).

Here, Amazon's Voice ID disclosures satisfy all three of BIPA's requirements:

***Biometric identifier or biometric information being collected or stored*:** The "Set up Voice ID" screen states that when a user creates a Voice ID it "enables Alexa to learn your voice" and "recognize you when you speak to any of your Alexa devices." SAC Ex. A. And the TOUs state that Alexa will use recordings of the voice "to create an acoustic model of your voice characteristics" and update the model over time for the purpose of "recogniz[ing] you":

> You can create a voice ID so Alexa can call you by your name and do more to personalize your experience. When you create a voice ID, Alexa uses recordings of your voice to create an acoustic model of your voice characteristics and to update that model over time to improve Alexa's ability to recognize you.

SAC Ex. B § 1.4. Customers are then required to repeat ten or four phrases (depending on the time frame) to teach Alexa their voice. SAC ¶ 75 & n.7. Any reasonable consumer would understand the implications of these disclosures and the voice-training process. *See Santana*, 717 Fed. App'x. at 15-16.

Plaintiffs say the disclosures are deficient because they "fail[] to inform the user that a biometric identifier or biometric information is being collected" and "a reasonable consumer would not understand that the acoustic model . . . is either a biometric or a voiceprint." *Id.* ¶ 85(A).

BIPA, however, does not require the disclosure to include the legalese phrase "biometric identifier"[3] or the word "voiceprint"; it only requires Amazon to provide information sufficient to allow the customer to provide informed consent. 740 ILC 14/15(b). The phrase "acoustic model" is ***more accurate*** than "voiceprint," which is defined as a "graphic representation of an electronic recording of a person's voice, uniquely characteristic of the individual speaker." *See* "Voiceprint," American Heritage Dictionary.[4] According to Plaintiffs' own allegations, Voice ID does not rely on a ***graphic*** representation of a voice, so Amazon would have misled customers had it used that term. *See, e.g.*, SAC ¶ 7 (alleging Speaker ID "encodes a mathematical representation of the voice").

Amazon also discloses that Voice ID "enables Alexa to learn your voice," "recognize you when you speak," and "create[s] an acoustic model of your voice characteristics … to recognize you." SAC Exs. A & B § 1.4. Indeed, ***Amazon's service is called "Voice ID"*** —which would have indicated to any reasonable person exactly what the service is intended to do, *i.e.*, identify them by their voice, as distinguished from other members of their household. *See, e.g., id.*

Taken as a whole, Amazon's disclosures are more than sufficient to put a reasonable person on notice that Amazon is collecting information about their voice to enable them to be identified— particularly when considered alongside the requirement that creating a Voice ID requires the user to repeat four or ten phrases to teach Alexa to recognize their voice. *See* SAC ¶ 75 & n.7; *Santana*, 717 F. App'x at 12 (noting process which involved taking selfies from multiple different angles,

---

[3] This term is defined in BIPA to mean "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." Biometric identifiers do not include writing samples, written signatures, photographs, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color, among various other exclusions.
[4] Available at https://www.ahdictionary.com/word/search.html?q=voiceprint.

would mean "No reasonable person . . . would believe that the MyPlayer feature was conducting anything other than such a [face] scan.").

**_"Specific purpose" of collection_:** Plaintiffs allege the TOUs "do[] not disclose [Amazon's] use of the voiceprint to teach its artificial intelligence, nor does it disclose in any way the specific purpose for which Amazon is collecting the biometric, nor how it may be used in its shopping app, or the myriad of other ways Amazon uses the voiceprint beyond just 'recognizing you.'" SAC ¶ 85(B). This is wrong.

The disclosure states that the acoustic model allows Alexa to "call you by your name" and "personalize your experience" and is "update[d] over time to improve Alexa's ability to recognize you." *Id.* Ex. B § 1.4. That is an accurate description of the specific purpose for which Amazon creates the acoustic model. The alleged "myriad of other ways" Amazon uses the acoustic model (including, allegedly, to train artificial intelligence and to improve the user's shopping experience), even if accurate, are not separate "purposes" for collection, they are just particular ways to personalize the user's experience or improve Alexa's ability to recognize the speaker. 740 ILC 14/15(b). BIPA does not require an entity to disclose every single action it may take to fulfill the disclosed purpose of collecting biometrics; if it did, disclosures would be unwieldy, complex, ever-changing, and constantly subject to challenge (and huge liability) on the basis that some particular detail was omitted. BIPA does not require such granular detail. *See Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186 ¶ 37. Compliance with BIPA "should not be difficult," (*id.*) let alone impracticable.

**_"Length of term" of collection_:** As Plaintiffs acknowledge, SAC ¶ 90, the Alexa FAQs—freely accessible by links in the Voice ID enrollment page and TOUs—inform the user that "Alexa stores [Voice ID users'] acoustic models in the cloud. If your voice ID is not recognized for

-13-

18 months, we will automatically delete the acoustic model for your voice." *Id.* Plaintiffs do not contend this disclosure is inaccurate or that it does not comply with BIPA. They complain only that Amazon has made the language "less accessible" by "burying it in the FAQs." *Id.* But no Voice ID Plaintiff claims the language was hidden or inaccessible, and—as established above—that the language was placed within a document that also provided other relevant information does not make it invalid. *Taylor*, 2020 WL 1248655, at *2.

### B. Section 15(b) Does Not Apply to Plaintiff Bloom Stebbins.

Plaintiff Julia Bloom Stebbins is differently situated than the Voice ID Plaintiffs because she does not allege that she created a Voice ID. Specifically, Bloom Stebbins alleges she "never enrolled in the Voice ID program and therefore never went through the Alexa App enrollment process." SAC ¶ 150. Instead, she bases her claim on a different theory: that Amazon captured her "voiceprint" when she spoke to Plaintiff Jason Stebbins' Alexa device, because Amazon compared her voice to Jason's Voice ID to determine whether it matched. *Id.* ¶ 150. This theory fails for multiple reasons.

First, Bloom Stebbins does not allege any *facts* showing that a single utterance—such as "Alexa, play music"—is sufficient to create a voiceprint or other unique identifier under BIPA (she merely recites the statutory language). Indeed, Plaintiffs allege facts to the contrary, admitting that it takes a minimum of four, specific training phrases to create a Voice ID. *See* SAC ¶ 75 & n.7. A single, ephemeral statement—even a series of statements that are *not* the required training phrases—do not create a voiceprint, and Plaintiffs do not allege facts to show otherwise.

Second, Bloom Stebbins does not, and cannot, allege facts showing that Amazon captured or stored any data resulting from the ephemeral comparison of her single utterance to Jason Stebbins' Voice ID. Bloom Stebbins' argument is thus akin to asserting that any person who looks

at a friend or family member's locked phone has their biometrics captured and stored by the device when it fails to recognize her face and denies her access. Reading Section 15(b) to impose liability under these circumstances would stretch BIPA far beyond its intended scope, place Amazon and other technology providers in an impossible position, and effectively outlaw most biometric technology in Illinois. This is inconsistent with BIPA's terms and intent, which focus on "unique identifiers" that can be "used to identify an individual." 740 ILCS 14/5(c); *id.* Section 14/10. Here, there is no alleged identification of Bloom Stebbins, nor could there be, given that she is alleged only to have spoken near an Alexa device with a Voice ID intended to identify *Jason Stebbins* with reasonable accuracy, as distinguished from other members of his household.

Third, unlike the Voice ID Plaintiffs, for whom Amazon has records because they registered their Voice IDs using the Alexa App, it is impossible for Amazon to identify strangers who spoke to an Alexa device, let alone obtain written consent from them before they do so. Reading Section 15(b) to require a defendant to obtain consent from strangers would put it "in an impossible position," and thus is "not consonant with the Illinois legislature's intent[.]" *Zellmer v. Facebook, Inc.*, No. 3:18-CV-01880-JD, 2022 WL 976981, at *5 (N.D. Cal. Mar. 31, 2022).[5] Indeed, compliance with BIPA "should not be difficult," let alone impossible. *Rosenbach*, 2019 IL 123186 ¶ 37.

---

[5] In *Zellmer*, plaintiff alleged Facebook violated BIPA by scanning user-uploaded photos to identify non-Facebook users. 2022 WL 976981, at *1. Plaintiff sued on behalf of non-Facebook users. *Id.* The court granted summary judgment on plaintiff's Section 15(b) claim because Facebook had no way, and therefore no obligation, to provide notice to such unknown users. *Id.* at *4. The court held that BIPA requires a "minimum level of known contact" between a person and the entity who collects biometric information. *Id.* at *4. Construing BIPA otherwise "would lead to obvious and insoluble problems." *Id.* For example, Facebook would somehow need to identify every non-user in Illinois and find a way to provide notice and obtain consent. *Id.* The court found the Illinois legislature "clearly contemplated that Section 15(b) would apply only in situations where a business had at least some measure of knowing contact with and awareness of the people subject to biometric data collection." *Id.* Section 15(b) does not require a company "to provide notice to, and obtain consent from, non-users who were for all practical purposes total strangers to" the company, "[g]iven the readily apparent impossibility of carrying such a burden." *Id.* at *3-4.

## II. PLAINTIFFS' SECTION 15(c) CLAIM FAILS BECAUSE THEY DO NOT ALLEGE THAT AMAZON TRANSFERRED BIOMETRIC DATA FOR PROFIT.

A BIPA Section 15(c) claim requires plausible allegations that the defendant sold or transferred biometric data to a third party for value. *See* 740 ILCS 14/15(c) ("No private entity in possession of [biometric data] may sell, lease, trade, or otherwise profit from a person's or a customer's biometric [data]."). Section 15(c)'s first three verbs—"sell," "lease," and "trade"—all contemplate a transaction in which an item is given or shared in exchange for value. *Vance v. Microsoft Corp.*, 534 F. Supp. 3d 1301, 1306 (W.D. Wash. 2021). A "cardinal rule of statutory construction," *ejusdem generis*, instructs that when a statute "specifically describes several classes of persons or things and then includes 'other persons or things,' the word 'other' is interpreted to mean 'other such like.'" *Pooh-Bah Enters., Inc. v. County of Cook*, 232 Ill. 2d 463, 492 (Ill. 2009).

As such, Section 15(c)'s phrase "otherwise profit"—like "sell," "lease," and "trade"— means a transaction through which biometric data is *transferred or shared* in return for a benefit. *Vance*, 534 F. Supp. 3d at 1307. Section 15(c) does *not* apply to the use of "facial [or voice] recognition technology to sell more devices, advertise [] software," or outsell competitors; it merely forbids profiting from "individual biometric data" itself. *Hazlitt v. Apple Inc.*, 543 F. Supp. 3d 643, 651 (S.D. Ill. 2021); *see also Fernandez v. Kerry, Inc.*, No. 17-CV-08971, 2020 WL 7027587, at *1 (N.D. Ill. Nov. 30, 2020) ("[s]ales of biometric information are forbidden" under Section 15(c)); *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1247 (7th Cir. 2021) (same). Section 15(c) only bars transactions in which: "(1) access to biometric data is shared or given to another; and (2) in return for that access, the entity receives something of value." *Vance*, 534 F. Supp. 3d at 1307.

Plaintiffs allege no facts showing that Amazon profited from the sale or transfer of biometric data. Instead, Plaintiffs merely allege that Amazon used their Voice IDs "to improve

-16-

Alexa's natural language understanding, expand the scope of Alexa products, and create other business opportunities for Amazon," including increased sales of products compatible with Alexa. SAC ¶¶ 182-83. Those alleged internal uses, however, do not violate Section 15(c) because they do not involve transferring any biometric data *to a third party* for a profit. *Hogan v. Amazon.com, Inc.*, No. 21 CH 02330, at 3 (Cir. Ct. Cook Cty, Ill. Dec. 6, 2022) (attached as Ex. 2) (stating that a Section 15(c) claim requires the plaintiff to allege that biometric information is "directly sold to [a] third party").

Plaintiffs also allege that "Amazon has used" biometric data "to create technology that is so intertwined with the biometric data that marketing the Alexa technology is essentially disseminating biometric data for profit." *Id*. ¶ 186. It is unclear what this allegation means, but the suggestion that Voice ID, which is only one feature of Alexa technology and which is not even enabled for tens of millions of Alexa devices—is so "intertwined" with Alexa technology that the sale of Alexa devices is akin to "disseminating biometric data for profit" is nonsense. *See Hogan*, Ex. 2, at 4 (distinguishing between a database, which stores information, and an algorithim, which may be derived from biometric information but "does not store the information it was derived from"). Plaintiffs' Section 15(c) claim should be dismissed.

## III. PLAINTIFFS' SECTION 15(d) CLAIM FAILS BECAUSE THEY DO NOT PLAUSIBLY ALLEGE DISCLOSURE TO A THIRD PARTY.

Section 15(d) states that a "private entity" may not "disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information" without their "consent[]." 740 ILCS 14/15(d). Plaintiffs assert that "Amazon disclosed, redisclosed, or disseminated" their biometric data—without identifying *any third party* that allegedly received this data (despite having taken discovery). SAC. ¶ 197. Such threadbare recitals of elements of a claim do not suffice. *Horn v. Method Prods.*, No. 21 C 5621, 2022 WL 1090887, at *3 (N.D. Ill.

Apr. 12, 2022) (dismissing Section 15(d) claim that merely "parrot[ed] BIPA's statutory language").

The only people to whom Amazon allegedly disclosed Plaintiffs' biometric data are unidentified "full time Amazon employees and third-party contractors," who allegedly "have access to" Plaintiffs' biometric data. SAC ¶ 194. But if Section 15(d) liability were triggered whenever a company's own employees or contractors accessed biometric data as part of their job responsibilities, then companies possessing biometric data would ***automatically*** be liable under that section. That interpretation of the statute is nonsensical, and no court has ever adopted it.

The case law is clear that to implicate Section 15(d), a disclosure must be made to *third parties*, not people working for the entity that possessed the information in the first place. *See Horn*, 2022 WL 1090887, at *3 (dismissing Section 15(d) claim with no allegation of disclosure to "other entities" like "third-party vendors"); *id.* (distinguishing cases where there are plausible allegations of disclosure to "third-party … software vendor(s)" or "third-party data centers").

Aside from its own agents, Plaintiffs say only that "Amazon works with third party Skills." *Id.* ¶ 195. Standing alone, this allegation is incoherent; "Skills" are not entities, they are akin to apps for Alexa. Like any app, Skills can be developed by third parties, but Plaintiffs neither identify any third party to which their biometric data was disclosed or how any biometric data is involved in the development of any Alexa Skills. Nor can they amend to truthfully state that any Plaintiffs' biometric data was provided to a third party. It was not. Plaintiffs' Section 15(d) claim should be dismissed.

**CONCLUSION**

For these reasons, the Court should dismiss Plaintiffs' SAC with prejudice.

-18-

Dated: August 10, 2023                Respectfully submitted,

**AMAZON.COM, INC. AND**
**AMAZON.COM SERVICES LLC**

By: */s/ Gregory T. Fouts*
       Elizabeth B. Herrington
       Gregory T. Fouts
       MORGAN, LEWIS & BOCKIUS LLP
       110 North Wacker Dr., Suite 2800
       Chicago, IL 60606-1511
       Tel. 312.324.1445
       Fax 312.324.1001
       beth.herrington@morganlewis.com
       gregory.fouts@morganlewis.com

       J. Warren Rissier (*pro hac vice*)
       MORGAN, LEWIS & BOCKIUS
       300 South Grand Ave., Fl. 22
       Los Angeles, CA 90071-3132
       Tel. 213.612.2500
       Fax 213.612.2501
       warren.rissier@morganlewis.com

**<u>CERTIFICATE OF SERVICE</u>**

  I hereby certify that on this tenth day of August, 2023, I caused a copy of the foregoing document to be served upon all counsel of record via the Court's CM/ECF system.

               */s/ Gregory T. Fouts*
               Gregory T. Fouts