# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MICHAEL GUNDERSON, JASON STEBBINS, JULIA BLOOM STEBBINS, and, CHRISTOPHER BLOCK, | CIVIL ACTION |
| Plaintiffs, | No. 1:19-cv-05061 |
| v. | Hon. Franklin U. Valderrama |
| AMAZON.COM, INC. and AMAZON.COM SERVICES, INC., | CLASS ACTION |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................1

II. RELEVANT ALLEGATIONS........................................................................................1

III. LEGAL STANDARD ...................................................................................................2

IV. ARGUMENT ...............................................................................................................3

    A. Plaintiffs plausibly allege that Amazon does not obtain BIPA-compliant "informed written consent" of Voice ID users, in violation of § 15(b). ............................................4

        *1. Amazon cannot offer alternative "facts" to dispute well-pled allegations.* ..............4

        *2. Plaintiffs sufficiently allege that Amazon failed to obtain their informed written consent before it captured their biometric data.* ........................................................6

            *a. The Enrollment Screen does not inform users of biometric capture.* .................7

            *b. The Alexa Terms of Use do not inform users of biometric capture.* .................10

            *c. The Alexa FAQs do not inform users of biometric capture.* .............................13

        *3. Amazon cannot demonstrate—as a matter of law—that Alexa users agreed to the TOUs.* ....................................................................................................................14

    B. Bloom Stebbins alleges she had her voiceprint captured without consent. ....................16

    C. Plaintiffs plausibly plead that Amazon violated § 15(c). ................................................17

    D. Plaintiffs plausibly plead that Amazon violated § 15(d). ................................................17

V. CONCLUSION .............................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012).........................5

*Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454 (S.D.N.Y. 2017)..........................15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..........................3, 4, 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)..........................3, 4

*Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617 (7th Cir. 2020), a*s amended on denial of reh'g and reh'g en banc* (June 30, 2020) ..........................passim

*Cothron v. White Castle Sys., Inc.*, 2023 IL 128004, *as modified on denial of reh'g* (July 18, 2023) ..........................17

*Cullinane v. Uber Techs., Inc.*, 893 F.3d 53 (1st Cir. 2018) ..........................15

*Erickson v. Pardus*, 551 U.S. 89 (2007) ..........................3

*Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33 (1st Cir. 2013)..........................5

*Hansbrough v. Kosyak*, 141 Ill. App. 3d 538, 551 (1986)..........................14

*In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d 931 (N.D. Ill. 2018)..........................5

*Johnson v. NCR Corp.*, No. 22 C 3061, 2023 WL 1779774 (N.D. Ill. Feb. 6, 2023) ..........................18

*Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783 (N.D. Ill. 2022), reconsideration denied, (N.D. Ill. Oct. 11, 2022)..........................8, 18

*Ramos v. Pyati*, 179 Ill. App. 3d 214, 225 (1st Dist. 1989)..........................14

*Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186 ..........................6

*Santana v. Take-Two Interactive Software, Inc.*, 717 F. App'x 12 (2d Cir. 2017) ..........................9, 10

*Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033–35 (7th Cir. 2016)..........................15

*Skinner v. Switzer*, 562 U.S. 521 (2011)..........................2

*Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 883 (N.D. Ill. 2022) ..........................9, 11

*Taylor v. Cty. of Cook*, 2011 IL App (1st) 093085..........................7

*Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873 (N.D. Ill. 2020)..........................15, 16

*Zahn v. North American Power & Gas, LLC*, 2016 IL 120526, ¶ 15..........................17

*Zellmer v. Facebook, Inc.*, No. 3:18-cv-1880, 2022 WL 976981 (N.D. Cal. Mar. 31, 2022) ................................................................................................................................16

**STATUTES**

740 ILCS 14/1(g)..........................................................................................................................4

740 ILCS 14/10 .........................................................................................................................4, 9

740 ILCS 14/15(a).......................................................................................................................12

740 ILCS 14/15(b)...........................................................................................................4, 5, 11, 17

740 ILCS 14/5(c)...........................................................................................................................7

**RULES**

Ill. S. Ct. R. Prof. Conduct 1.0(e) .............................................................................................6, 7

## I.     INTRODUCTION

Defendant Amazon.com, Inc. and Amazon.com Services, Inc.'s (collectively referred to in the singular as "Amazon" or "Defendant") motion to dismiss ignores the well-pled and plausible allegations of the Second Consolidated Amended Complaint ("SCAC"), and instead improperly substitutes its own non-alleged, alternative facts.

Most egregiously, Amazon's entire motion teeters on its specious argument that its use of the term "acoustic model" in its Terms of Use is more accurate than the relevant terms used in BIPA: "voiceprint" and "biometric identifier." Amazon is welcome to make that argument at trial (based on discovery conducted to date, Plaintiffs are confident they will prevail on that issue at trial), but it is not a proper argument in a motion to dismiss. Amazon's alternate facts directly contradict Plaintiffs' allegation in ¶ 85.A. that "acoustic model" is "not accurate" and that "a reasonable consumer would not understand that the acoustic model Amazon is describing is either a biometric or a voiceprint."

For purposes of this motion, Plaintiffs' very thoroughly alleged and well-pled facts are to be taken as true, and Amazon cannot introduce its own so-called facts to dismiss this case. In addition, Amazon's motion fails for multiple, independent reasons, as set forth below. For each of the reasons argued below, this Court should deny Amazon's motion in its entirety.

## II.     RELEVANT ALLEGATIONS

The primary internal procedure that Amazon uses to create voiceprints for users of its Alexa devices during ▨▨▨▨▨ is known as Voice ID. *Id.* at ¶¶ 60–68. When an Alexa user creates their voiceprint through this process, it is known to Amazon as Voice ID "enrollment." *E.g., id.* at ¶¶ 7, 8, 69–93.

Illinois Alexa users must complete Voice ID enrollment in the Alexa App. *Id.* at ¶ 70. The first screen Amazon shows users enrolling in Voice ID (the "Enrollment Screen") states that

1

Voice ID "enables Alexa to learn your voice, recognize you when you speak to any of your Alexa devices, and provide enhanced personalization." *Id.* at ¶ 78, Ex. A.

The Enrollment Screen is the only place where Amazon even "arguably seeks the consent" of users before capturing their voiceprints during Voice ID enrollment. SCAC ¶ 78. Users are not required to scroll to the end of the Alexa Terms of Use (the "Terms" or "TOUs") or the Alexa Device FAQs (the "Alexa FAQs" or "FAQs"), let alone click on the links leading to these Terms or FAQs before continuing with Voice ID enrollment. *Id.* ¶¶ 79–80, 86.

At the bottom of the Enrollment Screen is a disclaimer in small grey text that includes hyperlinks to the Terms and FAQs. *See id.* at ¶ 78, Ex. A. The TOUs and the FAQs each contain a single paragraph (out of dozens) pertaining to Voice ID, requiring the user to scroll through several screens before finding the relevant information. *See* SCAC Ex. B p. 3, Ex. C pp. 15–16. That single paragraph does not inform users that Amazon will capture a "voiceprint" or "biometric" data. SCAC ¶¶ 84–85. Amazon sought to maximize the number of Alexa users that enrolled in Voice ID, and ████████████████████████████████████████ ████████████████████████████████████████. *Id.* at ¶ 69.

Alexa can perform different functions known as "skills;" thousands of third-party developers have built more than 100,000 skills for Alexa. *Id.* at ¶ 56. Amazon shares biometric information derived from voiceprints with third-party developers that work on Alexa skills. *Id.* at ¶¶ 117–18. Amazon sells, leases, trades, or otherwise profits from the biometric identifiers and biometric information it derives from Voice ID that it makes available to third party advertisers or content providers. *Id.* at ¶ 188.

## III.    LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529 (2011). The Court must accept all well-pleaded factual

allegations as true and draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). To survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is facially plausible when the plaintiff alleges enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 514 (N.D. Ill. 2022) (A complaint need only contain "sufficient plausible facts to put a defendant on notice of the claims against him.").

## IV.    ARGUMENT

In the SCAC, Plaintiffs allege sufficient facts to allow this Court to draw the reasonable inference that Amazon has violated §§ 15(b), (c), and (d) of BIPA. For § 15(b), Amazon does not contest the sufficiency of Plaintiffs' allegations that Amazon collected, captured, or stored Plaintiffs' voiceprints; instead, Amazon solely argues that Plaintiffs did not allege facts sufficient to create a plausible inference that Amazon did not comply with BIPA's informed written consent requirements. Amazon is wrong. Plaintiffs have—in painstaking detail—alleged exactly how Amazon failed to obtain BIPA-compliant consent. *See, e.g.,* SCAC ¶¶ 77–93, 103–07, 170.

Plaintiffs also plausibly allege that Amazon sold and/or transmitted voiceprints to third parties in violation of BIPA §§ 15(c) and 15(d). For § 15(c), Plaintiffs allege Amazon profits from the capture and storage of Plaintiffs' voiceprints by way of advertising, *id.* ¶ 188, linking voiceprints to Amazon Prime accounts, *id.* ¶ 184, and the continued improvement of Amazon's for-profit Alexa products, *id.* ¶¶ 181–83. For § 15(d), Plaintiffs allege Amazon shares Plaintiffs' biometric data with third-party contractors, *id.* ¶ 194, and through Amazon's "Skills" program, *id.* ¶¶ 116–21, 195. The Court should deny Amazon's motion to dismiss in its entirety.

**A.** **Plaintiffs plausibly allege that Amazon does not obtain BIPA-compliant "informed written consent" of Voice ID users, in violation of § 15(b).**

The Illinois General Assembly passed BIPA to serve the interests of public welfare, security, and safety by regulating the "collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/1(g). As part of its regulatory scope, BIPA provides that an entity may not collect, capture, or otherwise obtain a person's biometric identifier or biometric information, unless it first:

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b). Where, as here, allegations arise outside the context of employment, BIPA defines a "written release" as meaning "informed written consent." *Id.* at 14/10. Thus, 15(b)(3) requires the receipt of informed written consent executed by the subject of the biometric data.

### 1. *Amazon cannot offer alternative "facts" to dispute well-pled allegations.*

As an initial matter, Plaintiffs allege that Amazon fails to explicitly inform Voice ID enrollees that it is collecting biometric information or voiceprints from them, and that "a reasonable consumer would also not understand that the acoustic model" described by Amazon in the Alexa Terms "is either a biometric or a voiceprint." SCAC ¶ 85.A. This alone is sufficient to defeat Amazon's motion to dismiss. Amazon cannot obtain dismissal unless Plaintiffs' allegations—accepted as true—fail to "'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). For purposes of this motion, Amazon (and the Court) must accept as true that a reasonable consumer would not understand that the

"acoustic model" described by Amazon in the Alexa Terms is a biometric identifier. SCAC ¶ 85.A. As a result, Amazon also necessarily failed to inform that consumer "in writing that a biometric identifier . . . is being collected or stored," as BIPA requires. 740 ILCS 14/15(b)(1).

Everything else Amazon argues about this central point is merely an attempt to substitute its own version of the facts for the allegations in the SCAC. But that is improper on a motion to dismiss. A complaint that states a plausible set of facts cannot be properly dismissed "'merely because the court finds a different version more plausible.'" *In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d 931, 952 (N.D. Ill. 2018) (quoting *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012)). Even if it were *more* plausible (it is not, which Plaintiffs can prove at trial) that the term "acoustic model" is more accurate than "voiceprint," or that consumers would know that the service called "Voice ID" was "intended to . . . identify them by their voice," Mot. p. 12, dismissal would be improper. *See e.g. Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 45 (1st Cir. 2013) ("At these early stages in the litigation, the court has no substantiated basis in the record to credit a defendant's counterallegations.").

BIPA does not allow Amazon to require consumers to guess as to whether "acoustic model" is synonymous with "voiceprint" or "biometric identifier" (it is not, as Plaintiffs will prove at trial). Whether Plaintiffs' allegation in ¶ 85.A. ultimately proves meritorious (it will) is beside the point at this stage of the litigation—Amazon cannot properly move to dismiss on the basis that Plaintiffs' well-pleaded allegations are incorrect.

This alone demonstrates that Amazon's motion to dismiss should be denied because even if, assuming arguendo, all of Amazon's other § 15(b) arguments are correct, Plaintiffs plausibly allege that reasonable consumers were not informed that Amazon would capture their biometric data. That said, Amazon's motion fails for numerous other reasons.

**2.** ***Plaintiffs sufficiently allege that Amazon failed to obtain their informed written consent before it captured their biometric data.***

Informed consent in this case requires, at a minimum, affirmative communication of information adequate to explain the material risks and reasonable alternatives to providing their biometric identifiers to Amazon. *Cf.* Ill. S. Ct. R. Prof. Conduct 1.0(e). Amazon does not affirmatively communicate *any* information about the unique, biometric nature of Voice ID, let alone information that explains the "material risks and . . . alternatives." *Id.*

"Informed written consent" is not just another way of saying "assent" or "agreement." Biometric information is "biologically unique to the individual" and cannot be changed in the event that such information is compromised, so the Illinois General Assembly specifically drafted BIPA to protect biometric information by ensuring that biometric privacy rights are "properly honored and protected to begin with, before they are or can be compromised." *Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶¶ 35–36. The Seventh Circuit explained the importance of "informed written consent" in *Bryant v. Compass Grp. USA, Inc.*:

> As the Illinois Supreme Court recognized in *Rosenbach*, the informed-consent regime laid out in section 15(b) is the heart of BIPA. The text of the statute demonstrates that its purpose is to **ensure that consumers understand, before providing their biometric data**, how that information will be used, who will have access to it, and for how long it will be retained. The judgment of Illinois's General Assembly is that the sensitivity of biometric information and the risk of identity theft or other privacy or economic harm that may result from its dissemination, necessitates that people be given the opportunity to make informed choices about to whom and for what purpose they will relinquish control of that information.

958 F.3d 617, 626 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (June 30, 2020) (emphasis added).

Because the defendant in *Bryant* did not seek consent of any sort from Ms. Bryant, the Seventh Circuit did not address what exactly would be needed to satisfy Section 15(b)(3)'s requirement for "informed written consent." However, other contexts in which the phrase

"informed consent" is used are instructive. For example, the Illinois Rules of Professional Conduct define "informed consent" as "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." Ill. S. Ct. R. Prof. Conduct 1.0(e). "Informed consent" is also required in the context of medical procedures, where a medical provider is obligated to obtain a patient's informed consent to a procedure before operating. *See e.g. Taylor v. Cty. of Cook*, 2011 IL App (1st) 093085 ¶ 53 (before administering treatment, a provider must inform patient of "the diagnosis, the general nature of the contemplated procedure, the risks involved, the prospects of success, the prognosis if the procedure is not performed and alternative medical treatment.") (internal quotes omitted).

At absolute minimum, Plaintiffs have put Amazon on notice that it failed to obtain informed written consent per § 15(b), and support their § 15(b) claim with sufficient factual detail to allow the Court to draw the reasonable inference that Amazon is liable for the conduct alleged. *See Iqbal*, 556 U.S. at 678; *Carpenter*, 580 F. Supp. 3d at 514; *see e.g.* SCAC ¶¶ 77–93, 103–07, 170. This is all that is required at the pleading stage. Plaintiffs are confident that they will prove their claims at summary judgment and trial with the facts learned in discovery, but Plaintiffs need not prove their claims at the pleading stage.

   *a.*  *The Enrollment Screen does not inform users of biometric capture.*

BIPA makes clear that companies must inform consumers in no uncertain terms that they are collecting "biologically unique" data that, if compromised, puts consumers at "heightened risk for identity theft." 740 ILCS 14/5(c). This is not a situation where "close enough" is "good enough."

The following two pictures are exemplars of the content presented to an Alexa user on the Enrollment Screen where Amazon purportedly obtains Voice ID users' consent:

SCAC ¶ 78, Ex. A. This is the only place where Amazon even "arguably seeks the consent of the user" before it captures their voiceprint during the Voice ID enrollment process. SCAC ¶ 78. But Amazon presents no information whatsoever to Voice ID enrollees that Amazon collects or captures their "voiceprints" or any "biometric" data when it creates a Voice ID. Nor does Amazon make any mention at all that the voiceprint it collects is biometrically unique to the individual enrolling in Voice ID. Stating that "voice ID enables Alexa to learn your voice, recognize you when you speak to any of your Alexa devices, and provide enhanced personalization" is not sufficient to inform Plaintiffs that Amazon would build and store "biologically unique" voiceprints, and link the voiceprints to their Amazon accounts containing their credit card data, addresses, and other personal information—in fact, this language could mislead reasonable users to conclude it is not creating voiceprints. *See* SCAC ¶¶ 62, 167, 184.

Per BIPA, Amazon cannot require Plaintiffs and other consumers to draw speculative connections between phrases like "learn your voice" and "voiceprint," or "recognize you when you speak" and "biometric identifier." BIPA mandates that Amazon say the quiet part out loud, not rely on consumers who lack Amazon's technical expertise and insider knowledge about what it is really doing to connect the dots. *See Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 815–16 (N.D. Ill. 2022), *reconsideration denied,* (N.D. Ill. Oct. 11, 2022) (denying motion to dismiss where purported BIPA consent did not "disclose that Respondus would collect 'biometric identifiers' or 'biometric information' as defined in BIPA.").

Amazon argues that the Voice ID enrollment process satisfies BIPA's informed consent requirement because Amazon "accurately describe(s) the activity at issue." Mot. p. 11 (citing *Santana v. Take-Two Interactive Software, Inc.*, 717 F. App'x 12 (2d Cir. 2017)). Amazon's argument is misplaced. As described herein and throughout the SCAC, Amazon goes out of its way to *avoid* accurately describing the voiceprint collected by Voice ID as biometric, which creates conditions ripe for consumers to be misled. *See Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 883 (N.D. Ill. 2022) ("Consenting to Onfido's collection of a photograph is not the same as consenting to Onfido's collection of biometric data[.]") Also, the Second Circuit's decision in *Santana* is factually distinguishable and of questionable legal application in the Seventh Circuit.

In *Santana*, the Second Circuit affirmed the District Court's dismissal of a BIPA § 15(b) class action for lack of standing. *Santana*, 717 F. App'x at 15–17. Not only did the Seventh Circuit decline to follow the non-precedential holding of *Santana* in *Bryant*, 958 F.3d at 626, but Amazon does not argue a lack of standing in the instant case. Nonetheless, Amazon mistakenly relies on *Santana* for the proposition that its own disclosures satisfy BIPA. But the Second Circuit reversed the district court in that case for improperly dismissing the plaintiffs' claims under 12(b)(6) because the district court was without subject matter jurisdiction. *Santana*, 717 F. App'x at 17–18. Thus, Amazon cannot rely on *Santana* for that proposition.

Even if Amazon could rely on *Santana*, Amazon's argument would fail. In *Santana*, the enrollment screen stated in relevant part, "Your *face scan* will be visible to you and others you play with and may be recorded or screen captured during gameplay." *Santana*, 717 F. App'x at 14 (emphasis added). BIPA defines "biometric identifier" to include "a scan of [] face geometry." 740 ILCS 14/10. Based on this definition, the *Santana* court determined that "to the extent that Take-Two departed from BIPA's requirements, it only did so insofar as it omitted the

term, "geometry.'" *Santana*, 717 F. App'x at 15. But that is not the situation here. On the Voice

ID Enrollment Screen, Amazon does not just "depart" slightly from BIPA's requirements; it does

not use any variation at all of the terms "biometric identifier" or "voiceprint," as shown in the

images above. Accordingly, Plaintiffs sufficiently allege that Amazon failed to obtain their

informed written consent before capturing and storing their voiceprints.[1]

      *b.*      *The Alexa Terms of Use do not inform users of biometric capture.*

Things are little better for those Voice ID users who do manage to notice and click on the

tiny, non-underlined, non-bolded, blue-on-black hyperlinks[2] at the bottom of the Enrollment

Screen. After clicking on "Alexa Terms of Use," somewhere between the second and fourth

screen of full text (this naturally varies based on the screen size of the device used to enroll in

Voice ID, but in any case, *not* on the first screen), the user is presented with this:

> **1.4 Voice ID**. You can create a voice ID so Alexa can call you by name and do more to personalize your experience. When you create a voice ID, Alexa uses recordings of your voice to create an acoustic model of your voice characteristics and to update that model over time to improve Alexa's ability to recognize you. If Alexa recognizes your voice when you are using a third-party skill, that skill may receive a numeric identifier that allows it to distinguish you from others in your household to better personalize your experience. You can delete your voice ID or turn off personalization of third-party skills based on voice ID. Learn more about voice ID.

---

[1] In addition, users are not required to tap the barely noticeable hyperlinks on the Enrollment Screen to proceed with Voice ID enrollment, so this screen is all that most Voice ID users ever see before Amazon captures their voiceprints. *See* SCAC ¶¶ 69–70, 82. (▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨); *see also id.* at ¶¶ 79, 86 (Amazon made the design decision not to require users to click the hyperlinks for the TOUs and Alexa FAQs before it proceeded to capture users' voiceprints).

[2] Neither hyperlink directs the user to the portion of the multi-screen documents containing information relevant to Voice ID, thus requiring the users to scroll through numerous pages of small text to find information about Voice ID. *See e.g.* SCAC ¶ 88. Design decisions—like the format of hyperlinks, whether hyperlinks directed users to the relevant portion of the TOUs and FAQs, and whether and how to present Voice ID enrollees with BIPA-compliant language informing them that their biometrics were being captured ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨. *See e.g.* SCAC ¶¶ 69–70, 82, 93, 106.

SCAC ¶¶ 80–84, Ex. B. Yet again, Amazon fails to inform the Voice ID enrollee that it is capturing a "voiceprint" or "biometric" data, or that by processing the information that it is collecting, Amazon will generate a biometrically unique identifier of the enrollee. *Id.* at ¶ 84.

Additionally, *Santana* is no help to Amazon's Terms. In contrast to *Santana*, Amazon did not merely omit "identifier" from "biometric identifier" or make some other small departure from the statutory language. Amazon made up an entirely different term not at all present in BIPA ("acoustic model") that actually means something completely different. By Amazon's logic, Amazon could substitute any less scary and inaccurate term it prefers to the words used in BIPA, leaving reasonable users in the dark. For BIPA to have any meaning, Amazon must accurately inform users of its conduct related to biometrics, not make up terms that it prefers, in order to ███████ during the enrollment process and confuse, or perhaps even deceive, users into enrolling. *See* 740 ILCS § 14/15(b)(1)–(3); *Bryant*, 958 F.3d at 626 (users must be "given the opportunity to make informed choices about to whom and for what purpose they will relinquish control of" their biometric data); *Sosa*, 600 F. Supp. 3d at 884 (it is "not too onerous to require a company" to inform users of "the fact that biometric data is being collected. . . ."); SCAC ¶¶ 103–07. As alleged, the TOUs fail the *Bryant* test utterly for Section 15(b)(1): they do not inform the user that a "biometric identifier or biometric information" is being collected, nor do they say anything about how the voiceprint captured by Voice ID is biologically unique to each individual. *E.g.*, SCAC ¶ 85.A.

In addition, the Alexa Terms utterly fail to inform users of the specific "length of term for which" a voiceprint will be collected, stored, and used, as required by Section 15(b)(2). SCAC ¶ 85.B. The Alexa Terms contain no term or time information at all. *See id.* at ¶ 84. Amazon argues that it nevertheless satisfies Section 15(b)(2) because the FAQs supposedly inform the

user that if their "voice ID is not recognized for 18 months, we will automatically delete the acoustic model for your voice." Mot. pp. 13–14. First, burying the retention schedule in the FAQs cannot be said to satisfy Section 15(b)'s purpose "to ensure that consumers understand, before providing their biometric data, how that information will be used, who will have access to it, and for how long it will be retained." *Bryant*, 958 F.3d at 626. Second, Amazon's argument improperly conflates its obligation under § 15(a) to "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers . . . ." 740 ILCS 14/15(a), with its obligation to obtain informed written consent of how long a specific voiceprint is being collected, stored, and used. There is a difference between a retention schedule posted on a website stating what happens if a user stops interacting with Alexa after 18 months, and Amazon obtaining informed written consent from each user after adequately notifying him or her (but before capturing the voiceprint) of the length of term for which Amazon will collect, use, and store each of his/her voiceprints. Amazon's failure to inform users of this length of term alone violates the requirements of §15(b)(2).

Next, Amazon argues that the TOUs satisfy BIPA's requirement that it inform Voice ID users of the "specific purpose" for which Amazon collects their biometric data. Mot. p. 13. Plaintiffs allege that Amazon fails to disclose the "myriad" ways that Amazon may be using Voice ID beyond merely "recognizing you," such as using Voice ID ▨▨▨▨▨▨▨▨▨▨ ▨▨▨▨▨▨▨▨▨▨▨▨▨. SCAC ¶¶ 85.B., 122–128. Amazon argues that these allegations are nothing more than "particular ways to personalize the user's experience or improve Alexa's ability to recognize the speaker." Mot. p. 13. Amazon is yet again attempting to substitute its version of the facts for those that Plaintiffs alleged. Plaintiffs plausibly allege that Amazon collects voiceprints to ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨



SCAC ¶ 19. Plaintiffs also allege that Amazon uses ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.* at ¶ 124. ▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

*Id.* at ¶¶ 122–24. These uses go far beyond the barebones disclosure that Amazon merely uses Voice ID to personalize an Alexa user's experience or improve Alexa's ability to recognize a speaker. Plaintiffs have thus sufficiently alleged that Amazon fails to comply with § 15(b)(2).

Because Amazon fails to provide the information required by §§ 15(b)(1) and 15(b)(2), its purported disclosures necessarily fail § 15(b)(3)'s requirement that Amazon obtain "*informed* written consent" executed by each Voice ID user. In short, Plaintiffs set forth, through detailed allegations in the SCAC, that Amazon purposely designed the Voice ID enrollment process to *avoid* presenting Alexa users with the sort of information that these users would need in order to provide "informed written consent" for Amazon to capture their voiceprints. Amazon's inadequate disclosures deprive Illinois Alexa users the "ability to give the *informed* consent section 15(b) mandates." *Bryant*, 958 F.3d at 626 (emphasis in original).

> c.  The Alexa FAQs do not inform users of biometric capture.

The Alexa FAQs contain information similar to that contained in the TOUs, including use of the term "acoustic model" and purposeful avoidance of the terms "voiceprint" or "biometric" data. SCAC ¶ 90, Ex. C. pp. 15–16. This information is buried in the twentieth "question" of a document that stretches for *sixty-one* screens on an iPhone 14. SCAC Ex. C. The Alexa FAQs contain no link at the top to jump to the paragraph on Voice ID. *Id.* at ¶ 88. And the "Learn more" hyperlink on the Enrollment Screen does not take users directly to the Voice ID

paragraph. *Id.* And even if the FAQs were somehow relevant to consent (they are not),[3] the language applicable to Voice ID fails for the same reasons as the Alexa Terms (see above).

Simply put, at this stage Plaintiffs have plausibly alleged that Amazon failed to obtain BIPA-compliant, informed written consent. Even in the presence of a valid contract between the Plaintiffs and Amazon—the existence of which Plaintiffs do not concede and the Court should not infer on a motion to dismiss (*see* Section IV.A.3. below)—whether Amazon obtained the Plaintiffs' informed written consent before capturing their biometric data is a classic question of fact that is inappropriate for determination on a motion to dismiss. *Cf. Hansbrough v. Kosyak*, 141 Ill. App. 3d 538, 551 (1986) (In medical negligence cases, whether "a signed form constitutes effective consent to treatment has been held to present a proper question of fact for the jury."); *Ramos v. Pyati*, 179 Ill. App. 3d 214, 225 (1st Dist. 1989) (whether a patient provided informed consent "is determined by an objective standard, what a prudent person in plaintiff's position would have decided if adequately informed.") (internal quotes omitted).

Moreover, Plaintiffs specifically allege in the SCAC that the language used by Amazon is inaccurate and insufficient to inform Plaintiffs and Voice ID enrollees as to Amazon's actions regarding their voiceprints. SCAC ¶¶ 85, 103–07. Nothing Amazon argues changes the well-pleaded allegations in the SCAC. Plaintiffs have met their pleading burden.

> ### 3. *Amazon cannot demonstrate—as a matter of law—that Alexa users agreed to the TOUs.*

All of Amazon's arguments assume that Plaintiffs agreed to the Alexa Terms when Plaintiffs enrolled in Voice ID. But the well-pleaded facts and the cases Amazon cites in its

---

[3] The FAQs are not relevant to consent because the Enrollment Screen states only that Voice ID users agree to the Alexa Terms of Use, not also to the FAQs. Plaintiffs included the FAQs in the SCAC to show just how buried and unhelpful Amazon's Voice ID FAQ is, not because Plaintiffs even purportedly assented to the language in it.

motion do not support this assumption.

While the Seventh Circuit has noted that an electronic click "can suffice to signify the acceptance of a contract," parties to contracts purportedly agreed to on the Internet are not necessarily presumed to have notice of a contract's terms. *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033–35 (7th Cir. 2016) (reviewing cases). For example, where the method of indicating assent to an agreement and the terms of that agreement are not on the same page, courts "have found links to terms and conditions insufficiently conspicuous where the 'characteristics of the hyperlink raise concerns as to whether a reasonable user' would recognize the text as a hyperlink." *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873, 885 (N.D. Ill. 2020) (quoting *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 63 (1st Cir. 2018)); *see also Sguoros*, 817 F.3d at 1036 (linked contract terms should be available via "clearly labeled" hyperlink in order to be binding). And whether a clickwrap agreement is sufficient to create a valid contract is "a fact-intensive inquiry . . . ." *Sgouros*, 817 F.3d at 1034–35.

In *Wilson*, this district found hyperlinks to terms of use on a Redbox sign-in screen not reasonably conspicuous where the hyperlinks were in white text on a black background and surrounded by disclosures in gray text. 448 F. Supp. 3d at 885. The court found that merely using "a different color for the hyperlink from the surrounding text" was insufficient to make the hyperlink reasonably conspicuous. *Id.* "There must be some other distinguishing characteristic 'to inform consumers that there was in fact a hyperlink that should be clicked and that a contract should be reviewed, such as words to that effect, underlining, bolding, capitalization, italicization, or large font.'" *Id.* (quoting *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 467 (S.D.N.Y. 2017)). Thus, the court found that Redbox failed to give the plaintiff constructive notice of Redbox's terms of use. *Id.*

The disclosures and hyperlinks on the Redbox sign-in screen that the court found to be not reasonably conspicuous in *Wilson* are almost identical to the disclosures and hyperlinks here. Both the Redbox sign-in screen and the Enrollment Screen have black backgrounds; both have disclosures in tiny grey text near the bottom of their respective screens; and, both have terms of use hyperlinks within the disclosure text that are only distinguishable from the surrounding text by color. *Cf., Wilson*, 448 F. Supp. 3d at 879,[4] *with* SCAC Ex. A. The result in *Wilson* should apply with equal force here. The tiny hyperlinks to the Alexa Terms on the Enrollment Screen have no distinguishing characteristic other than their blue color—no underlining, no bolding, no capitalization, no larger font. As in *Wilson*, the Court should find that the Plaintiffs were not on constructive notice of the Alexa Terms.

**B.      Bloom Stebbins alleges she had her voiceprint captured without consent.**

Plaintiff Julia Bloom Stebbins thoroughly alleges exactly how Amazon captures her voiceprint ██████████████████████████████████, despite Amazon's argument to the contrary. SCAC, ¶¶ 67–8, 97–102. As these allegations make clear, Amazon can capture voiceprints ██████████████████████████████████████████ ██████████████████. *Id*., ¶ 98. Amazon is correct that Bloom Stebbins does not allege that Amazon created "biometric information," as defined by BIPA. But such allegations are not required. Plaintiffs allege that Amazon captured the "biometric identifier" of Bloom Stebbins, which is sufficient to create liability under BIPA. *See id.*, ¶ 151.

Finally, Amazon understandably relies on *Zellmer v. Facebook, Inc.*, No. 3:18-cv-1880, 2022 WL 976981, at *5 (N.D. Cal. Mar. 31, 2022) for the proposition that companies like Amazon must have some connection to users because it is not possible to identify strangers. But

---

[4] An image of the sign-in screen at issue in Wilson can also be found on page 4 of the court's Memorandum Opinion and Order, case No. 19-cv-1993, ECF 32 (N.D. Ill. March 25, 2020).

*Zellmer* is not binding, was wrongly decided, and misses the point of BIPA. First, BIPA expressly differentiates between a "customer" and a "person"—making clear that entities like Amazon must comply with BIPA for both customers and also for persons (i.e., non-customers). 740 ILCS 14/15(b). *Zellmer* improperly ignores that differentiation. Courts "cannot rewrite a statute to create new elements or limitations not included by the legislature." *Cothron v. White Castle Sys., Inc.*, 2023 IL 128004, ¶ 39, *as modified on denial of reh'g* (July 18, 2023) (citing *Zahn v. North American Power & Gas, LLC*, 2016 IL 120526, ¶ 15). Second, *Zellmer* asks the question: what can companies reasonably do to comply with BIPA as relating to non-customers? The answer is not stated in *Zellmer*, but is obvious: design biometric systems to not capture biometrics unless first obtaining consent. In this case, Amazon did not need to design its . Amazon needlessly made a choice to design its Voice ID system in a way that violates BIPA.

**C.**     **Plaintiffs plausibly plead that Amazon violated § 15(c).**

Plaintiffs do not merely parrot the statutory language in § 15(c), but specifically allege that Amazon sells their biometric information and "keyword identifiers" to advertisers and content providers. SCAC, ¶ 188. Plaintiffs need not, at this stage, nor could they, specify the advertisers to which Amazon sold their biometric information. From Plaintiffs' allegations, the Court may reasonably infer that Amazon is liable for violating § 15(c).

**D.**     **Plaintiffs plausibly plead that Amazon violated § 15(d).**

Plaintiffs sufficiently and plausibly plead that Amazon shared their biometric information with third-parties, including contractors and developers of "Skills." Amazon argues that Plaintiffs need to provide more detail in order to survive the pleading stage, but Amazon is

17

incorrect. "Plaintiffs need not specify the who, what, when, where, and how of the dissemination to meet Rule 8's pleading requirements. Plaintiffs' allegations sufficiently suggest that [defendant] used third-party vendors and thus disseminated Plaintiffs' biometric data to them, which is all that they must do to proceed to discovery on this claim." *Johnson v. NCR Corp.*, No. 22-cv-3061, 2023 WL 1779774, at *5 (N.D. Ill. Feb. 6, 2023) (internal citation omitted).

Amazon also argues that Plaintiffs cannot amend to truthfully state that Plaintiffs' data was disclosed to third parties. Amazon is demonstrably incorrect on this point. At the time Plaintiffs moved for leave to file the SCAC, Amazon had not yet produced Plaintiff-specific discovery. But it has now, and Plaintiffs are confident they can prove their § 15(d) claims at trial.

Moreover, because Amazon failed to inform Plaintiffs that it would collect and store their biometric data, they "could not possibly have consented to the further *disclosure* of that data to third parties." *Patterson*, 593 F. Supp. 3d at 817. Thus, Plaintiffs have stated a claim for a violation of section 15(d).

## V.     CONCLUSION

For all of the reasons described above, Plaintiffs respectfully request that the Court uphold BIPA and the Illinois Supreme Court's strong mandate in favor of biometric privacy rights, and deny Amazon's motion to dismiss Plaintiffs' SCAC.


Respectfully Submitted,

August 31, 2023                          Plaintiffs, each individually, and on behalf of all
                                         similarly situated individuals,


                                         s/ Michael Aschenbrener
                                         One of their attorneys

*Interim Class Counsel*

Michael Aschenbrener (6292306) (masch@kamberlaw.com)
KamberLaw, LLC
220 N Green St
Chicago, IL 60607
Telephone: (212) 920-3072
Facsimile: (212) 202-6364

Scott A. Kamber (*pro hac vice*) (skamber@kamberlaw.com)
KamberLaw, LLC
201 N. Milwaukee St., Suite 200
Denver, CO 80206
Telephone: 303-222-9008

Deborah Kravitz (*pro hac vice*) (dkravitz@kamberlaw.com)
KamberLaw, LLP
401 Center St., Suite 111
Healdsburg, CA 95448
Telephone: 707-820-4247

*Attorneys for Plaintiffs and the Putative Class*

Gerald J. Bekkerman (gbekkerman@tpmblegal.com)
Bradley N. Pollock (bpollock@tpmblegal.com)
Sean P. Murray (smurray@tpmblegal.com)
Marc A. Taxman (mtaxman@tpmblegal.com)
Taxman, Pollock, Murray & Bekkerman, LLC
225 W. Wacker Drive, Suite 1750
Chicago, IL 60606
Tel: 312-586-1700
Fax: 312-586-1701

James Frickleton (jimf@bflawfirm.com)
Bartimus Frickleton Robertson Rader
4000 West 114th St, Suite 310
Leawood, KS 66211
913-266-2300

Thomas P. Rosenfeld (tom@ghalaw.com)
Kevin P. Green (kevin@ghalaw.com)
Goldenberg Heller & Antognoli, P.C.
2227 South State Route 157
Edwardsville, IL 62025
(618) 656-5150

Brandon M. Wise (bwise@prwlegal.com)
Peiffer Wolf Carr Kane & Conway, LLP
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
314-833-4825

Adam C. York (6294143) (ayork@kamberlaw.com)
KamberLaw LLC
220 N Green St
Chicago, IL 60607
Telephone: (212) 920-3072
Facsimile: (212) 202-6364