## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| BENNETT WILCOSKY, *et al.*, each individually, and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>    v.<br><br>AMAZON.COM, INC. and AMAZON.COM SERVICES, INC.,<br><br>               Defendants. | Case No. 1:19-cv-05061<br><br>Honorable Franklin U. Valderrama |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

**I.     INTRODUCTION**

Amazon's motion explains that Plaintiffs' Section 15(b) claim should be dismissed because the SAC and its exhibits demonstrate that Amazon provided BIPA-compliant disclosures, which Plaintiffs expressly accepted before creating a Voice ID to enable their Alexa devices to recognize their voice. Before creating a Voice ID, Plaintiffs were informed that it "enables Alexa to learn your voice" and "recognize you when you speak." Plaintiffs then clicked a button labeled "Agree and Continue," by which they (i) "authorize[d] the creation, use, improvement and storage of [their] [V]oice ID," and (ii) agreed to the Alexa Terms of Use, which were presented via a blue hyperlink and further explained that Voice ID would "create an acoustic model of [their] voice characteristics." Plaintiffs then spoke a series of training phrases to their Alexa device to create the acoustic model of their voice characteristics. After this process was complete, Plaintiffs continued to use their Voice IDs for years, even after instituting this action.

Plaintiffs try to side-step these facts by arguing that the Court must accept as true their conclusory *legal allegations* that Amazon failed to obtain "informed written consent" because a "reasonable consumer" would find Amazon's disclosure deceptive. But this legal conclusion is no substitute for well-pleaded facts and must be disregarded, especially given this legal conclusion is inconsistent with the SAC's exhibits showing Amazon's actual disclosures. The disclosures attached to the SAC demonstrate that Amazon obtained BIPA-complaint consent.

Tacitly admitting that the Alexa Terms of Use contain BIPA-compliant disclosures, Plaintiffs try to avoid their agreement to those Terms. Plaintiffs quibble about the style of the font disclosing that "By tapping 'Agree and Continue'", they were "agree[ing] to the Alexa Terms of Use." But this disclosure (including the commonly used blue text hyperlink) was conspicuously displayed directly above the button that Plaintiffs clicked to confirm their consent. The SAC does

not allege that Plaintiffs *themselves* did not understand that they were agreeing to the Terms. Nor does the SAC allege that Plaintiffs did not understand they were registering for voice identification technology. Plaintiffs' attempt to avoid their agreement rests on after-the-fact complaints about the formatting or length of Amazon's disclosures. But the law is well-established that processes like that here provide sufficient notice to form binding agreements. Plaintiffs' willful ignorance or unreasonable, subjective understanding is not grounds to void their affirmative consent.

Plaintiffs' argument that Amazon's disclosures were insufficient because they did not include the words "voiceprint" or "biometric identifier" fares no better. BIPA does not mandate specific words in a disclosure, much less legalese or technical jargon. Instead, the law favors common, easy-to-understand language in consumer disclosures. Here, Amazon told consumers that, if they "set up [V]oice ID," Alexa would "create an acoustic model of your voice characteristics" and "learn your voice" to "recognize you when you speak." This is precisely what the Voice ID feature did (as the SAC itself alleges). Plaintiffs' conclusory allegation that the phrase "acoustic model" is somehow inaccurate is belied by the SAC's factual allegations, which make clear that acoustic modeling is exactly how Voice ID works. In any event, Plaintiffs were each told in plain, easy to understand terms that they would be creating a "[V]oice ID" to "learn your voice" and "recognize you when you speak." Each Plaintiff then went through the process of training Alexa to understand their voice by stating a series of specific training phrases. Having done so, it is wholly implausible for Plaintiffs to now contend that they did not consent to the collection of their "voiceprint" when they created a Voice ID.

The Court should also dismiss the Section 15(b) claim of Plaintiff Julia Bloom Stebbins, who claims she never registered for Voice ID. She alleges that Amazon was required to obtain her consent before analyzing her voice when she spoke to an Alexa device in the home of her brother-

in-law, a registered Voice ID user. But it would be impossible for Amazon to obtain consent from visitors and other non-registered users who are strangers to Amazon. And requiring consent from such strangers before comparing their voice to the device's registered Voice IDs would effectively ban all voice-recognition technology, which is not BIPA's intent. For precisely this reason, courts have dismissed similar non-registered-user claims, and this Court should do the same.

Finally, Plaintiffs' half-hearted efforts to save their Section 15(c) and (d) claims fall woefully short. Plaintiffs fail to refute any of Amazon's arguments. The SAC essentially parrots BIPA's statutory language without including well-pleaded facts necessary to plausibly state a claim. The SAC should therefore be dismissed in its entirety and with prejudice.

## II. THE SECTION 15(b) CLAIM SHOULD BE DISMISSED.

### A. The SAC Demonstrates That Amazon Provided Adequate Disclosures.

Amazon's motion explains that Plaintiffs' Section 15(b) claim fails because Amazon provided BIPA-compliant disclosures. *See* Mot. at 10-14. Plaintiffs erroneously argue that this cannot be determined from the SAC. It can because the adequacy of Amazon's disclosures is evident from the SAC's exhibits. Where, as here, "a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim." *Thompson v. Ill. Dep't of Prof. Reg.*, 300 F.3d 750, 754 (7th Cir. 2002). "[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Drobny v. JPMorgan Chase, N.A.*, 929 F.Supp.2d 839, 849 (N.D. Ill. 2013). Moreover, the Court can decide now, as a matter of law, that the disclosures in the SAC's exhibits were adequate to comply with BIPA because the adequacy is evaluated using an ***objective*** (not subjective) standard. *See, e.g.*, *Pettye v. Santander Consumer, USA, Inc.*, No. 15 C 7669, 2016 WL 704840, at *4 (N.D. Ill. Feb. 23, 2016) (granting motion to

dismiss because exhibit to complaint showed statutorily compliant disclosures based on "objective, reasonable person approach").

Here, the SAC's Exhibits A-C contain disclosures that the SAC admits were provided to Plaintiffs. *See* SAC ¶¶ 78, 80-84, 86-90. For example, before Plaintiffs created a Voice ID, Amazon informed them that Voice ID "enables Alexa to learn your voice" and "recognize you when you speak." SAC Ex. A. Amazon also informed Plaintiffs that by "By tapping 'Agree and Continue', you agree to the Alexa Terms of Use and authorize the creation, use, improvement and storage of your voice ID. Learn more." *Id.* Plaintiffs tapped "AGREE AND CONTINUE," thereby agreeing to the Terms of Use, which explained that "[w]hen you create a voice ID, Alexa uses recordings of your voice to create an acoustic model of your voice characteristics." SAC Ex. B.

These disclosures are consistent with the SAC's factual allegations regarding how Voice ID worked. For example, the SAC alleges that Plaintiff "Gunderson's Voice ID is used to identify him every time he . . . begins a voice interaction with Alexa." SAC ¶ 138. Consistent with these allegations, Amazon told Plaintiffs that Voice ID would "create an acoustic model of your voice characteristics" and "learn your voice" to "recognize you when you speak." Thus, this case is distinguishable from cases where courts found disclosures inadequate because they did not disclose the conduct alleged in the complaint. *See* Opp. at 8-9.

Further, Amazon's motion explains that its disclosures (attached to the SAC) contain information that the SAC erroneously alleges Amazon failed to disclose. Mot. at 10-14. And, again, "exhibit[s] trump[] the allegations." *Drobny*, 929 F. Supp. 2d at 849. For example, Plaintiffs allege that Amazon failed to disclose that it uses Voice ID to improve users' shopping experience and train artificial intelligence to improve Voice ID. But these are covered by Amazon's disclosure that Voice ID was used "to personalize your experience" and "to improve Alexa's ability to

recognize you." SAC Ex. C at 15. Amazon explained the "purpose," which is what BIPA requires. *See* 740 ILCS 14/15(b)(2). Nothing in BIPA mandates unwieldy, hyper-specific disclosures that describe the ins-and-outs of technology or all the potential ways that the data could be used to personalize the user experience or improve the product.

Plaintiffs also argue that Amazon failed to disclose how long it would store Voice ID data. Again, Plaintiffs are wrong. Amazon disclosed that if "voice ID is not recognized for 18 months, we will automatically delete the acoustic model for your voice." SAC, Ex. C at 15-16. Amazon also informed users that they could delete their data at any time. *Id.* The FAQ containing this information is displayed by clicking the "Learn More" hyperlink appearing in both the initial enrollment screen and in the Terms of Use. *See* SAC Exs. A and B. This complies with BIPA, as other courts have recognized. *See* Mot. Ex. 2 (*Hogan v. Amazon.com, Inc.*, No. 21 CH 02330, at 4-6 (Cir. Ct. Cook Cty, Ill. Dec. 6, 2022) (holding Amazon's disclosure in FAQ satisfied BIPA)).

In sum, an objective analysis of Amazon's disclosures attached to the SAC shows they were BIPA-compliant. Amazon told Plaintiffs that Voice ID would "create an acoustic model of your voice characteristics" and "learn your voice" to "recognize you when you speak." Any reasonable person would understand that they were consenting to voice identification technology when they created a Voice ID to enable Alexa to recognize their voice.

### B. The SAC Demonstrates That Plaintiffs Provided Written Consent.

After receiving the disclosures, Plaintiffs tapped the "Agree and Continue" button (*see* SAC Ex. A), thereby providing their written consent to the Terms, including all disclosures therein. As previously explained, it is well-established that this is a valid means of expressing consent. *See* Mot. at 8-9 (citing cases). Plaintiffs do not deny that they tapped "Agree and Continue," nor could they, as all users were required to provide consent before creating a Voice ID. Instead, Plaintiffs

argue they are not bound by the Terms because they were not required to click on the hyperlink to review the Terms before agreeing to them. SAC ¶ 79. But "the fact that plaintiffs may not have clicked on the hyperlink or read through the terms of service before signing up . . . does not preclude the formation of a contract or mean that [a defendant] acted deceptively." *Ambrosius v. Chicago Athletic Clubs, LLC*, 203 N.E.3d 239, 251-52 (Ill. App. 2021).

Plaintiffs also try to avoid their agreement to the Terms by quibbling about the style of the font disclosing that "By tapping 'Agree and Continue'", they were "agree[ing] to the Alexa Terms of Use." But this disclosure (including the commonly used blue text hyperlink), was conspicuously displayed directly above the button that Plaintiffs tapped demonstrating their consent. *See* SAC Ex. A. Tellingly, the SAC does not allege that Plaintiffs themselves were unable to read the font or failed to recognize what they were agreeing to when they tapped "Agree and Continue." And, again, such agreements are commonly upheld regardless of whether Plaintiffs took the time to click the link and read what they were agreeing to. *See* Mot. at 8-9.

Plaintiffs also rely on inapposite authorities. For example, in *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033–35 (7th Cir. 2016), the user was not bound by terms of use because the page did not disclose that clicking the button constituted acceptance of terms of use. In contrast, here, users were expressly informed "By tapping 'Agree and Continue' you agree to the Alexa Terms of Use," with a hyperlink to the Terms appearing ***directly above*** the "Agree and Continue" button that Plaintiffs clicked. Mot. at 5; SAC Ex. A. *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873, 885 (N.D. Ill. 2020), is also distinguishable. There, the hyperlink to the terms was not "reasonably conspicuous" because it was not in a distinguishing color and was not adjacent to the acceptance button. *Id.* at 883. In contrast, here, the hyperlink to the Terms of Use appeared directly above the acceptance button in a blue contrasting color, which is "a color commonly

known to denote a hyperlink." *Emmanuel v. Handy Techs., Inc.*, 442 F.Supp.3d 385, 393 (D. Mass. 2020). The Court should therefore find that Plaintiffs consented to the Alexa Terms of Use, just as other courts have done when considering essentially the same consent flow and same Terms. *See Garner v. Amazon.com, Inc.*, 603 F.Supp.3d 985, 998-99 (W.D. Wash. 2022) (holding users consented to Amazon's terms and conditions where screens "notif[ied] the user that by continuing, he or she agrees to Amazon's Conditions of Use and Privacy Notice, which are made available via hyperlink," and the users proceeded to click "Continue").

### C. BIPA Does Not Mandate Particular Language in Disclosures.

Plaintiffs fault Amazon's disclosures for not using the words "voiceprint" or "biometrics" or "biologically unique" data. But Plaintiffs cite no authority—and Amazon is aware of none—requiring an entity to use these particular words in its disclosure to comply with BIPA.[1] In fact, Plaintiffs concede that their cited authority does not "address what exactly would be needed to satisfy Section 15(b)(3)'s requirement for 'informed written consent.'" Opp. at 6 (citing *Bryant v. Compass Group USA, Inc.*, 958 F.3d 617 (7th Cir. 2020)).

In *Santana v. Take-Two Interactive Software, Inc.*, 717 F. App'x 12, 15-16 (2d Cir. 2017), the court rejected the argument that a BIPA disclosure was required to contain the statutory phrase "scan of face geometry." While that court ultimately dismissed the plaintiff's claims for lack of standing, the opinion remains persuasive authority for the commonsense proposition that BIPA does not mandate particular language in disclosures. Plaintiffs argue the disclosure in *Santana* departed only "slightly" from BIPA. But that merely reinforces that BIPA does not mandate particular disclosure language. In any event, Amazon uses the term "***voice ID***," which departs only

---

[1] The one case Plaintiffs cite says only that an entity must disclose that it is collecting a biometric identifier or biometric information; it does not say that the entity must use any specific words in its disclosure. *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 815–16 (N.D. Ill. 2022).

slightly from the term "voiceprint," and "ID" is commonly understood to mean "identification," which departs only slightly from the term "identifier." Plaintiffs' argument that Amazon "did not use any variation at all" of the statutory language is thus wrong, as disclosing the collection of "voice identification" data is not materially different than disclosing the collection of a "voiceprint" or a voice "identifier."

Plaintiffs also provide no credible explanation as to why the disclosures should have said "voiceprint" or "biometric identifier" instead of telling a user in plain language that "[V]oice ID" creates a "model of your voice characteristics" to "recognize you when you speak." Similarly, Plaintiffs suggest that Amazon should have said: (1) "voiceprint" rather than "model of your voice characteristics"; and (2) "biometric identifier" rather than "recognize you when you speak." But BIPA does not require companies to use complicated terminology to describe the information being collected, as opposed to more common, easy-to-understand language. Indeed, the law generally **disfavors** legalese or technical jargon in consumer disclosures. *See Milbourne v. JRK Residential Am., LLC,* No. 3:12cv861, 2016 WL 1071570, at *8-*9 (E.D. Va. Mar. 15, 2016) (rejecting argument that statute mandating consumer disclosures required using statutory language in the actual disclosures provided to consumers, noting that "'understandable' disclosures should 'use clear language and syntax and avoid legalese or technical jargon'").

*Santana* also explains that the process by which biometric information is captured is relevant to consent. *See id.* at 16-17 (noting that user had to place face near camera and turn head left and right, so a "reasonable person" would understand the technology was scanning their face). Here, the Voice ID registration process required users to speak a series of pre-set training phrases in close proximity to their Alexa device to enable the system to build a model of the user's voice characteristics. *See* SAC ¶ 75 & n.7. Any reasonable person doing this would understand that

Alexa was gathering information regarding their voice to enable the system to identify their voice, especially because they had just been informed in writing that Alexa would "create an acoustic model of your voice characteristics" and "learn your voice" to "recognize you when you speak."

**D. Plaintiffs Erroneously Analogize to Lawyer-Client and Doctor-Patient Relationships.**

As noted above, Plaintiffs concede that their cited authority does not "address what exactly would be needed to satisfy Section 15(b)(3)'s requirement for 'informed written consent.'" Opp. at 6 (citing *Bryant*, 958 F.3d 617). Nevertheless, Plaintiffs jump to arguing that BIPA imposes disclosure requirements akin to those governing fiduciary relationships between lawyers and clients or doctors and patients. Plaintiffs cite no authority to support this absurd position, and there is none for good reason. Doctor-patient and lawyer-client relationships are unlike the consumer product business-customer relationship at issue here. Among other distinctions, doctors and lawyers have intimate, often one-on-one patient or client interaction, and generally charge significant sums of money for services. Further, doctors and lawyers are fiduciaries to their patients and clients, respectively, and so owe different obligations than usual counterparties to a business transaction. *See San Roman v. Children's Heart Ctr., Ltd*., 954 N.E.2d 217, 222 (Ill. App. 2010) ("[A] fiduciary relationship arises between doctor and patient . . . Essentially, this means that a physician must place the interests and well-being of the patient above his or her own interest.") (citations omitted); *Maksym v. Loesch*, 937 F.2d 1237, 1241 (7th Cir. 1991) ("[A] lawyer is a fiduciary of his client . . . [and] fiduciaries are held to a higher standard than other contracting parties."). Thus, Plaintiffs' analogies to attorney-client and doctor-patient relationships are inapt. Further, the Court should not adopt attorney-client or doctor-patient disclosure requirements in the BIPA-context because the Illinois Supreme Court has emphasized that compliance with BIPA "should not be difficult." *Rosenbach v. Six Flags Entm't Corp.,* 129 N.E.3d 1197, 1207 (Ill. 2019).

In any event, Plaintiffs fail to explain how, if Amazon were a doctor or lawyer, its disclosure to a reasonable consumer would have been any different. Doctors are not required to use medical jargon and lawyers are not required to use legalese in order to provide effective disclosures to their patients and clients, respectively.

E. **Plaintiffs Do Not Allege That They Were Deceived.**

While Plaintiffs now nitpick Amazon's disclosures, it is notable that the SAC does not allege that any Plaintiff could not read the disclosures or failed to understand that by creating a Voice ID they were authorizing Amazon's technology to learn their voice to recognize them when they speak. Plaintiffs also created a Voice ID and/or continued to use the Voice ID feature years after this action was initiated, thus undermining any notion that they were deceived or misled by Amazon. For example, Plaintiff Gunderson chose to create a Voice ID on October 25, 2022, *years after becoming a named plaintiff in this action*, in which Plaintiffs have alleged from the outset that Amazon collected their biometric identifiers through Alexa. *See* SAC ¶ 136. Similarly, Plaintiff Block created a Voice ID on January 13, 2022—*again, years after this action was initiated*. *See* SAC ¶ 130. Jason Stebbins—the third and final named plaintiff who allegedly registered for Voice ID—continues using Voice ID even today, long after the action was filed. *See* SAC ¶¶ 147-148. Further, the SAC does not allege that any of the named Plaintiffs have ever requested that Amazon delete their Voice ID data, despite being informed that they may choose to do so at any time. *See* SAC Ex. C at 15-16 ("You can delete your voice ID . . . in the Alexa App."). Given this timeline, it is wholly implausible that Plaintiffs did not understand and consent to Amazon collecting their "voiceprints" when they enrolled in Voice ID.

F. **Plaintiffs' Conclusory Allegations Are Not Entitled to Presumption of Truth.**

In an attempt to save their meritless claim, Plaintiffs argue that their legal conclusions and other conclusory allegations should be presumed true. Plaintiffs are wrong. *See McCauley v. City*

*of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("[W]e accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth.").

First, Plaintiffs argue in conclusory fashion that the phrase "acoustic model of your voice characteristics" in Amazon's disclosure is inaccurate. Neither the SAC nor Plaintiffs' opposition state facts explaining why the phrase is inaccurate. While Plaintiffs argue additional language should have been included (e.g., "voiceprint" rather than "acoustic model"), this is not required, as discussed above. In any event, Plaintiffs fail to explain how there is anything inconsistent between the terms. This is likely because there is nothing false or misleading regarding the phrase "acoustic model" in this context. Indeed, "acoustic model" is a standard term pertaining to voice identification technology. *See, e.g., Nuance Commc'ns, Inc. v. Mmodal LLC*, No. CV 17-1484 (MN), 2021 WL 2593334, at *3 (D. Del. June 24, 2021) (discussing "acoustic model" used for speaker identification technology). Plaintiffs' conclusory argument, without any factual support, that the term "acoustic model" is somehow inaccurate is not entitled to the presumption of truth and should be disregarded.

Second, Plaintiffs' assertion that a "reasonable consumer" would find Amazon's disclosure deceptive is "a legal conclusion" that the Court "does not need to accept as true." *Sinatro v. Mrs. Gooch's Natural Food Markets, Inc.*, No. 22-cv-03603, 2023 WL 2324291, at *12 (N.D. Cal. Feb. 16, 2023); *Harris v. McDonalds Corp*, No. 20-cv-06533, 2021 WL 2172833, at *2 (N.D. Cal. Mar. 24, 2021) (allegation about what "reasonable consumers" would understand is a legal conclusion even if "couched as an allegation of fact"); *Bell v. Annie's, Inc.*, --- F. Supp. 3d ----, No. 4:22-cv-01367, 2023 WL 3568623, at *4 (E.D. Mo. May 18, 2023) (rejecting complaint's "conclusory allegations" regarding how "average consumers" would behave because "courts need not accept

as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts") (citation omitted). This is particularly so here, where no Plaintiff alleges that they were actually deceived or misled by Amazon's disclosures.

### G. Plaintiff Bloom Stebbins Fails to State a Claim Under Section 15(b).

Unlike the other plaintiffs, Bloom Stebbins alleges she never created a Voice ID. Instead, she says that Amazon allegedly collected her voiceprint when she spoke near a device on which her brother-in-law, Jason Stebbins, enabled Voice ID. Amazon's motion explains that Bloom Stebbins failed to state a claim under Section 15(b) because (1) she alleged no facts showing that a single utterance—such as "Alexa, play music"—is sufficient to create a voiceprint or other unique identifier under BIPA; (2) she alleged no facts showing that Amazon captured or stored any data resulting from the ephemeral comparison of her single utterance to Jason Stebbins' Voice ID to determine whether it was him; and (3) BIPA does not apply to strangers to Amazon because it has no practical means of identifying or providing notice to them. Mot. at 14-15.

In opposition, Plaintiffs argue that Alexa can create a voiceprint from a single word, but this argument is contradicted by the SAC's own allegations that the system requires a user to speak at least four, specific training phrases to enable Voice ID. *See* SAC ¶ 75 & n.7. And an ephemeral comparison of Bloom Stebbins' single utterance to Jason Stebbins' Voice ID cannot constitute a collection of a biometric identifier under Section 15(b) because it is done to identify whether the speaker is *Jason Stebbins*, as distinguished from other persons in his household, and is not even alleged to be capable of identifying *Bloom Stebbins*.

Moreover, BIPA was not intended to apply to persons in Bloom Stebbins' position, who are strangers to Amazon and who Amazon has no means of identifying. Plaintiffs say that *Zellmer v. Facebook, Inc.*, No. 3:18-cv-01880, 2022 WL 976981 (N.D. Cal. Mar. 31, 2022), "is not binding,

was wrongly decided, and misses the point of BIPA." Opp. at 17. While *Zellmer* is not binding, it is on-point and persuasive. No court has found that *Zellmer* "was wrongly decided" or "misses the point of BIPA," as Plaintiffs now argue. *Zellmer* explains in detail why reading Section 15(b) to require a defendant to obtain consent from strangers would put it "in an impossible position," and thus is "not consonant with the Illinois legislature's intent[.]" *Zellmer*, 2022 WL 976981, at *5.

Plaintiffs argue that Amazon "should design biometric systems to not capture biometrics unless first obtaining consent," but this argument was rejected in *Zellmer* because it "would lead to obvious and insoluble problems." *Id*. at *4. "Under [Plaintiffs'] interpretation of Section 15(b), [Amazon] in effect would need to identify every non-user in Illinois on a regular basis, and figure out a way to communicate with them to provide notice and obtain consent." *Id.* The "impossibility of carrying such a burden" is "readily apparent." *Id.* Amazon cannot prevent a stranger from speaking to an Alexa-enabled device, especially given such devices are located in homes and cars where Amazon has no control. Further, determining whether a person ***is*** a stranger requires comparing the voice input to an enrolled Voice ID. If a company utilizing a biometric system to identify consenting users were required to obtain consent from every non-user who might be subject to the incidental processing for such a system to function, the practical effect would be a ban. This would not be a reasonable reading of BIPA, which is designed to regulate and promote— not end—biometric technology. *See* 740 ILCS 14/5. Accordingly, Plaintiffs' Section 15(b) claim should be dismissed.

## III. THE SECTION 15(c) CLAIM FAILS.

Plaintiffs' Section 15(c) claim fails because the SAC contains no plausible allegations that Amazon sold or transferred biometric data to a third party for value. *See* Mot. at 16-17. Plaintiffs' opposition contains just one paragraph trying to save their Section 15(c) claims. They do not

dispute the legal requirement that a Section 15(c) claim requires a plaintiff to allege that biometric data *itself* was sold or transferred, not just that biometric data was used to develop or improve a product. Opp. at 17. Instead, Plaintiffs claim they have adequately alleged "that Amazon sells their biometric information and 'keyword identifiers' to advertisers and content providers." *Id.* (citing SAC ¶ 188). The single SAC paragraph Plaintiffs cite alleges only that "[u]pon information and belief, Amazon sells, leases, trades, or otherwise profits from the biometric identifiers and information derived from voice data and 'keyword identifiers' that it makes available to third party 'advertisers' and/or 'content providers.'" SAC ¶ 188. This allegation repeats the language of Section 15(c) (which provides, "No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information"), so it should be disregarded. *See McCauley*, 671 F.3d 611 at 616 ("conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth"). Tellingly, after discovery, Plaintiffs still allege no facts plausibly supporting their claim, no surprise given that Amazon has never sold or transferred biometric data to third parties, let alone for value. Plaintiffs' Section 15(c) claim should be dismissed.

## IV. THE SECTION 15(d) CLAIM FAILS.

Plaintiffs argue that their Section 15(d) claim should proceed because "Plaintiffs sufficiently and plausibly plead that Amazon shared their biometric information with third parties, including contractors and developers of 'Skills.'" Opp. at 17. Even after discovery, Plaintiffs do not name any of these "contractors" or "developers." They also do not respond to Amazon's argument that a contractor hired to work for Amazon is not a "third party." Mot. at 18 (citing cases). And they do not explain how or why a developer of "Skills" (akin to an app created for Alexa) could or would use biometric data in developing the Skill, let alone identify any developer

or Skill that actually obtained and used such data. While Plaintiffs claim they have obtained discovery from Amazon establishing their claim (Opp. at 18), they provide no detail whatsoever, likely because there is no support for this claim.

Finally, Plaintiffs cite *Johnson v. NCR Corp.*, No. 22 C 3601, 2023 WL 1779774, at *5 (N.D. Ill. Feb. 6, 2023), where the court declined to dismiss a Section 15(d) claim because the plaintiff alleged that biometric data was distributed to third parties for the specific purposes of "back-up storage of data and provision of IT services." *Id.* Plaintiffs make no comparable allegations here; they allege only that "Amazon disclosed, redisclosed, or disseminated Plaintiffs' and the Class Members' biometric information without satisfying the requirements of 740 ILCS 14/15(d)." SAC ¶ 197. Like their Section 15(c) allegations, this merely recites the language of BIPA and does not plausibly state a claim under Section 15(d). *See Horn v. Method Prods.*, No. 21 C 5621, 2022 WL 1090887, at *3 (N.D. Ill. Apr. 12, 2022) (dismissing Section 15(d) claim that merely "parrot[ed] BIPA's statutory language").

## V. CONCLUSION

Plaintiffs' legal conclusions are no substitute for well-pleaded facts, especially because Plaintiffs' legal conclusions are contradicted by exhibits to the complaint. Plaintiffs allege no facts plausibly showing that any of them were deceived or failed to consent when registering for Voice ID. The adequacy of the consent process and Voice ID disclosures is apparent from the face of the complaint and its exhibits. The Court should dismiss Plaintiffs' SAC with prejudice.

Dated: September 14, 2023                 Respectfully submitted,

                                             **AMAZON.COM, INC. AND**
                                             **AMAZON.COM SERVICES LLC**

                                             By: */s/ Gregory T. Fouts*
                                                   Elizabeth B. Herrington
                                                   Gregory T. Fouts

MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Dr., Suite 2800
Chicago, IL 60606-1511
Tel. 312.324.1445
Fax 312.324.1001
beth.herrington@morganlewis.com
gregory.fouts@morganlewis.com

J. Warren Rissier (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS
300 South Grand Ave., Fl. 22
Los Angeles, CA 90071-3132
Tel. 213.612.2500
Fax 213.612.2501
warren.rissier@morganlewis.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this fourteenth day of September 2023, I caused a copy of the foregoing document to be served upon all counsel of record via the Court's CM/ECF system.

/s/ Gregory T. Fouts
Gregory T. Fouts