IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL GUNDERSON, JASON STEBBINS, JULIA BLOOM STEBBINS and CHRISTOPHER BLOCK, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC. and AMAZON.COM SERVICES, INC.,<br><br>Defendants. | No. 19-cv-05061<br>Judge Franklin U. Valderrama |

ORDER

The Illinois Biometric Information Privacy Act (BIPA), 740 ILCS 14/1 *et seq*. regulates "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g). "Biometric identifier" includes, among other things, a voiceprint. 740 ILCS 14/10. Michael Gunderson (Gunderson), Jason Stebbins (Jason Stebbins), Julia Bloom Stebbins (Bloom Stebbins) and Christopher Block (Block), (collectively, Plaintiffs) sued Amazon.com, Inc. and Amazon.com Services, Inc. (collectively, Defendants or Amazon), individually and on behalf of a putative class of similarly situated individuals, asserting that Amazon's Alexa device, a digital assistant, has collected,

captured, or stored their voiceprints—a biometric identifier—without their consent, in violation of BIPA. R. 184,[1] Second Amended Complaint (SAC).

Amazon moves to dismiss Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 189, Mot. Dismiss. For the reasons that follow, the Court denies Amazon's Motion to Dismiss.

## Background

Amazon operates "Alexa," a virtual assistant that provides voice-based easy access to, among other things, Amazon's shopping service.[2] SAC ¶ 4. Each interaction with Alexa begins with the wake word, which is by default, "Alexa." *Id*. ¶ 98. Alexa identifies users by their voice through speaker identification. *Id*. ¶ 5. Speaker identification operates in Amazon's Alexa cloud through artificial intelligence, referred to as the "Speaker ID Module." *Id*. ¶ 6. The Speaker ID Module is programmed to be active for all interactions with an Alexa device for which at least one person enrolled in Voice ID was associated. *Id*. ¶ 8. The models of the human voice created by the Speaker ID Module are mathematical models that are voiceprints. *Id*. ¶ 9. In fine print at the bottom of the Voice ID enrollment in the Alexa Phone Application, there is a hyperlink to the Alexa Terms of Use. *Id*. ¶¶ 13–14. If an Alexa user clicks on the hyperlink, they connect to the Alexa Terms of Use. *Id*. ¶ 14.

---

[1] Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[2] The facts are derived from Plaintiffs' Second Amended Complaint and deemed to be true for the purposes of this motion. *See Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Illinois Alexa users must complete Voice ID enrollment in the Alexa Application. SAC ¶¶ 69–74. The process begins at a "Set Up Voice ID" screen (the Enrollment Screen). *Id.* ¶ 78. The Enrollment Screen states that Voice ID "enables Alexa to learn your voice, recognize you when you speak to any of your Alexa devices, and provide enhanced personalization." *Id.* at Exh. A. Text at the bottom of the Enrollment Screen states, "By tapping 'Agree and Continue', you agree to the Alexa Terms Of Use and authorize the creation, use, improvement, and storage of your voice ID. Learn more." The Enrollment Screen includes hyperlinks to the Alexa Terms of Use and FAQs. *Id.* ¶¶ 78, 86. The Terms of Use provide that all Alexa users must "agree to the terms of this Agreement" and if a person "do[es] not accept the terms of this Agreement, then you may not use Alexa." *Id.* at Exh. B.

Plaintiffs Gunderson, Jason Stebbins, and Block (collectively, Voice ID Plaintiffs) all owned an Alexa device and enrolled in Voice ID. SAC ¶¶ 20, 21, 23, 129–30, 135–36, 143–44. Each of these Plaintiffs uttered the wake word to one or more of their devices. *See id.* ¶¶ 132–33, 135, 140–41, 143, 147. Plaintiff Bloom Stebbins does not own an Alexa device. *Id.* ¶ 149. However, she spoke to the Alexa device from which Jason Stebbins had enrolled in Voice ID. *Id.* ¶¶ 22, 151.

Plaintiffs filed suit against Amazon alleging that Amazon violated BIPA by collecting, capturing, or storing their voiceprints—a biometric identifier—without their consent. Amazon now moves to dismiss Plaintiffs' Second Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). Mot. Dismiss. at 1.

**Legal Standard**

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

**Analysis**

BIPA regulates "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g); *see also Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1203 (Ill. 2019). "Biometric identifier" includes, among other things, a voiceprint. 740 ILCS 14/10. "'Biometric information' means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.* Biometric information is particularly sensitive because unlike social

4

security numbers, which can be changed if necessary, biometric identifiers cannot be changed. *Id.* § 14/5(c). BIPA provides "robust protections for the biometric information of Illinois residents." *Thornley v. Clearview AI, Inc.,* 984 F.3d 1241, 1242 (7th Cir. 2021). To that end, BIPA requires collectors of biometric information "to obtain the written informed consent of any person whose data is acquired." *Bryant v. Compass Grp. USA Inc.*, 958 F.3d 617, 619 (7th Cir. 2020). BIPA's "regime is designed to protect consumers against the threat of irreparable privacy harms, identity theft, and other economic injuries arising from the increasing use of biometric identifiers and information by private entities." *Id*.

Plaintiffs allege that Amazon violated Sections 15(b), 15(c), and 15(d) of BIPA. The Court addresses each Section in turn.

### I. Section 15(b)

Section 15(b) of BIPA provides:

No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b).

Under BIPA, private entities must (1) inform the individual whose biometric information is being collected that it is being collected or stored; (2) inform the

5

individual "in writing of the specific purpose and length of term for which [the biometrics are] being collected, stored, and used," and (3) receive a written release from the person. *Bryant*, 958 F.3d at 619.

### A. Voice ID Plaintiffs

Voice ID Plaintiffs each owned Alexa devices and each spoke the wake word to their Alexa devices. SAC ¶¶ 20, 21, 23, 132–33, 135, 140–41, 143, 147. Voice ID Plaintiffs allege that Amazon violated Section 15(b) of BIPA by failing to inform them in writing that a biometric identifier was being collected or stored. *Id.* ¶¶ 169–71.

Amazon does not argue that it did not collect or capture Voice ID Plaintiffs' voiceprints, a biometric identifier specified in BIPA. Rather, Amazon argues that Voice ID Plaintiffs' Section 15(b) claims fail because these Plaintiffs admit that they gave Amazon written consent to do so. That is, Voice ID Plaintiffs' voiceprints were collected in circumstances under which any reasonable consumer should have known that his or her biometric information was being collected. R. 190, Memo. Dismiss at 7–13. The fact that the consent did not contain any particular statutory language, reasons Amazon, is of no import because BIPA does not require that any particular statutory language be provided to the consumer to obtain informed consent. *Id.* at 10. It is enough, insists Amazon that the business accurately describe the activity at issue. *Id.* at 10–11 (citing *Santana v. Take-Two Interactive Software, Inc.*, 717 F. App'x 12, 15–16 (2d Cir. 2017)).

Predictably, Voice ID Plaintiffs disagree. For starters, note Voice ID Plaintiffs, the Enrollment Screen—the only place where Amazon even arguably seeks the

6

consent of the enrollee—does not inform the enrollee that Amazon collects or captures their "voiceprints" or any biometric data when it creates Voice ID. R. 200, Resp. at 8. Nor does Amazon, according to Voice ID Plaintiffs, disclose that the voiceprint it collects is biometrically unique to the enrollee. *Id*. Nor does Amazon inform the enrollee that Amazon would store the enrollee's voiceprint and link the voiceprints to their Amazon accounts containing their credit card and personal information. *Id*. Amazon's disclosures, submit Voice ID Plaintiffs, do not accurately describe the voiceprint collected by Voice ID as biometric, which creates conditions ripe for customers to be misled. Resp. at 9 (citing *Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 883 (N.D. Ill. 2022)). As for *Santana*, Voice ID Plaintiffs contend that unpublished, out-of-circuit case is distinguishable, as the issue in that case was one of standing and not the sufficiency of the disclosure. *Id*. at 9.

The Court finds that Voice ID Plaintiffs have the better of the argument. Amazon argues that its disclosures satisfy BIPA, as the disclosures explain how Voice ID works and that Voice ID creates an acoustic model of the Voice ID Plaintiffs' voice characteristics. Memo. Dismiss at 4. While that may be an accurate description of the disclosure, at this juncture, Voice ID Plaintiffs have plausibly alleged that the language of the disclosures at issue in this case does not satisfy Section 15(b)'s informed consent requirements. The informed consent regime laid out in Section 15(b) is the heart of BIPA. *Bryant*, 958 F.3d at 626. "The text of the statute demonstrates that its purpose is to ensure that consumers understand, before providing their biometric data, how that information will be used, who will have

7

access to it, and for how long it will be retained." *Id*. Here, nowhere in its disclosures does Amazon inform an enrollee that it is collecting and capturing the enrollee's voiceprint, a biometric identifier. Admittedly, before Voice ID Plaintiffs created a Voice ID, Amazon informed these Plaintiffs that Voice ID "enables Alexa to learn your voice" and recognizes you when you speak. SAC at Exh. A. Amazon also informed Voice ID Plaintiffs that "By tapping 'Agree and Continue', you agree to the Alexa Terms of Use and authorize the creation, use, improvement and storage of your voice ID. Learn more." *Id.* Voice ID Plaintiffs then tapped "Agree and Continue," thereby agreeing to the Terms of Use, which explained that "[w]hen you create a voice ID, Alexa uses recordings of your voice to create an acoustic model of your voice characteristics." *Id.* at Exh. B. However, these disclosures do not inform enrollees that Amazon would collect "biometric identifiers" or Voice ID Plaintiffs' unique biometric information as defined by BIPA. *See Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 816 (N.D. Ill. 2022) (defendant's disclosure did not inform plaintiffs that it collects a biometric identifier of biometric information). As for *Santana*, the Court agrees with Voice ID Plaintiffs that *Santana* is inapposite as the issue in that out-of-circuit case was standing, and not the sufficiency of the disclosures, as is being challenged here.

In short, although a close call, the Court finds that Plaintiffs Gunderson, Jason Stebbins, and Block have stated a claim for a violation of Section 15(b) of BIPA.[3]

---

[3]Nothing in this Order should be interpreted to mean that, from the Court's perspective, a disclosure must parrot the exact language of BIPA in order to satisfy Section 15(b). However, the Court finds that based on Voice ID Plaintiffs' allegations in this case, when drawing all reasonable inferences in their favor, as the Court must, the Court finds that they have—

8

B. **Bloom Stebbins**

The Court now turns to Amazon's arguments in support of dismissal of Plaintiff Bloom Stebbins' Section 15(b) claim. Bloom Stebbins does not allege that she created a Voice ID. Rather, she alleges that she spoke to the Alexa device from which Jason Stebbins enrolled in Voice ID. SAC ¶ 22. Bloom Stebbins alleges that Amazon captured her "voiceprint" when she spoke to Plaintiff Jason Stebbins' Alexa device, because Amazon compared her voice to Jason Stebbins' Voice ID to determine whether it matched. *Id.* ¶ 150.

Amazon advances three arguments for dismissal of Bloom Stebbins' claim. First, she does not allege any facts showing that a single utterance is sufficient to create a voiceprint or any other unique identifier under BIPA. Memo. Dismiss at 14. Second, she does not and cannot allege facts showing that Amazon captured or stored any data from her single utterance to Jason Stebbins' Voice ID. *Id.* at 14–15. Third, it is impossible for Amazon to identify strangers who spoke to an Alexa device. *Id.* at 15. The Court address each argument in turn.

Amazon first argues that Bloom Stebbins fails to state a claim because she alleges no facts that a single utterance is sufficient to create a voiceprint. Memo Dismiss at 14. In fact, asserts Amazon, Plaintiffs allege facts to the contrary, namely that it takes a minimum of four specific training phrases to create a Voice ID. *Id.* (citing SAC ¶ 75 & n.7). Bloom Stebbins counters that she has alleged that Amazon captured her biometric information—her voiceprint—which is sufficient under BIPA.

barely—alleged that a reasonable consumer would not understand that the Voice ID described by Amazon is a unique biometric identifier. *See* SAC ¶ 85.

9

Resp. at 16 (citing SAC ¶ 151). The Court agrees with Bloom Stebbins. The reasonable inference from Bloom Stebbins' allegations is that to make the comparison between her voice and Jason Stebbins' voice Alexa would have, in some way, captured her voiceprint.[4] Whether the allegation is borne out by the evidence is an issue for summary judgment, not a motion to dismiss. *See, e.g., Castillo v. Snyders*, 497 F. Supp. 3d 299, 302 (N.D. Ill. 2020) (federal pleading standards do not require evidentiary support).

Next, Amazon contends that an ephemeral comparison of Bloom Stebbins' single utterance to Jason Stebbins' Voice ID cannot constitute a collection of biometric information under Section 15(b) because it is done to identify whether the speaker is Jason Stebbins as opposed to someone else. Memo. Dismiss at 15. Reading BIPA to impose liability under these circumstances, posits Amazon, "would stretch BIPA far beyond its intended scope, place Amazon and other technology providers in an impossible position, and effectively outlaw most biometric technology in Illinois." *Id.* Surprisingly, Bloom Stebbins did not directly address this argument in her response, focusing instead on Amazon's third argument.

---

[4]The Court acknowledges some seeming inconsistencies with the Second Amended Complaint's allegations, as Amazon points out. Memo. Dismiss at 14. That is, Plaintiffs allege that a Voice ID is created after a user says four phrases as part of the enrollment process, SAC ¶ 75, while also alleging that Amazon captured Bloom Stebbins' voiceprint when she spoke to Jason Stebbins' Alexa "[o]n at least one occasion," *id.* ¶ 22. The Second Amended Complaint explains, however, that Amazon captures a voiceprint of a user without a Voice ID who speaks to an Alexa device just once, so long as that Alexa device is associated with a user who has Voice ID. *Id.* ¶ 101. At this stage, the Court finds such an allegation to be plausible.

10

Leaving aside Amazon's doomsday scenario, the issue before the Court is whether Bloom Stebbins plausibly alleges that Amazon has captured or collected her biometric data. In viewing the allegations of the Second Amended Complaint in the light most favorable to Bloom Stebbins—as the Court must—the Court finds that she has done so, if barely. Specifically, Bloom Stebbins alleges that she never enrolled in Voice ID. SAC ¶ 150. She further alleges that on at least one occasion, she uttered the wake word to one or more Alexa devices in the home of Jason Stebbins. *Id.* ¶ 151. Each time she uttered the wake word to an Alexa device in Jason Stebbins' home, alleges Bloom Stebbins, Amazon collected, captured, received through trade, or otherwise obtained and stored her voiceprint without her consent. *Id.* Amazon invites the Court to disregard the allegations of the Second Amended Complaint and instead find at this juncture that Amazon's collection of Stebbins' biometric identifier was done only to identify whether the speaker is Jason Stebbins. The Court must decline the invitation.

Last, Amazon argues that BIPA was not intended to apply to persons in Bloom Stebbins' position, that is, strangers to Amazon and who Amazon has no means of identifying. Memo. Dismiss at 15. In short, argues Amazon, Section 15(b) only applies where there is some relationship between a person and the entity collecting biometric information. *Id.* at 15 n.5 (citing *Zellmer v. Facebook, Inc.*, 2022 WL 976981 (N.D. Cal. Mar. 31, 2022)). Amazon contends that the court in *Zellmer* correctly reasoned that BIPA requires a "minimum level of known contact" between a person and the

11

entity collecting the biometric information, and to construe otherwise "would lead to obvious and insoluble problems." *Id.* (quoting *Zellmer*, 2022 WL 976981, at *4).

Bloom Stebbins responds, correctly, that *Zellmer* is an out-of-circuit case and therefore not binding on the Court. Resp. at 16–17. Bloom Stebbins also asserts that *Zellmer* was wrongly decided and misses the point of BIPA. Resp. at 17. Bloom Stebbins posits that Amazon's interpretation would rewrite the statute, which is improper, and the obligation imposed on companies by BIPA is to "design biometric systems to not capture biometrics unless first obtaining consent." *Id.* Here, Bloom Stebbins argues, Amazon failed to do that by designing Voice ID in a way that violates BIPA. *Id.*

The Court again agrees with Bloom Stebbins. As the Illinois Supreme Court recently stated, courts "cannot rewrite a statute to create new elements or limitations not included by the legislature." *Cothron v. White Castle Sys., Inc.*, 216 N.E.3d 918, 928 (Ill. 2023), *as modified on denial of reh'g* (July 18, 2023). Reading the requirement that Section 15(b) only applies where Amazon has some relationship with the individual reads a requirement into the statute that does not appear in the statute itself. Indeed, courts in this Circuit have rejected the notion that to state a claim for a Section 15 (b) violation, there must be a relationship between the collector of the biometric information and the individual. *See Flores v. Motorola Sols., Inc.*, 2021 WL 232627, at *3 (N.D. Ill. Jan. 8, 2021) (denying motion to dismiss and rejecting interpretation of Section 15(b) as requiring a relationship between the collector of the biometric information and the individual whose biometric information is being

12

collected); *see also Ronquillo v. Doctor's Assocs., LLC*, 597 F. Supp. 3d 1227, 1233 (N.D. Ill. 2022) (same). As for *Zellmer*, although not raised by Bloom Stebbins, the Court notes that *Zellmer* was decided on summary judgment, and therefore under a different standard. Moreover, the Court finds the reasoning of in-Circuit decisions persuasive. Here, the Court must accept all allegations as true and deny a motion to dismiss so long as those allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Bloom Stebbins alleges that Amazon collected, captured, received through trade, or otherwise obtained and stored her voiceprint without her consent when she used the wake word to an Alexa device in Jason Stebbins' home. These allegations are enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

Thus, at this juncture, the Court also finds that Bloom Stebbins has stated a claim for a violation of Section 15(b).

## II. Section 15(c)

Section 15(c) of BIPA restricts a private entity that collects or otherwise obtains an individual's biometric data from selling, leasing, trading or otherwise profiting from that data. 740 ILCS 14/15(c). As the Seventh Circuit has explained, Section 15(c) "flatly prohibits" certain for-profit transactions involving biometric data. *Thornley,* 984 F.3d at 1247.

Amazon argues that Section 15(c) applies to transactions where biometric data is transferred or shared for a benefit. Memo. Dismiss at 16. Amazon urges the Court to dismiss Plaintiffs' Section 15(c) claim because they fail to allege any facts showing

13

that Amazon profited from the sale or transfer of biometric data. *Id.* Plaintiffs respond that they have alleged that Amazon sells their biometric information to advertisers and content providers. Resp. at 17. That is enough at this juncture, and Plaintiffs need not (and could not) identify the advertisers at this stage. *Id.*

Plaintiffs allege that "[u]pon information and belief, Amazon sells, leases, trades, or otherwise profits from the biometric identifiers and information derived from voice data and 'keyword identifiers' that it makes available to third party 'advertisers' and/or 'content providers.'" SAC ¶ 188. Accepting the allegations of the Second Amended Complaint as true and disregarding conclusory allegations, the Court finds that Plaintiffs have plausibly alleged a Section 15(c) violation. Contrary to Amazon's suggestion, Plaintiffs are not required to plead evidence. *Tamayo*, 526 F.3d at 1081.

### III. Section 15(d)

Section 15(d) prohibits a private entity in possession of biometric data from disclosing or disseminating that data, except in certain circumstances, such as obtaining a subject's consent. 740 ILCS 14/15(d).

Amazon argues all that Plaintiffs allege for this alleged violation is that "Amazon disclosed, redisclosed, or disseminated" their biometric data. Memo. Dismiss at 17 (quoting SAC ¶ 197). Plaintiffs, however, notes Amazon, fail to identify any third party that allegedly received this data. *Id.* Merely parroting Section 15(d), submits Amazon, does not suffice. *Id.* (citing *Horn v. Method Prods.*, 2022 WL 1090887, at *3 (N.D. Ill. Apr. 12, 2022)).

14

Not surprisingly, Plaintiffs insist they have plausibly alleged a violation of Section 15(d). Plaintiffs cite *Johnson v. NCR Corp.*, 2023 WL 1779774, at *5 (N.D. Ill. Feb. 6, 2023), another BIPA case in which the court evaluated the sufficiency of a Section 15(d) claim. In *Johnson*, the court reasoned that "Plaintiffs need not specify the who, what, when, where, and how of the dissemination to meet Rule 8's pleading requirements. Plaintiffs' allegations sufficiently suggest that [defendant] used third-party vendors and thus disseminated Plaintiffs' biometric data to them, which is all that they must do to proceed to discovery on this claim." *Id.* (internal citations omitted).

Viewing the allegations of the Second Amended Complaint in the light most favorable to Plaintiffs, the Court finds that Plaintiffs plausibly allege a Section 15(d) violation. Plaintiffs allege that Amazon shared their biometric information with third parties, specifically "third-party Skills." SAC ¶¶ 195–197. Admittedly, the allegations are thin, but as stated above, Plaintiffs are not required to plead evidence, and the Court rejects Amazon's invitation to require greater specificity from Plaintiffs at the pleading stage.

## Conclusion

For the foregoing reasons, the Court denies Amazon's Motion to Dismiss [189]. Amazon's answer to the Second Amended Complaint is due on or before November 14, 2023.

Dated: October 31, 2023

United States District Judge
Franklin U. Valderrama