IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL GUNDERSON, JASON STEBBINS, and CHRISTOPHER BLOCK, individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>        v.<br><br>AMAZON.COM, INC., and AMAZON.COM SERVICES, INC.,<br><br>    Defendants. | No. 19-cv-05061<br><br>Judge Franklin U. Valderrama |

**MEMORANDUM OPINION AND ORDER**[1]

Amazon's Alexa is a voice-activated cloud-based virtual assistant that allows users to play music, control lights, check the weather, and access other online services and information via voice control. R.[2] 184, SAC. An aspect of this voice control is known as "Voice ID," which specifically allows Alexa to use voice-recognition technology to match the voice speaking to a known, registered user. *See generally* SAC. Plaintiffs Michael Gunderson, Jason Stebbins, and Christopher Block all enrolled in Amazon's Voice ID. They sued Amazon.com, Inc. and Amazon.com Services, Inc. (collectively, Amazon), individually and on behalf of a putative class, alleging that Amazon collected, captured, purchased, or otherwise obtained their

---

[1]This public version of the Court's Opinion includes several redactions of confidential information proposed by Amazon and adopted by the Court. R. 275.

[2]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

voiceprints, a biometric identifier, in violation of Illinois's Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* (BIPA). Before the Court is Plaintiffs' Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23. R. 219, Mot. Class Cert. For the reasons below, the Court grants the motion in part and denies it in part.

## Background

Since its launch in October 2017, Amazon's Alexa has offered a feature known as "Voice ID." Mot. Class Cert. at 1 (citing Pl. Ex. A, Rouhi Dep. at 51:13-17).[3] R. 233, Resp. at 4. To enroll in Voice ID, a user is presented with a "Set Up Voice ID" screen, which explains, "voice ID enables Alexa to learn your voice, recognize you when you speak to any of your Alexa devices, and provide enhanced personalization." *Id.* at 5. Text at the bottom of the screen then prompts the user to "agree" to the Alexa Terms of Use and "authorize the creation, use, improvement, and storage of your voice ID." *Id.* The enrollment process takes place on the Alexa app. *Id.* According to Plaintiffs, none of the prompts explicitly inform the user that Amazon is creating or storing a "voiceprint," "biometric identifier," or "biometric information." Mot. Class Cert. at 1 (citing Rouhi Dep. Exhs. 31–38).

Following the consent, the user then engages in Voice ID "enrollment" by speaking several prompted phrases, or utterances, into the Alexa app, through which process the technology learns to recognize the user's voice. Mot. Class Cert. at 1–2; *see also* Resp. at 6. Users who have completed the enrollment are known as "enrolled

---

[3]The Court considers the evidence submitted by the parties. Plaintiffs' exhibits A–L are listed in the Declaration of Michael Aschenbrener. R. 218-1. Amazon's exhibits are listed in the Declarations of Leila Rouhi (R. 234-1), Simon Blanchard (R. 234-2), Ryan Cieslak (R. 234-3), Richard Stern (R. 234-4), and J. Warren Rissier (R. 234-5).

users." Mot. Class. Cert. at 1. 

*Id.* at 2 (citing Pl. Exh. B, DeBruyne Dep. at 113:5–10; AMAZON00016521).

*Id.* (citing Pl. Ex. G, Srinivasan Dep. at 96:14–97:17). Plaintiffs Gunderson, Stebbins, and Block are all enrolled users. *Id.* Plaintiff Stebbins spoke ten training phrases into the Alexa app during his enrollment; Plaintiffs Gunderson and Block spoke four phrases each. Resp. at 6.

Plaintiffs sued Amazon, alleging violations of BIPA, 740 ILCS 14/20. *See generally* SAC. Specifically, Plaintiffs allege violations of BIPA Section 15(b), which requires a private entity that collects or otherwise obtains an individual's biometric data to first obtain the individual's informed, written consent (Count I); Section 15(c), which prohibits a private entity in possession of biometric data from selling, leasing, trading, or otherwise profiting from the data (Count II); and Section 15(d), which prohibits a private entity in possession of biometric data from disclosing or disseminating that data without consent (Count III). *See generally* SAC (citing 740 ILCS 14/15(a)–(d)). BIPA creates a private right of action for any violations of these requirements and allows a person to recover $1,000 per negligent violation of the statute and $5,000 per reckless or intentional violation of the statute. 740 ILCS 14/20.

Plaintiffs' fully briefed[4] motion for class certification is before the Court. *See* Mot. Class Cert.

## Legal Standard

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties." *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 348 (2011) (cleaned up).[5] To be certified, a proposed class must satisfy the requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation. *Harper v. Sheriff of Cook County*, 581 F.3d 511, 513 (7th Cir. 2009); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). In addition to the four 23(a) requirements, a proposed class must also satisfy one of the subsections in Rule 23(b): that "common questions of law or fact predominate over individual ones and that a class action is superior to other methods of adjudicating the case." *Howard v. Cook Cty. Sheriff's Office*, 989 F.3d 587, 597 (7th Cir. 2021) (cleaned up). The named plaintiff bears the burden of proving by a preponderance of the evidence that their proposed class satisfies the requirements of Rule 23. *Id.*

In evaluating Plaintiffs' motion, the Court need not assume the truth of Plaintiffs' assertions and is free to "receive evidence and resolve factual disputes as necessary to decide whether certification is appropriate." *Messner v. Northshore Unv. HealthSystem,* 669 F.3d 802, 811 (7th Cir. 2012). That said, courts "should not turn

---

[4]After briefing concluded, the parties filed Notices of Supplemental Authority and responses thereto. *See*, R. 248; R. 253; R. 258; R. 259; R. 264; R. 265; R. 269; R. 271.

[5]This Order uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

the class certification proceedings into a dress rehearsal for trial on the merits." *Id.* "Merit questions may be considered to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Jacks v. DirectSat USA, LLC,* 118 F.4th 888, 895 (7th Cir. 2024) (cleaned up). "A class may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites for class certification have been met." *Id.* (cleaned up).

## Analysis

Plaintiffs seek to certify the following class: "All natural persons in Illinois for whom Amazon created a voiceprint on or after June 27, 2014." SAC ¶ 152.

Plaintiffs must demonstrate that their proposed class satisfies the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as at least one of the subsections in Rule 23(b), predominance or superiority. *See, e.g.*, *Harper*, 581 F.3d at 513. An implicit requirement under Rule 23 is that a class be "defined clearly and that membership be defined by objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). Plaintiffs argue that the proposed class is defined clearly and based on objective criteria. Mot. Class Cert. at 1–3. Amazon does not challenge the class definition. The Court agrees with Plaintiffs. Here, the class is readily ascertainable, as it is clear and membership is based on objective, as opposed to subjective, criteria. The Court now turns to the Rule 23(a) requirements.

## I.  Rule 23(a)

### A.  Numerosity

5

Rule 23(a)'s first requirement is numerosity. Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 860 (7th Cir. 2017).

Plaintiffs maintain that they satisfy this requirement because "Amazon admitted that there were approximately 1.18 million Alexa users who, at some point between October 2017 and June 2023, had a billing address in Illinois . . . and also had or have enrolled Voice ID." Mot. Class Cert. at 4 (citing Pl. Exh. H, Pls.' 1st Req. for Admis. Suppl. Resp. No. 1 (August 7, 2023)). Plaintiffs therefore argue it is "reasonable to infer that there are more than forty (40) Class members" and that joinder of all putative Class Members would be impracticable. *Id*. Amazon does not argue otherwise. The Court finds that Plaintiffs have satisfied the numerosity requirement as there is evidence that the class would consist of well over forty members and that joinder of all members would be impracticable.

## B. Commonality

Rule 23(a)'s second requirement is that there exist "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A court need only find a single common question of law or fact, the mere occurrence of all plaintiffs suffering as a result of a violation of the same provision of law is not enough." *Chi. Teachers Union, Local No. 1 v. Bd. of Ed. of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015) (cleaned up). Rather, "[t]he claims must depend upon a common contention that is capable of class-wide

6

resolution." *Id.* "A common nucleus of operative fact is usually enough to satisfy" this requirement. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Plaintiffs bring claims under BIPA Sections 15(b), 15(c), and 15(d).

First, regarding their Section 15(b) claim, Plaintiffs assert the following common questions: (1) did Amazon collect, capture, or store biometric identifiers in the form of "voiceprints" of Class Members; (2) did Amazon adequately inform the Class that it was collecting, capturing, or storing biometric identifiers in the form of voiceprints; and (3) did Amazon obtain a written release from the Class Members. Mot. Class Cert. at 5–6. For their claim under Section 15(c), Plaintiffs maintain that the common question that drives resolution of this claim is whether Amazon sold, leased, traded, or otherwise profited from Plaintiffs' biometric data. The answer, according to Plaintiffs, is uniform as to all Plaintiffs and the Class. *Id.* at 6–7. Lastly, as to their Section 15(d) claim, Plaintiffs contend that the common question that drives the resolution of this claim is whether Amazon disclosed, redisclosed, or otherwise disseminated Plaintiffs' biometric data. *Id.* at 7. Again, Plaintiffs posit that the answer is uniform as to all Plaintiffs and the Class. *Id.*

Amazon does not challenge the commonality requirement. No matter, as the Court must still ensure that Rule 23(a)'s requirements are met to "protect[] absent class members whose rights may be affected by the class certification." *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003). The Court agrees with Plaintiffs that they satisfy Rule 23's commonality requirement: the claims of the named Plaintiffs arise from the same conduct that gives rise to all claims in the putative class. The

questions are common to the Class and "determination of the common questions' truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores*, 564 U.S. at 350.

### C. Typicality

Rule 23(a)'s third requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the class members and . . . her claims are based on the same legal theory." *Oshana*, 472 F.3d at 514. "Although the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members, the requirement primarily directs the district court to focus on whether the named representatives' claims have the same characteristics as the claims of the class at large." *McFields v. Dart*, 982 F.3d 511, 518 (7th Cir. 2020) (cleaned up). The Seventh Circuit has explained that "[t]he logic behind the typicality requirement is that a class representative will adequately pursue her own claims, and if those claims are typical of the rest of the class, then her pursuit of her own interest will necessarily benefit the class as well." *Howard*, 989 F.3d at 605 (cleaned up). "[T]he typicality requirement is liberally construed." *Dennis v. Greatland Home Health Servs., Inc.*, 591 F. Supp. 3d 320, 328 (N.D. Ill. 2022).

Plaintiffs argue that their claims are typical of those of the Class because all claims arise from the same course of Amazon's conduct. Namely, Amazon collected

and stored voiceprints of each Plaintiff and Class Member: (1) without informing them that Amazon would do so, by way of the same disclosures to all; and (2) without obtaining written consent. Mot. Class Cert. at 8.

Amazon counters that Plaintiffs' claims are atypical because they are subject to unique defenses (specifically, waiver, estoppel, and ratification, among others).[6] Resp. at 22. In a footnote, Amazon argues that nothing in the statutory text of BIPA expressly abrogates the affirmative defenses of waiver, estoppel, or ratification. Resp. at 17 n.6 (citing, *inter alia*, *Adams v. N. Illinois Gas Co.*, 809 N.E.2d 1248, 1271 (Ill. 2004) ("[A] court cannot construe a statute in derogation of the common law beyond what the words of the statute expresses or beyond what is necessarily implied from what is expressed."); *Barthel v. Illinois Cent. Gulf R. Co.*, 384 N.E.2d 323, 327 (1978) (standing for the proposition that, unless a statute explicitly limits defenses or imposes strict liability, affirmative defenses not enumerated in a statute's text are available); *Rogers v. BNSF Ry. Co.*, 2022 WL 4465737, at *2 (N. D. Ill. Sept. 26, 2022) ("[T]he text of BIPA would preclude vicarious liability only if it clearly and plainly expressed the legislature's intent to do so." (cleaned up))). Therefore, reasons Amazon, they are available defenses. *Id*.

In reply, Plaintiffs contend that Amazon's arguments miss the mark, as strict liability statutes, such as BIPA, abrogate common law defenses. R. 239, Reply at 3–4 (citing *Olle v. C House Corp.*, 967 N.E.2d 886, 890 (Ill. App. Ct. 2012); *Vaughn v.*

---

[6]The bulk of Amazon's arguments related to affirmative defenses is raised in relation to the predominance inquiry. *See* Resp. at 17–19. The Court finds the analysis to apply both to typicality and predominance, and thus considers those arguments here.

*Biomat USA, Inc.*, 2022 WL 4329094, at *12 (N.D. Ill. Sept. 19, 2022)). According to Plaintiffs, "in-circuit case law" suggests that BIPA abrogates common law defenses. *Id.* at 4 (citing *Tapia-Rendon v. Workeasy Software, LLC (Tapia-Rendon I)*, 2025 WL 2299592, at *7 & n.4 (N.D. Ill. Aug. 8, 2025); *Brandenburg v. Meridian Senior Living, LLC*, 564 F.Supp.3d 627, 635 (C.D. Ill. 2021); *Snider v. Heartland Beef, Inc.*, 479 F. Supp. 3d 762, 772–73 (C.D. Ill. 2020)). Therefore, argue Plaintiffs, Amazon's affirmative defenses cannot create unique defenses. *Id.*

"An affirmative defense is one that admits the allegations in the complaint, but avoids liability, in whole or in part, by new allegations of excuse, justification or other negating matters." *Riemer v. Chase Bank USA, N.A.*, 274 F.R.D. 637, 639 (N.D. Ill. 2011). In Illinois, waiver is the voluntary and intentional relinquishment of a known right. *Gallagher v. Lenart*, 874 N.E.2d 43, 53 (Ill. 2007). "Waiver may be express through agreement or implied through conduct." *PPM Fin., Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 895 (7th Cir. 2004). "Equitable estoppel is an equitable doctrine invoked to prevent fraud and injustice." *Bayview Loan Servicing, LLC v. Szpara*, 46 N.E. 3d 950, 958 (Ill. App. Ct. 2015) (cleaned up). Under Illinois law, to establish equitable estoppel, the party claiming estoppel must demonstrate that: (1) the other party misrepresented or concealed a material fact; (2) the other party knew when it made the misrepresentation that it was false; (3) the party claiming estoppel did not know that the misrepresentation was false; (4) the other party intended or reasonably expected that the party claiming estoppel would act upon the misrepresentation; (5) the party claiming estoppel reasonably relied upon the misrepresentation in good

faith to its detriment; and (6) the party claiming estoppel would be prejudiced by its reliance if the other party were permitted to deny the truth thereof. *Geddes v. Mill Creek Country Club, Inc.*, 751 N.E.2d 1150, 1157 (Ill. 2001). Finally, "'[r]atification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.'" *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 745 (N.D. Ill. 2014) (quoting Restatement (Third) of Agency § 4.01(1) (2006)).

Amazon argues that Plaintiffs Gunderson and Block are subject to the foregoing defenses because they both enrolled in Voice ID in October 2022 and January 2022, respectively, years after this lawsuit was filed in 2019. Resp. at 18–19. The way Amazon sees it, "[a] significant issue in this case is whether [they] enrolled in Voice ID—with full knowledge of all the facts, including those that [they] now allege[ ] Amazon failed to disclose." *Id.* at 19. Amazon concedes that Plaintiff Stebbins signed up for Voice ID before this suit was filed, but argues that Stebbins— along with Gunderson and Block—continues to use Voice ID. *Id.* at 18–19.

Plaintiffs predictably see things differently. First, Plaintiffs posit that, even if Gunderson and Block had "special access to information unavailable to the general public that caused them to enroll in Voice ID for purposes of furthering the lawsuit," which Plaintiffs deny, this would not make them atypical or inadequate as many other Class Members will have enrolled in Voice ID after the filing of the lawsuit. Reply at 4. Moreover, argue Plaintiffs, Amazon did not respond to discovery until December 2022 (after both Gunderson and Block had enrolled in VoiceID), which,

according to Plaintiffs, shows that discovery in this case did not cause Gunderson and Block to enroll in Voice ID. *Id.* And, as stated above, Plaintiffs take the position that it matters not, as affirmative defenses are not available in BIPA suits. *Id.*

As noted above, "a class action requires an adequate class representative, who has claims and defenses typical of the class." *Westmoreland v. Hughes*, 144 F.4th 952, 955–56 (7th Cir. 2025) (cleaned up). A class representative may be atypical and inadequate if he is subject to a substantial defense unique to him. *See id.* at 956 ("Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff . . . then the named plaintiff is not a proper class representative.") (quoting *Koos v. First Nat. Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974)); *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) ("The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation."). The Seventh Circuit has held that, even where the availability of the affirmative defense at issue is "not clearly settled, . . . the presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation." *J. H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980).

As an initial matter, the Court notes that neither party presented binding authority as to whether the affirmative defenses of waiver, equitable estoppel, or

ratification are available in a BIPA suit. It appears to be an open question whether such defenses apply. For example, in *Tapia-Rendon v. Workeasy Software, LLC (Tapia-Rendon II)*, the court found that because BIPA is a strict liability statute, the common law affirmative defenses of waiver, estoppel, and ratification are unavailable. 2025 WL 2299592, at *13–14 (N.D. Ill. Aug. 8, 2025). On the other hand, in *Howe v. Speedway LLC*, the court analyzed whether the affirmative defense of waiver applied on the merits, finding it did not because there was no evidence that the plaintiff was aware of his specific right under BIPA that the defendant was required to give written notice before collecting any biometric data, and that plaintiff had the right to provide or withhold written consent before his biometric information was collected. 2024 WL 4346631, at *12. However, in line with several other in-Circuit decisions, the court went on to find that that the defense of assumption of the risk is not available in a BIPA case. *Id.* at *13 (citing *Brandenburg*, 564 F. Supp. 3d at 635; *Snider*, 479 F. Supp. 3d at 772–73); *see also Hayes v. CGB Enters., Inc.*, 2024 WL 3091083, at *8 (C.D. Ill. June 20, 2024). As stated above, the Seventh Circuit has held that, even where the availability of a defense is "not clearly settled," the presence of an "arguable defense" applicable to the named Plaintiffs may undermine their adequacy and typicality. *J. H. Cohn & Co.*, 628 F.2d at 999. So, the Court need not definitely decide at this juncture whether these affirmative defenses are available in a BIPA action, as the presence of an arguably available defense is still relevant to the analysis.

13

Here, Plaintiffs do not deny that Gunderson enrolled in Voice ID after the filing of this lawsuit. Notably, Plaintiffs fail to engage with this fact. As a named plaintiff at the time, Gunderson was or should have been on notice that enrollment in Voice ID would result in Amazon creating a voiceprint. Therefore, the Court finds that he is arguably subject to substantial defenses unique to him, such that it is "predictable that a major focus of the litigation" would be on determining whether Gunderson knew that enrolling in Voice ID would collect his voiceprint, and whether any affirmative defenses applied to him because of it. *Westmoreland*, 144 F.4th at 955–56. As to Plaintiffs' argument that Amazon did not produce discovery until after Gunderson enrolled in Voice ID, and thus did not have any "special access to information," Resp. at 4, this argument is a non-starter. While Amazon may not have produced discovery until after Gunderson enrolled in Voice ID, Amazon's motion to dismiss the first complaint, filed in September 2019, discussed the creation of voice profiles, and noted that doing so caused Alexa to create an acoustic model of a user's voice characteristics, as disclosed in the Terms of Use. R. 20, First Mot. Dismiss at 13. Stated differently, Gunderson, as a named Plaintiff in this case, did not need Amazon's answers to discovery to understand that by enrolling in Voice ID, he would be creating a voiceprint, a biometric identifier. The Court therefore finds Gunderson to be an atypical and inadequate class representative.

As for Block, Amazon acknowledges that he was not a named plaintiff when he enrolled in Voice ID. Resp. at 19. Instead, Amazon argues that Block was represented by Class Counsel in other lawsuits for years prior to becoming a named Plaintiff. *Id.*

(citing Pl. Exh. K, Block Dep. at 130:2–131:23). As discussed in further detail below, *see infra* Section I.D.2, Block's only relationship with KamberLaw, Class Counsel's law firm, was when KamberLaw served as *local* counsel in several of his Americans with Disabilities Act (ADA) cases in 2019, but Block did not communicate with anyone from KamberLaw until spring 2023 (over a year after he enrolled in Voice ID). Reply at 5 (citing Block Dep. at 129:3–13; 130:16–131:2). The Court therefore finds Amazon's argument that Block is subject to defenses based on his knowledge of the collection of his voiceprint to be purely speculative, and thus he is not subject to "strong" affirmative defenses like Gunderson. *See Westmoreland*, 144 F.4th at 956. Therefore, the Court does not find Block atypical or inadequate on this basis.

As stated above, there is no argument that Stebbins had any (let alone atypical) knowledge of Voice ID's collection before he enrolled, so the Court finds there is little-to-no likelihood the aforementioned affirmative defenses will apply to him. And, for the reasons described below, *see infra* Section I.D.5, the Court finds that the fact that Plaintiffs did not delete Voice ID not to undermine their adequacy as class representatives, nor to create atypical defenses, as it is likely that many Class Members still are enrolled in Voice ID.

All in all, the Court finds that Plaintiffs Block and Stebbins have satisfied this requirement, as their claims are typical of the Class. They are enrolled users in Amazon Alexa, allegedly suffered the same statutory violations, and are entitled to the same statutory damages per violation. Gunderson, however, is subject to arguable

defenses that the Court finds to be atypical of the Class, and thus is not an adequate class representative.

## D. Adequacy of Representation

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The "adequacy inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). A named plaintiff is ordinarily considered to be adequate so long as her claims neither conflict with nor are antagonistic to those of other class members. *Howard*, 989 F.3d at 609–10.

Plaintiffs maintain that both requirements are satisfied as they have no interests antagonistic to the Class and their counsel is qualified. Mot. Class Cert. at 8–9.

Not so, asserts Amazon, arguing that Plaintiffs are not adequate representatives because they are subject to unique defenses based on: (1) the timing of Gunderson and Block's enrollment in Voice ID; (2) Gunderson and Block's lack of an arm's length relationship with Class Counsel; (3) Stebbins lack of credibility; (4) all Plaintiffs' full knowledge of all the facts before they enrolled; and (5) all Plaintiffs' continued use of Voice ID with full knowledge that they could choose to delete Voice ID at any time. *See* Resp. at 17–19, 21–24. The Court addresses each in turn.

### 1. Timing of Enrollment in Voice ID

Plaintiffs Gunderson and Block, argues Amazon, enrolled in Voice ID years after this litigation began. Resp. at 18–19. Therefore, they are inadequate class representatives due to the danger that they will be preoccupied by defending against the affirmative defenses of waiver, estoppel, and ratification. *See id.* at 18–19, 22–23. For the reasons discussed above, the Court finds that Amazon's invocation of those affirmative defenses to make Gunderson an inadequate class representative but do not affect the adequacy of Block's ability to represent the Class. *See supra* Section I.C.

### 2. Relationship with Class Counsel

Amazon also contends that Plaintiffs Gunderson and Block are not adequate class representatives because of their relationship with Class Counsel. Resp. at 22. Amazon notes that there should be an arms-length relationship between class representatives and Class Counsel. *Id.* (citing *Redman v. RadioShack Corp.,* 768 F.3d 622, 638 (7th Cir. 2014); *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 88 (7th Cir. 1977)). Because the Court finds Gunderson to be an inadequate class representative based on the presence of arguable defenses peculiar to him, it need not determine whether his alleged relationship with Class Counsel undermines his adequacy as a representative.

Block, according to Amazon, "has been represented by Plaintiffs' counsel in multiple other lawsuits before he became a named Plaintiff here." Resp. at 22. Thus, Amazon argues, Block's interests lie in his relationship with Plaintiffs' counsel, not in protecting the interest of the putative class. *Id.*

Plaintiffs predictably disagree with Amazon's portrayal of Block, arguing that Amazon exaggerates both the nature and the degree of his ties with Plaintiffs' counsel. *See* Reply at 5–6. Plaintiffs contend that the first time Block communicated with KamberLaw regarding this case was the Spring of 2023. Reply at 5 (citing Block Dep. at 129:3–13; 130:16–131:2). Furthermore, KamberLaw has not served as Block's local counsel since 2019. *Id.* (citing Aschenbrener Decl. ¶ 4).

A class representative "must protect the interests of the class, placing them above his own personal interests and the interests of class counsel." *Murray v. E*Trade Fin. Corp.*, 240 F.R.D. 392, 399 (N.D. Ill. 2006). Indeed, a "class representative has an obligation to represent the interests of the class in dealing with both the defendant and class counsel." *In re Southwest Airlines Voucher Litig.*, 799 F.3d 701, 714 (7th Cir. 2015). To that end, the Seventh Circuit has instructed, "[t]here ought to be a genuine arms-length relationship between class counsel and the named plaintiffs." *Redman,* 768 F.3d at 638. This concern is driven by the fear that a class representative who is closely associated with the class attorney would allow settlement on terms less favorable to the interests of absent class members. *Susman,* 561 F.2d at 91. That said, the Seventh Circuit has eschewed a "per se" rule in this context. *Id.* at 93–94.

Whether a close relationship renders a particular class representative inadequate is a fact intensive inquiry to be determined on a case-by-case basis. *Susman*, 561 F.2d at 90. Courts have found that "relatives, or business associates" of class counsel are likely too closely related to class counsel to act as class

representatives and adequately represent the interests of the class. *Susman,* 561 F.2d at 90; *see also Gordon v. Carribbean Cruise Line*, 2019 WL 49837, at \*9 (N.D. Ill. Feb. 8, 2019) (finding named plaintiff, who was a lawyer, inadequate where plaintiff and class counsel jointly represented class action plaintiffs in several matters, shared office space, receptionist, and fax machines and their families socialized together and their children attended the same school). The concern, according to the Seventh Circuit, is the "possibility that one so situated will become more interested in maximizing the 'return' to class counsel than in aggressively presenting the proposed class['s] claims." *Susman*, 561 F.3d at 89 n.3.

Amazon's argument that Block is a "professional plaintiff" does not render Block an inadequate class representative. Not surprisingly, Amazon fails to cite any authority in support of this proposition. Indeed, the Seventh Circuit has condoned the practice, observing that "[r]epeat litigants may be better able to monitor the conduct of counsel, who as a practical matter are the class's real champions." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006). Here, the evidence reveals that Block's only relationship with KamberLaw was when KamberLaw served as *local* counsel in several of his ADA cases in 2019, but, as stated above, Block did not communicate with anyone from KamberLaw until Spring 2023 for this case. Reply at 5 (citing Block Dep. at 129:3–13; 130:16–131:2). In short, the fact that Block has been involved in prior lawsuits is not enough to make him inadequate to represent the Class. *See Armes v. Shanta Enter.*, 2009 WL 2020781, \*5 (N.D. Ill. July 8, 2009)

(rejecting argument that named plaintiff was inadequate class representative because plaintiff had been involved in prior lawsuits).

That said, the Court reminds Class Counsel—and named Plaintiffs for that matter—that the Court can "undertake a stringent and continuing examination of the adequacy of representation . . . at all stages of the litigation where absent members will be bound by the court's judgement." *Susman,* 561 F.2d at 89–90.

### 3. Stebbins' Credibility

Amazon also takes aim at Plaintiff Stebbins' ability to represent the Class. Resp. at 23. Amazon points out that Stebbins claims not to know the words "conditions of use" appearing in blue text was a hyperlink. *Id*. This puts him at odds, from Amazon's point of view, with those Class Members that did understand the hyperlink to provide additional information. *Id*. Stebbins, submits Amazon, is also atypical because he did not delete his Voice ID, notwithstanding the fact that he has been a plaintiff in this lawsuit for years. *Id*. Last, Amazon argues that Stebbins has credibility issues that make him an inadequate representative. Resp. at 23–24 (citing *Physicians Healthsource, Inc., v. Allscripts Health Solutions, Inc.*, 254 F. Supp. 3d 1007 (N.D. Ill. 2017)). Stebbins, notes Amazon, "testified that he did not want Alexa to learn his voice and would never have asked to teach Alexa his voice." *Id*. at 23. But when Stebbins was confronted with a recording of him stating "Alexa I want to teach you my voice," he admitted that he said this. *Id*. at 23–24. Plaintiffs retort that

Stebbins is an adequate representative as he only did what Alexa prompted him and other Class Members to do to set up Voice ID. Reply at 7.

The Court finds that Plaintiffs have the better of the argument. The fact that Stebbins may not have understood that the hyperlink provides additional information does not put his interest contrary to those of the Class. Surely, there will be some Class Members who also did not know that the hyperlink provided additional information. As for Stebbins' credibility issue, Amazon is correct that a named plaintiff "who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative." *CE Design Ltd v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011). As the Seventh Circuit explained:

> [F]ew plaintiffs come to court with halos above their heads; fewer still escape with those halos untarnished. For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility to the detriment of the absent class members' claims.

*Id.* at 728.

Amazon argues that Stebbins' contradictory deposition testimony demonstrates credibility issues warranting disqualification. But "being subject to a credibility challenge," on its own, does not "necessarily disqualif[y] a person from being a class representative." *Pruitt v. Personnel Staffing Group, LLC*, 2020 WL 3050330, at *10 (N.D. Ill. June 8, 2020). "The bottom line is whether the credibility issue is likely to harm the class," including whether the representative plaintiff's actions are "sufficiently inconsistent with class claims." *Rush v. GreatBanc Trust Co.*,

2021 WL 2453070, at *8 (N.D. Ill. June 16, 2021). This is not the case here. While the Court agrees with Amazon that Stebbins may have a credibility issue, the Court does not find that it "is likely to harm the [C]lass" and therefore does not warrant his disqualification as a class representative.

### 4. Knowledge

Amazon argues that evidence reveals that the named Plaintiffs had actual knowledge of Amazon's disclosures regarding Voice ID at the time of their enrollment or would have subjectively understood Amazon's disclosures if they had read them. Resp. at 15–16. Plaintiffs disagree, insisting that they did not, as Amazon buried the fact that it was collecting their voice prints in the enrollment process. The evidence, contrary to Amazon's suggestion, is that all Class Members, including Plaintiffs, were presented with the same information during the Alexa Voice ID enrollment process. Mot. Class Cert. at 5–6 (citing Rouhi Dep. 62:16–65:2; DeBruyne Dep. 140:14–17). Whether named Plaintiffs had actual knowledge is a question for summary judgment, not for class certification. As such, Plaintiffs are adequate representatives because their claims are identical to the other claims in the Class. And, to the extent that Amazon contends timing of Plaintiffs' enrollment or knowledge raises affirmative defenses, the Court has already rejected that argument as to Block, and sustained it as to Gunderson. *See supra* Section I.C.

### 5. Failure to Delete Voice ID

Last, Amazon asserts that Plaintiffs are not adequate class representatives because they continued to use Voice ID with full knowledge that they could delete it

at any time and failed to do so. Resp. at 22. Plaintiffs counter that this is red herring because deleting their voice prints after their creation would "be an exercise in futility." Reply at 7. The Court again agrees with Plaintiffs. Recall that the test for adequacy is whether the named plaintiff's interest conflict with or are antagonistic to those of other class members. *Howard*, 989 F.3d at 609–10. Here, there is no such evidence. The fact that Plaintiffs did not delete their Voice ID after becoming aware that it captured their voiceprint does not place them at odds with the Class Members and Amazon cites no authority to the contrary.

All in all, there is no evidence that Plaintiffs Block and Stebbins have any interests that are antagonistic to, or in conflict with, the claims of the Class. Nor is there any basis for the Court to question the competency of Class Counsel. Accordingly, Plaintiffs Block and Stebbins have satisfied Rule 23(a)(4)'s mandate of adequate representation.

Having found that Plaintiffs Block and Stebbins satisfy the Rule 23(a) requirements, the Court next turns to whether Plaintiffs also satisfy one of the bases under Rule 23(b).

## II.     Rule 23(b)

Once Rule 23(a) is satisfied, a class action may only be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating

the controversy." Fed. R. Civ. P. 23(b)(3). The Court addresses both the predominance and superiority questions in turn.

### A.    Predominance

"The predominance requirement is similar to the commonality and typicality requirements, but far more demanding." *Amchem Prod., Inc., v. Windsor,* 521 U.S. 591, 623–24 (1997). "The guiding principle behind predominance is whether the proposed class's claims arise from a common nucleus of operative facts and issues." *Santiago v. City of Chi.*, 19 F.4th 1010, 1016 (7th Cir. 2021). "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that the question will be answered on the merits, in favor of the class." *Id*. (cleaned up). "A common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Arandell Corp. v. Xcel Energy Inc.*, 149 F.4th 883, 892 (7th Cir. Aug 5, 2025) (cleaned up). An individual question, on the other hand, is one where "the members of a proposed class will need to present evidence that varies from member to member." *Id*. As the Seventh Circuit has explained, "this inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id*. The predominance analysis turns on the elements of the underlying cause of action. *Mish Int'l Monetary Inc. v. Vegas Cap. London, Ltd.*, 2025 WL 1744895, at *8 (N.D. Ill. June 25, 2025). The Seventh Circuit has instructed courts to "begin the class certification analysis by identifying the elements of the plaintiff's various claims." *Eddlemon v. Bradley Univ.*, 65 F. 4th 335, 339 (7th Cir. 2023) (cleaned up).

24

Plaintiffs maintain that the elements for the Class Members' claims are identical under BIPA and will be based on the same class-wide proof applicable to other members within the same Class. Mot. Class Cert at 11–12. From Plaintiffs' perspective, because their claims "focus on the uniform policies and practices of Amazon to which all Plaintiffs and the Class were subject, common questions of fact and law predominate." *Id.* at 12. Amazon disagrees, advancing several arguments as to why, in its view, individual questions of law and fact overshadow class-based issues. Resp. at 8–21.

The Court begins its predominance analysis by identifying the elements of Plaintiffs' claims under BIPA Sections 15(b), (c) and (d). *See generally* SAC.

### 1. Section 15(b)

The Court starts with Plaintiffs' Section 15(b) claim. Under Section 15(b), a private entity may not "collect, capture, purchase, receive through trade, or otherwise obtain" biometric identifiers or information without first obtaining written, informed consent. 740 ILCS 14/15(b). In short, Section 15(b) requires informed consent for the collection of biometric information. *Rivera v. Google, Inc.*, 2021 WL 3857792, at *1 (N.D. Ill. August 30, 2021). BIPA defines a biometric identifier as a "retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. To establish a claim under Section 15(b), Plaintiffs must show that Amazon, indisputably a private entity, (1) collected, captured or received through trade or otherwise obtained Plaintiffs' biometric identifiers or information, (2) without first obtaining Plaintiffs' written informed consent. *See Howe*, 2024 WL 4346631, at *17

(explaining elements of 15(a), (b), and (d) claims); *see also McGivney v. ITS Technologies & Logistics, LLC*, 2025 WL 1743891, at *4 (Ill. App. Ct. June 24, 2025) ("The issue to be determined in the case is whether defendant improperly collected its employees' biometric information without obtaining written consent as required by the BIPA.") (citing 740 ILCS 14/15(b)(1–3)). For purposes of the predominance analysis, the question before the Court is whether common questions of law and fact, as applied to Section 15(b), predominate over individualized issues.

Amazon challenges Plaintiffs' contention that class-wide questions predominate in relation to the Section 15(b) elements. *See* Resp. at 8–21. To begin, Amazon contends that Plaintiffs fail to submit any evidence that Voice ID creates and stores "voiceprints." Resp. at 9. In fact, asserts Amazon, Alexa scientists testified that ██████████████████████████████████████████████ *Id.* at 10. Amazon maintains that Voice ID ██████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████ *Id.* Amazon insists █████████████████████ █████████████████████████ *Id.* Furthermore, ████████████ ███████████████████████████████████████████████ ████████████████████ *Id.* at 10. Therefore, ████████████████████ ███████████████████████████████████████████ *Id.*

Plaintiffs reply that Amazon misstates the issue for predominance. In their view, "the real question for [the] predominance analysis is whether Amazon's enrollment process is sufficiently uniform for class certification." Reply at 9. The

answer to this question, according to Plaintiffs, is yes, as "███████████████████ ████████████████████████████████████████████████████." *Id.* Plaintiffs insist that the issue of whether Amazon collects voiceprints—actionable under BIPA—from users' enrollment utterances can only be answered on a class-wide basis "because the facts show that Amazon uses the exact same enrollment process for all Voice ID customers in Illinois." *Id.* at 8. In support, Plaintiffs point to Amazon's internal documents that state that ██████████████████████████████ ████████ *Id.* at 10 (citing Pl. Exh. F, AMAZON00031855, AMAZON00025930, AMAZON00025945). Plaintiffs maintain that the Court need only consider evidence common to all Class Members to answer the question of whether Voice ID creates sufficient biometric identifiers to be actionable under BIPA. *Id.* at 8–9.

Amazon also challenges the second portion of Section 15(b), arguing that Plaintiffs consented in writing when they enrolled in Voice ID. Resp. at 14. If informed consent is not shown by Amazon's disclosures, posits Amazon, then it depends on each individual's actual knowledge and experience. *Id.* at 15. In support, Amazon cites to Plaintiffs' testimony that they understood—or would have understood, if they had read—Amazon's disclosures regarding Voice ID. *Id.* at 15–16 (citing, *inter alia* Gunderson Dep. at 190:17–191:21, 225:2–9; Rissier Decl. Exh. 14, Stebbins Dep. at 97:8-99:12, 91:1-95:17, 177:3–178:4; Block Dep. 56:24–57:9).

Plaintiffs reply that Amazon's argument rings hollow, as it is undisputed that all Voice ID enrollees in Illinois were presented with the same disclosures. Reply at 18. Plaintiffs maintain that they have provided evidence in the form of testimony

from two of Amazon's designated Rule 30(b)(6) witnesses that "all Plaintiffs and Class members were presented with materially identical information during the Alexa Voice Id enrollment process via app." Reply at 19 (citing Mot. Class Cert at 5–6 (citing Rouhi Dep. at 62:16–65:2; DeBruyne Dep. at 140:14–17)).

Relatedly, Amazon last argues that "an individualized inquiry is required into whether the words Plaintiffs contend should have been added to the Voice ID disclosure—i.e. "voiceprint" or "biometrics"—would have made a difference to each putative class member's understanding." Resp. at 16. Amazon, citing a survey conducted by one of its experts, Dr. Simon Blanchard, maintains that the survey revealed that approximately 87% of the survey participants believed, based on Amazon's disclosures, that Amazon collected a biometric voiceprint. *Id*. From Amazon's perspective, this is evidence that "the vast majority of class members gave informed consent." Resp. at 17. Not so, counter Plaintiffs, noting that, as a preliminary matter, the survey is not relevant to the class certification motion, pointing out that it was commissioned and completed before Plaintiffs filed their motion for class certification. Reply at 19. On a more substantive basis, Plaintiffs assert that the survey "was designed to measure individuals' subjective understanding, not the objective reasonable person that applies in this case." *Id*. Lastly, Plaintiffs posit that even if the survey was relevant, for the reasons contained in its motion to bar Amazon's expert, R. 241, Mot. Bar, the Court should not consider the survey. *Id*.

The Court agrees with Plaintiffs that Amazon improperly invites the Court to engage in a merit-based analysis at the class certification stage, contravening Seventh Circuit guidance.[7]  *See Eddlemon,* 65 F. 4th at 339 ("[At the class certification stage], the court must walk a balance between evaluating evidence to determine whether a common question exists and predominates, without weighing that evidence to determine whether the plaintiff will ultimately prevail on the merits.") (cleaned up). Instead of demonstrating that resolution of the 15(b) elements requires individualized evidence, Amazon launches a merit-based argument that Voice ID did not create biometric identifiers actionable under BIPA. *See* Resp. at 8– 12. But this is not the question the Court concerns itself with when faced with the predominance analysis. Indeed, Amazon seems to acknowledge that this argument is misplaced, as it notes that it will develop the argument that Voice ID does not qualify as a "voiceprint" or "biometric identifier," under BIPA in its forthcoming summary judgment motion. Resp. at 11.

The same goes for Amazon's argument that Plaintiffs and the survey respondents believed, based on Amazon's disclosures, that Amazon collected a biometric voiceprint. Recall that the Court's focus in the predominance analysis is whether the proposed class's claims arise from a common nucleus of operative facts

---

[7]Accordingly, the Court need not—and does not—consider the declaration of Michael Aschenbrener, submitted with Plaintiffs' reply, as to his interaction with his personal Alexa device. *See* R. 239-1, Aschenbrener Reply Decl.; *see also* R. 256.

and issues. *Santiago,* 19 F.4th at 1016. Here, the evidence is that the language of the disclosure was the same for all who enrolled in Voice ID.[8]

The Court finds that whether Amazon collected, captured or received through trade, or otherwise obtained biometric identifiers or information is a common question that predominates over any individual inquiries. That is, resolution of the common question is of such nature that determination of its truth or falsity will resolve the issue that is central to the validity of the claim in one stroke. Similarly, whether Amazon did so without first obtaining written informed consent is also a common question of fact that predominates over any individual inquiries. As such, the Court finds that Plaintiffs have satisfied the predominance analysis as it applies to their claim under Section 15(b).

## 2. Sections 15(c) and 15(d)

Under Section 15(c), "no private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c). Section 15(d) provides that "[n]o private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information" without informed consent. 740 ILCS 14/15(d). The Court must determine whether common questions of

---

[8]The Court considered Dr. Blanchard's survey as it pertains to Amazon's predominance arguments, but as discussed above, finds that the results do not undermine predominance as to Plaintiffs' Section 15(b) claim. Accordingly, the Court need not reach Plaintiffs' remaining arguments related to the admissibility of Dr. Blanchard's declaration and survey. Mot. Bar. The Court therefore terminates the motion to bar without prejudice.

law and fact, as applied to Sections 15(c) and (d), predominate over individualized issues.

Amazon maintains that Plaintiffs have not produced evidence to prove these elements on a class-wide basis. Resp. at 13–14. According to Amazon, all Plaintiffs cite in support of their contentions is the SAC, which does not suffice. Resp. at 14. Moreover, Amazon argues that the actual evidence uncovered defeats Plaintiffs' claim, as it is Amazon's policy to not share or sell customers' Voice ID information. *Id*. Plaintiffs retort that class certification is not the time to raise this issue, and that that they "will use common evidence of how Amazon and the third-party developers of Alexa Skills exchange information—including biometric information—to prove Amazon's liability for §§ 15(c) and (d)." Reply at 20–21 (citing Stebbins Dep.).

The Court again agrees with Plaintiffs. Resolution of whether Amazon *actually* sold, leased, traded, or otherwise profited from a person's biometric identifier or information is a merits-based question not to be resolved at this juncture. Instead, the proper inquiry is whether the evidence used to decide this question will involve common evidence across the putative class members. *See, e.g.*, *Eddlemon*, 65 F.4th at 339. Plaintiffs argue that common evidence will be used to answer this question, and the Court agrees. As such, Plaintiffs clear this hurdle of the Rule 23(b) analysis.

### 3. Amazon's Other Arguments Against Predominance

Amazon advances several additional arguments that Plaintiffs fail to carry their burden of establishing predominance. Namely, that: (1) BIPA does not apply outside of Illinois; (2) affirmative defenses of waiver, estoppel, and ratification require

31

individualized inquiries; and (3) damages require an individualized inquiry. The Court addresses each in turn.

### i. BIPA Does Not Apply Outside of Illinois

Amazon argues that since BIPA does not apply outside of Illinois, individualized inquiries are necessary to determine whether Class Members were physically located in Illinois when they spoke to Alexa to create a Voice ID model. Resp. at 12. Amazon takes issue with Plaintiffs' contention that "the location of each user at the time of each utterance is or should be readily identifiable from Amazon's own records." *Id*. From Amazon's point of view, since Alexa can be used on mobile devices, Plaintiffs must come forward with evidence that the users were in Illinois at the time they enrolled in Voice ID, as users often use Alexa in locations apart from their billing or shipping addresses provided to Amazon. *Id*. (citing Block Tr. at 215:3–216:15 (Block spoke to his Alexa device in several other states and countries)). Therefore, argues Amazon, it would require a "mini-trial" to determine whether each Class Member's Voice ID was created within Illinois *Id*. at 12–13. Additionally, posits Amazon, users often have multiple billing and shipping addresses, so Amazon does not know which is the customer's primary residence, and even if it did, it does not mean that the customer enrolled in Voice ID from that location. *Id*. at 13.

Plaintiffs counter that they may rely on Amazon's own records as evidence that the customer was in Illinois at the time she enrolled in Voice ID. Reply at 15.

32

a contention Plaintiffs argue is supported by Amazon's Rule 30(b)(6) witness's testimony. Reply at 15, 17 (citing DeBruyne Dep. at 152:1–13); *see also* Mot. Class Cert. at 1 n.3 (citing DeBruyne Dep. at 152:9–20). Plaintiffs also contend that Amazon presents no evidence that Plaintiffs or any Class Members enrolled in Voice ID outside of Illinois. Reply at 17.

As an initial matter, the Court agrees with Defendants that BIPA does not apply extraterritorially. *Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017) (cleaned up). "Under Illinois law, a statue is without extraterritorial effect, unless a clear intent in this respect appears from the express provisions of the statute." *Sloan v. Anker Innovations, Ltd.*, 2025 WL 2104559, at *12 (N.D. Ill. July 28, 2025) (cleaned up). Following this logic, "[b]ecause none of BIPA's express provisions indicate that the statute was intended to have extraterritorial effect . . . BIPA does not apply extraterritorially." *Id*. (quoting *Monroe v. Shutterfly, Inc.*, 2017 WL 4099846, at *5 (N.D. Sept. 15, 2017)). Thus, to avoid the extraterritoriality doctrine, "the circumstances that relate to the disputed transaction [must have] occur[red] primarily and substantially in Illinois . . . [with] each case . . . decided on its own facts." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853–54 (Ill. 2005). "[T]here is no single formula or bright-line test for determining whether a transaction occurs within" Illinois. *Id*. at 854.

As Plaintiffs point out, Amazon's own 30(b)(6) witness testified that, ███ ███████████████████████████████████████████████ ████████████████████████████████████ DeBruyne Dep. at 152:1–4. That is,

Amazon first looks at  *Id.* at 152:9–20. True, DeBruyne testified that but he also noted that " *Id.* at 153:2–9.

The Court finds that Plaintiffs have set forth sufficient evidence demonstrating that Amazon's technology allows it to ascertain, to a sufficient degree for purposes of class certification, whether its users were located in Illinois when they enrolled in Voice ID. *See* Reply at 15–18; *see also Mullins*, 795 F.3d at 657–58 (rejecting heightened interpretation of ascertainability for purposes of class certification under Rule 23); *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1276 (9th Cir. 2019) ("[I]t is reasonable to infer that the General Assembly contemplated BIPA's application to individuals who are located in Illinois, even if some relevant activities occur outside the state."). To the extent that Amazon is concerned that some individuals who enrolled in Voice ID outside of Illinois would seek to join the Class, the Class in this case is limited to those "natural persons in Illinois for whom Amazon created a voiceprint." SAC ¶ 152.

## ii. Presence of Affirmative Defenses

Amazon asserts that there are affirmative defenses that require individualized assessments. Resp. at 17. For the reasons discussed above, the Court finds that the presence of arguable defenses based on the timing of Gunderson's knowledge due to his role as a named Plaintiff have a likelihood of becoming a "major focus of the

34

litigation," or, put other way, predominate over common issues. *Westmoreland*, 144 F.4th at 955–56. On the other hand, for the reasons stated above, the Court finds that there is not a strong likelihood that Block is subject to the affirmative defenses of waiver, estoppel, or ratification. *See supra* Section I.C.

### iii.  Individualized Damages

Amazon also argues that damages cannot be proven on a class-wide basis because under Illinois law, damages under BIPA are discretionary, not mandatory. Resp. 19–20 (citing *Cothron v. White Castle Sys., Inc.*, 216 N.E.3d 918, 929, *as modified on denial of reh'g* (Ill. July 18, 2023)). Predictably, Plaintiffs disagree. According to Plaintiffs, the court in *Tapia-Rendon I* considered and rejected the very argument advanced by Amazon in this case. Here, as in *Tapia-Rendon*, assert Plaintiffs, "the number of violations is easily ascertainable because it will be two per Class member for enrollment in Voice ID, and then potentially a few additional violations per Class for each World Rebuild, which occurred for all Class members at the same time." Reply at 22 (citing *Tapia-Rendon*, 2023 WL 5228178, at *6).

The Court agrees that no individual analysis is required for determining damages. Like the court in *Tapia-Rendon I,* this Court finds that "the number of violations of the BIPA is likely to be easily ascertainable, as the nature of the allegations is alleged to be the same from class member to class member." 2023 WL 5228178, at *6. In short, the fact that damages under BIPA are discretionary "does not mean that they cannot be awarded in a common class-wide manner." *Id.*

35

In sum, the Court finds that Plaintiffs Block and Stebbins have satisfied the predominance requirement. The predominance inquiry requires the Court to determine whether the common issues that lend themselves to representational litigation are more prevalent or more important than the issues that will require individualized proof and fact-finding. Here, evidence common to the Class will assist in answering the questions posed by Sections 15(b), (c), and (d).

## B.    Superiority

The final requirement under Rule 23(b)(3) is that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This requirement is satisfied if a class action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). "The superiority inquiry requires courts to assess the fairness and efficiency of class adjudication with an eye towards other available methods." *Mullins*, 795 F.3d at 664.

Plaintiffs insist that class action is the superior method for resolving the controversy. Mot. Class Cert. at 13. Furthermore, Plaintiffs assert that there are approximately 1.2 million Class Members, and as such certifying the Class would benefit judicial economy. *Id*. Amazon disagrees, noting that the "core policy behind Rule 23—allowing small claims to proceed when there is no incentive to bring them individually—is not implicated here." Resp. at 25. Class Members, according to Amazon, have claims of thousands of dollars, in addition to a right to statutory

36

attorney's fees. Thus, Amazon concludes that a class action is unnecessary and not superior to actions by individuals who believe they have been wronged. *Id.*

The Court finds that Plaintiffs meet the superiority requirement. As Plaintiffs correctly point out, the Class at issue is one of nearly 1.2 million people. The putative class challenges actions taken by Amazon that apply uniformly. A case-by-case resolution of the Class Members' claims would be an inefficient use of judicial and party resources.

The Court finds, after conducting the required rigorous analysis, that Plaintiffs have satisfied the four required elements of Rule 23(a) and the requirements of Rule 23(b)(3) such that they satisfy the hurdle for class certification.

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' motion for class certification [219]. It grants it and finds that Plaintiffs Block and Stebbins are proper class representatives, but denies it as to Gunderson, finding that he is not a proper class representative. The Court hereby certifies a class composed of "all natural persons in Illinois for whom Amazon created a voiceprint on or after June 27, 2014." The Court terminates without prejudice Plaintiffs' motion to bar [241].

Dated: November 6, 2025
Redacted Version Entered: November 19, 2025

United States District Judge
Franklin U. Valderrama